IN THE UNITED STATES COURT OF FEDERAL CLAIMS

DANNY C. SIMONS AND SALLY J. SIMONS,<br>
Plaintiff,<br>
v.<br>
THE UNITED STATES,<br>
Defendant.

No. 06-115C<br>
(Judge Braden)

DEFENDANT'S MOTION TO DISMISS

Pursuant to Rules 12(b)(1) & (6) of the Rules of the United States Court of Federal Claims ("RCFC"), defendant respectfully requests that the Court dismiss the complaint of Danny C. and Sally J. Simons upon the grounds that the Court does not possess jurisdiction to consider the complaint and/or for failure to state a claim.

DEFENDANT'S MEMORANDUM

QUESTIONS PRESENTED

1. Whether the complaint is barred by the doctrine of res judicata.

2. Whether the plaintiffs' claims are barred by the statute of limitations applicable to this Court.

3. Whether the plaintiffs' tort claims should be dismissed for lack of subject matter jurisdiction.

4. Whether the plaintiffs' takings claims should be dismissed for failure to state a claim or for lack of subject matter jurisdiction.

STATEMENT OF THE CASE

I. Nature Of The Case

The plaintiffs filed their complaint on February 15, 2006. On April 3, 2006, the plaintiffs filed an amended complaint seeking declaratory relief and damages for alleged fraud, breach of contract, torts, and takings.

II. Statement Of Facts

This matter has already been extensively litigated for more than two decades in the Tax Court and the United States District Court for the District of Utah, and appealed numerous times to the United States Court of Appeals for the Tenth Circuit. As a result, the Tenth Circuit has issued several decisions in this matter. Although the amended complaint in this Court contains prolix allegations concerning this dispute, a succinct background of this matter can be gleaned from the Tenth Circuit opinions as well as reference to the amended complaint.

In 1979, the Internal Revenue Service ("IRS") issued a notice of deficiency relating to the Simons' 1974 income taxes. Simons v. Commissioner of Internal Revenue, 185 F.3d 875 (10th Cir. 1999) (table) ("Simons II"). The Simons filed a petition for redetermination with the Tax Court later that year. Id. In 1980, the IRS issued a notice of deficiency relating to the Simons 1972 and 1973 taxes. The Simons again filed a petition for redetermination with the Tax Court. Id.

The parties entered into settlement discussions in both cases. Id. On April 22, 1983, the Tax Court entered decisions in both cases, one for 1972 and 1973, the other for 1974. Id.; appendix ("Pl. App.") to amended complaint ("Compl.") at 12-14. Both decisions state that they were "[p]ursuant to agreement of the parties." For 1974, the decision stated that the Simons

owed additional taxes of $17,071 and a negligence penalty of $854, plus statutory interest. Simons I; Pl. App. 14-15.

Three months later, on July 25, 1983, the IRS assessed a $17,071 deficiency in income tax and an $854 addition to tax against the Simons for tax year 1974. United States v. Simons, 129 F.3d 1386, 1388 (10th Cir. 1997) ("Simons I"). After the Government filed an action in 1992 for collection of the assessment, the district court granted the Simons summary judgment upon the ground that the statute of limitations had passed. Id. The Tenth Circuit reversed in 1997, holding that there were material facts in dispute as to whether the limitations period had passed. Id. at 1388-89.

In 1998, while the district court action was still pending, the Simons filed motions with the Tax Court seeking leave to file out of time motions to vacate the Tax Court's decisions of nearly 15 years earlier. Simons II, 185 F.3d at 875. The Tax Court denied the motions and the Simons appealed. Id. The Tenth Circuit noted that, in general, a Tax Court decision becomes final after 90 days if no appeal is taken. Id. at 2. One exception is if the Tax Court lacked jurisdiction over the proceedings. Id. The determination of a deficiency and the issuance of a notice of deficiency are preconditions to Tax Court jurisdiction. Id. Thus, the Simons focused their arguments upon the validity of the notices of deficiencies and upon the timeliness of the petitions for redetermination. Id. The court of appeals rejected all of the Simons' arguments, including a new argument they raised upon appeal that the settlement agreement between the IRS and them was not valid. Id.

After the Tenth Circuit's decision in Simons I, the district court litigation resumed. In early 2001, the Government filed a motion for summary judgment. Defendant's Appendix

("App.") 1-11. The Simons filed an opposition, and then filed a motion for directed verdict and evidentiary hearing. App. 12-25, 26-34. Eventually, the parties agreed to settle all claims for payment by the Simons to the IRS of $55,000. United States v. Simons, 86 Fed. Appx. 377, 378 (10th Cir. 2004) ("Simons IV").[1] However, the Simons then "reneged" on the payment and instead moved to dismiss the action. Id.; App. 35-64. The district court then held a hearing upon the motion to dismiss, as well as the Government motion for summary judgment that had been pending. The court informed the Simons that it was ready to grant the Government summary judgment, but allowed them 10 days to honor their settlement obligation. Id. Following this hearing, the court entered an order stating that "the settlement effort . . . was voluntarily participated by both sides." App. 65-68. The order stated that the court found that there was "no dispute" that the parties had entered into a settlement agreement, and "no dispute" that all conditions had been satisfied to require payment. Id. The court further found that the Simons "failure to honor the settlement agreement was not in good faith." Id. The court gave the Simons until June 28, 2002 to make the payment, or it would enter summary judgement for the Government. Id. The Simons then paid the IRS the $55,000, and submitted an order dismissing the case. Simons IV 86 Fed. Appx. at 378-79. The court entered the order and closed the case. Id. at 379.

Notwithstanding their settlement, the Simons appealed to the Tenth Circuit, "challenging the order they had drafted and the resultant judgment it had entailed." Id. The Tenth Circuit

[1] Simons IV is the Tenth Circuit's decision after rehearing. The decision amended and superseded the court of appeals' decision in Simons III. United States v. Simons, 82 Fed. Appx. 14 (10th Cir. 2003). The difference between the two opinions is that the latter deletes part of a quote from the district court judge which was critical of Mr. Simons.

noted that it is "a well accepted rule that a party to a consent judgment waives any objection to matters within the scope of the judgment." Id. While the court of appeals observed that lack of consent or mistake are exceptions to this waiver, here the Simons had no basis to make such an argument because the "handwritten original draft of the agreement is fairly reflected in the consent judgment, which defendants themselves prepared for the court to sign." Id. Thus, the court of appeals affirmed the district court judgment.

## ARGUMENT

### I. The Standard Of Review For A 12(b) Motion To Dismiss

In deciding a RCFC 12(b)(1) motion, "determination of jurisdiction starts with the complaint, which must be well-pleaded in that it must state the necessary elements of the plaintiff's claim, independent of any defense that may be interposed." Holley v. United States, 124 F.3d 1462, 1464 (Fed. Cir. 1997) (citations omitted). Where this Court's subject matter jurisdiction is placed into issue, the non-moving party bears the burden of establishing jurisdiction. J&E Salvage Co. v. United States, 37 Fed. Cl. 256, 260 (1997), aff'd, 152 F.3d 945 (Fed. Cir. 1998) (table), cert. denied, 525 U.S. 827. "In ruling on a motion to dismiss for lack of jurisdiction, the court is not confined to an examination of the complaint, but may take into account 'evidentiary matters outside the pleadings.'" Thomas v. United States, 34 Fed. Cl. 619, 621 (1995) (quoting Indium Corp. of America v. Semi-Alloys, Inc., 781 F.2d 879, 884 (Fed. Cir. 1985), cert. denied, 479 U.S. 820 (1986)), aff'd, 101 F.3d 714 (Fed. Cir. 1996) (table).

Pursuant to RCFC 12(b)(6), the Court may dismiss a complaint if, as a matter of law, it fails to state a claim upon which relief can be granted, even assuming the truth of its allegations. Unlike a RCFC 12(b)(1) disposition, however, "dismissal of plaintiff's complaint . . . for failure

to state a claim does not have the legal effect of divesting this court of jurisdiction," and thus operates as a final adjudication, with prejudice, upon the merits. American Nat'l Bank & Trust Co. v. United States, 22 Cl. Ct. 7, 18 (1990). As the Supreme Court has held, dismissal for failure to state a claim is appropriate whenever "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Scheuer v. Rhodes, 416 U.S. 232, 236 (1974).

In resolving a motion to dismiss for failure to state a claim, "[t]he issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." Kinne v. United States, 21 Cl. Ct. 104, 107 (1990) (quoting Scheuer, 416 U.S. at 236). Thus, the Court "must . . . indulge in all reasonable inferences in favor of the nonmovant." Gould, Inc. v. United States, 935 F.2d 1271, 1274 (Fed. Cir. 1991). Nonetheless, the Court should not place any weight upon any assertions in the complaint other than allegations of fact, because "legal conclusions, deduction, or opinions couched as factual allegations are not given a presumption of truthfulness." Rochman v. United States, 27 Fed. Cl. 162, 168 (1992) (citation omitted).

II. The Simons' Action Is Barred By Res Judicata

The doctrine of res judicata precludes parties from relitigating issues "that were or could have been raised" in a previous action that resulted in a final judgment upon the merits of the case. Federated Dep't Stores, Inc. v. Moitie, 452 U.S. 394, 398 (1981). "The preclusive effects of former adjudication ··· are referred to collectively ··· as the doctrine of ' res judicata.' Res judicata is often analyzed further to consist of two preclusion concepts: 'issue preclusion' and 'claim preclusion.' " Garcia Carranza v. United States, 67 Fed. Cl. 106, 112 (2005) (quoting

Carson v. Dept. of Energy, 398 F.3d 1369, 1375 (Fed. Cir.2005)). Issue preclusion concerns the "effect of a judgment in foreclosing relitigation of a matter that has been litigated and decided. This effect is also referred to as direct or collateral estoppel." Garcia Carranza 67 Fed. Cl. at 112 (quoting Carson, 398 F.3d at 1375). Claim preclusion refers to the "effect of a judgment in foreclosing litigation of a matter that never has been litigated, because of a determination that it should have been advanced in an earlier suit." Id. (quoting Carson, 398 F.3d at 1375).

To establish res judicata, the Federal Circuit requires that the "party asserting the bar prove that (1) the parties are identical or in privity; (2) the first suit proceeded to an underlying judgment on the merits; and (3) the [claim at issue] is based on the same set of transactional facts as the first." Ammex, Inc. v. United States, 334 F.3d 1052, 1055 (Fed. Cir. 2003). This test is satisfied here.

A comparison of the amended complaint with the Tenth Circuit decisions readily demonstrates that the parties are identical and the first suits proceeded to judgment in both the Tax Court and the District Court. See Simons II, slip op. p. 3 ("The judgment of the Tax Court is affirmed"); Simons IV, 86 Fed. Appx. at 380 ("The judgment of the district court is affirmed."). The third prong of the Ammex test is satisfied as well. Although the plaintiffs attempt to restyle their action under causes of actions redressable in this court, such as breach of contract, a review of the amended complaint, the Tenth Circuit decisions, and various motions and responses that the Simons filed in the district court demonstrates that this matter is based upon the same set of operational facts as the Tax Court and district court cases.

The crux of the Simons' amended complaint is that they entered into a settlement agreement with the IRS in 1983, as reflected in the Tax Court decisions at pp. 12-15 of their

appendix. They allege that the Government breached this agreement. Compl. at p. 2. As a result of this settlement agreement, they paid the IRS $49,546.55 in 1983. Id. They contend that when they made this payment they satisfied their obligations pursuant to the settlement for the years 1972-74. Compl. at p. 35, ¶62 (hereinafter "35/62"). They contend that by continuing collection efforts after the 1983 payment and ultimately filing suit in the district court in 1992, the Government breached the settlement agreement. E.g., Compl. 36/66-69. They contend that the IRS assessment in 1983 was invalid because it was untimely. Compl. 19/34; 48/82; 53/94. They also contend that the Government committed fraud by, among other things, pursuing the district court action. Compl. at pp. 53-59. They contend that the 2001 settlement is not an enforceable contract because, among other reasons, the agreement lacked consideration, and the district court lacked jurisdiction over the matter. Compl. at 60/121 to 62/125. Finally, they contend that the Government committed various torts in the course of its efforts to collect from the Simons, including abuse of administrative process (compl. 67/153 to 70/163), and abuse of judicial process (compl. 70/164 to 72/175).

The Simons' allegations that the Government breached the 1983 settlement agreement and otherwise acted improperly in its attempts to collect from them were or could have been raised by the Simons in the district court action and are thus barred by the doctrine of res judicata. For example, their response to the Government's motion for summary judgment in the district court stated that it "spells out dozens of facts explaining why the IRS collection efforts are in error." App. 13. This response also contained their argument that their 1983 payment of nearly $50,000 was improperly used by the IRS to pay off only their 1972 and 1973 obligations rather that 1972 to 1974. App. 14. The response further stated that they are alleging "fraud,

mistake and duress, bad faith, lack of good faith and fair dealing, lack of mutual assent or meeting of the minds, lack of unequivocal acceptance, and lack of due process." App. 20-21. As we established above, all of these arguments from the district court action have been repeated by the Simons in this action.

Similarly, the Simons' district court motion for directed verdict argued that the "IRS obtained the Tax Court stipulated decisions by coercing the Taxpayers into agreeing to pay amounts they legitimately did owe." App. 28. They alleged that the "IRS committed fraud by obtaining the Taxpayers cooperation in settling the three years." Id. They further alleged that the IRS breached any alleged contract by using different statutes to attempt to collect upon than were used in their 1983 closing settlement agreement. App. 29. The motion further argued that the IRS failed to make a timely assessment after the 1983 Tax Court decisions. App. 30-31.

Finally, the Simons' district court motion to dismiss for lack of subject matter jurisdiction contained their argument that they have "no liability due to a fully satisfied settlement agreement." App. 48. The motion contained their argument that there are "undisputed facts verifying full payment of a contract." App. 49. Similarly, the motion argued that there are "undisputed facts as to why the July 25, 1983 alleged assessment was untimely and invalid." App. 54.

Thus, these documents filed by the Simons in the district court action demonstrate that both the district court action and this action arise from the same operative facts. The Simons are making the same arguments here which persuaded neither the district court, nor the Tenth Circuit of the merits of their cause. Moreover, the Simons settled that action and drafted a consent judgment reflecting that settlement. Their subsequent attempt to have that agreement set aside

was denied by the Tenth Circuit. In essence, the Simons ask this Court to reverse the decisions of the district court and the Tenth Circuit, which the Court cannot do. E.g., Maracalin v. United States, 52 Fed. Cl. 736 (2002). Thus, this Court should dismiss this action as barred by the doctrine of res judicata.

III. The Amended Complaint Is Barred By The Statute Of Limitations

The Tucker Act provides that an action is barred unless it is filed in this Court "within six years after such action first accrues." Id. An action "first accrues" when all the events have occurred which fix the alleged liability of the defendant and entitle the plaintiff to institute an action. Hopland Band of Pomo Indians v. United States, 855 F.2d 1573, 1577 (Fed. Cir. 1988).

Here, no breach or other wrong has been committed by the Government, as demonstrated by the two settlements. However, assuming for purposes of this motion that the Government breached and otherwise acted improperly with respect to the 1983 settlement, the alleged "breach of contract" occurred not later than 1988, when the IRS first attempted to collect the unpaid 1974 liability. In the alternative, the Simons' cause of action would have accrued at the latest when the Government filed the complaint in the district court in 1992. Thus, this action should have been filed no later than 1998 and is untimely by approximately eight years.

At page 11 of their amended complaint, the Simons allege that their action is not untimely because of the continuing claims doctrine. In support of this argument, they cite Brown Park Estates-Fairfield Development Co., 127 F.3d 1449 (Fed. Cir. 1997). In Brown, the plaintiffs and the Department of Housing and Urban Development ("HUD") entered into certain housing subsidy contracts which required HUD to make annual rent adjustment payments. Id. at 1451-52. The plaintiff filed suit in October 1994, alleging that HUD failed to make the rent adjustment

payments from 1986 to 1988. Id. at 1453. This Court dismissed the complaint as not timely. Id.

The Federal Circuit affirmed, rejecting the plaintiff's argument that the claim was saved by the continuing claims doctrine. Id. at 1455. The court of appeals explained that "[o]ver the years, the court's pay cases (military and civilian) concerned with the issue of limitations have often applied" the continuing claims doctrine. Id. at 1456. In these actions, the plaintiffs were allowed to sue for additional compensation at a higher rate for claims within the six year statute of limitations, but not beyond it. Id. The court of appeals stated that, for the doctrine to apply, the plaintiff's claim must be inherently susceptible to being broken down into a series of independent and distinct events or wrongs, each having its own associated damages. Id. Thus, a plaintiff who has an overtime claim may be wronged each time he is paid without receiving sufficient compensation, and there are damages associated with each underpayment. Id. However, when a claim is based upon a single distinct event which may have continued ill effects later on, it is not a continuing claim. Id.

Here, the Simons have already raised in the district court the allegedly improper actions that the Government took in making and then acting to collect the 1983 assessment. Since all of the allegations here relate to the propriety of the Government's action in its collection of taxes from the Simons, all of the Simons claims and defenses should have been asserted in that action and there is no basis for the filing of a separate law suit. However, even assuming that there was a claim that they could assert here, the claim accrued no later than 1992 when the Government filed suit in the district court. The Simons never explain why their claims had not accrued by 1992, nor do they state what independent and distinct events or wrongs had to occur beyond the tax assessment and the Government's filing of the lawsuit. The only thing the Simon's point to

at all is a 2004 IRS document which states that the IRS has determined that the penalty relating to their 1974 taxes was too high by $23.17 and would be refunded. Pl. App. 139. How this helps the Simons avoid the statute of limitations is unclear. They do not explain why such a small refund would cause their claim to accrue only 11 years after the filing of the lawsuit. Nor do they allege that this refund somehow prevented them from asserting their claims and defenses from 1992 until 2004. Thus, their claims are not saved by the continuing claims doctrine and should be dismissed by this Court.

IV. The Simons' Claim For A Refund Of The 1983 Payment Is Untimely

28 U.S.C. § 1346(a)(1) confers jurisdiction upon the district court and the United States Court of Federal Claims in any civil action against the United States for the recovery of any internal revenue tax erroneously or illegally assessed or collected. A taxpayer cannot succeed in an action to recover taxes paid unless he can show that he actually overpaid his taxes, or that the taxes were assessed or collected after the expiration of the applicable period of limitations. Lewis v. Reynolds, 284 U.S. 281 (1932).

No suit or proceeding may be maintained in any court for the recovery of any internal revenue tax alleged to have been erroneously or illegally assessed or collected until a claim for refund or credit has been duly filed with the Internal Revenue Service. 26 U.S.C. § 7422(a). In addition, the suit must be timely under 26 U.S.C. § 6532(a). Section 6532(a) provides:

> No suit or proceeding under section 7422(a) for the recovery of internal revenue tax, penalty, or other sum, shall be begun before the expiration of 6 months from the date of filing the claim required under [section 7422(a)] unless the Secretary renders a decision thereon within that time, nor after the expiration of 2 years from the date of mailing by certified mail or registered mail … of a notice of the disallowance of the part of the claim to which the suit

or proceedings relates.

26 U.S.C. § 6532(a)(1). Section 6532(a)(4) further provides that "any consideration, reconsideration, or action by the Secretary with respect to such claim following the mailing of the notice by certified mail or registered mail of disallowance shall not operate to extend the period within which suit may be begun." 26 U.S.C. § 6532(a)(4).

A claim for refund is timely if it is filed either within three years of the due date of the return, including extensions, or two years from the date of payment. 26 U.S.C. § 6511(a). According to the record, plaintiffs paid $49,545.55 towards their 1973 and 1974 income tax liabilities on or about November 7, 1983. According to the complaint at page 12, plaintiffs subsequently filed a claim for a refund for the years 1972, 1973, and 1974, on or about March 16, 1991. Thus, this claim was untimely by more than five years pursuant to 26 U.S.C. § 6511(a).

According to the complaint (p. 12), the IRS disallowed the claim on or about March 29, 1991. Thus, assuming that the March 29, 1991, notice of disallowance was mailed to the plaintiffs by certified or registered mail, their claim pursuant to 7422(a) and 28 U.S.C. § 1346(a)(1) is untimely and the Court does not possess jurisdiction to consider this claim. However, the IRS's records in our possession do not show that (1) petitioners filed a claim for refund for the years 1972-1974 and/or (2) that the IRS acted on such a claim.

V. This Court Does Not Possess Jurisdiction To Consider The Simons' Tort Claims

At pages 35-67 of the amended complaint, the Simons allege that the Government committed various actions which they claim were fraudulent. However, the Court of Federal Claims possesses no jurisdiction to consider a plaintiff's claims for fraud. Brown v. United States, 105 F.3d 621, 623 (Fed. Cir. 1997). As the Federal Circuit explained in Brown, a

plaintiff's claims for fraud are tort claims, and the Court of Federal Claims does not possess jurisdiction to entertain tort claims. Brown, 105 F.3d at 623. Accord Englert v. United States, 38 Fed. Cl. 366, 373 (1997 ) ("... this Court has no jurisdiction to entertain allegations of fraudulent actions of government employees. This Court has no jurisdiction over allegations by plaintiff which may be characterized as based upon tort, including any claims by plaintiff of fraud or breach of duty or negligence.").

At pages 67 to 82 of their amended complaint, the Simons allege that the Government committed various torts against the Simons. They allege that the Government committed an abuse of administrative process (pp. 67-70), an abuse of judicial process (pp 70-72), slander and libel (pp. 72-78), conspiracy and willfulness (pp. 78-81), and harassment (pp. 81-82). However, it is well settled that this Court has no power to adjudicate torts. Shearin v. United States, 992 F. 2d 1195, 1197 (Fed. Cir. 1993); 28 U.S.C. § 1491(a)(1). Thus, these claims should be dismissed for lack of jurisdiction.

VI. The Simons' Takings Claims Fail To State A Claim

The Simons allege that the Government committed the following takings: their property rights in the 1983 contract (compl. 84/223), their property interests in their own records (compl. 91/233), their property interest in the unencumbered use of real estate licenses and brokerage activities (compl. 91/234), their property interest in pursuing the profession of their choice (compl. 91/235), Mr. Simons' property interest in his entire career (compl. 92/236), their youthful vigor (compl. 92/237), Mr. Simons' reputation and potential for holding Government office (compl. 93/238), his property interest in his otherwise unencumbered ability to pledge properties he owned to secure funds to purchase additional properties (compl. 94/239), Mr.

Simons' ability to contract to develop Traverse Ridge (compl. 94/240), and Mrs. Simons' property right in her husband's professional progress and in her own career of choice (compl. 95/243-44).

The Takings Clause provides, "nor shall private property be taken for public use, without just compensation." U.S. Const. amend. V, cl. 4. In order to establish a violation of the Takings Clause, the Simons must first establish that they possessed a property interest which is compensable under the Takings Clause. Air Pegasus of D.C., Inc. v. United States, 424 F.3d 1206, 1212 (Fed. Cir. 2005). Second, they must establish that the Governmental action at issue amounted to a compensable talking of their property. Id.

We are aware of no cases which hold the Government liable for many of the types of takings that the Simons allege, e.g., their careers, reputations, potential for holding Government office, and youthful vigor. Moreover, such takings would not be authorized takings, and, therefore, would not be compensable. Del-Rio Drilling Programs, Inc. v. United States, 146 F.3d 1358, 1362 (Fed. Cir. 1998).

All of the Simons' takings claims stem from their argument that the Government should not have imposed additional taxes upon them for 1974. However, the imposition of an obligation to pay taxes is not a taking. Kitt v. United States, 277 F.3d 1330, 1336 (Fed. Cir. 2002). To the extent that Mr. Simons complains that the Government took his real estate license, licenses are not protected by the takings clause. American Pelagic Fishing Co., L.P. v. United States, 379 F.3d 1363, 1373 (Fed. Cir. 2004). To the extent that the Simons' claim that the Government took their contractual rights to the 1983 contract, no taking occurred because the plaintiffs retained their contractual remedies. Castle v. United States, 301 F.3d 1328 (Fed. Cir.

2002).[2]

Moreover, the Federal Circuit has noted that simply placing a Fifth Amendment label on a claim that the plaintiff should have prevailed in another Court does not state a takings claim, it simply reargues the previous case. Helfer v. West, 174 F.3d 1332, 1335 (Fed. Cir. 1999). This Court does not possess jurisdiction to consider takings claims based upon the actions of another court. Allustiarte v. United States, 256 F.3d 1349, 1351 (Fed. Cir. 2001). By stipulating to the entry of decisions requiring them to pay additional taxes to the Government in both the Tax Court and the district court, the Simons conceded the merits of the Government actions.

CONCLUSION

For the foregoing reasons, defendant respectfully requests this Court dismiss the amended complaint.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

MARK A. MELNICK
Assistant Director

[2] Defendant is aware that this Court is considering takings claims where there is a contract between the plaintiff and the Government in the context of spent nuclear fuel cases, however those cases involve an allegation that the Government's actions forced the plaintiffs to store the spent nuclear fuel on their property. E.g., Omaha Public Power Dist. v. United States, 69 Fed. Cl. 237 (Fed. Cl. 2005). No similar allegation has been made here.

MICHAEL N. O'CONNELL
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit, 8th Floor
1100 L St., NW
Washington, D.C. 20530
Tel: (202) 307-0282

Dated: May _, 2006

Attorneys for Defendant

## INDEX TO APPENDIX


| Document | Pages |
| --- | --- |
| Plaintiff's [Gov't] Memorandum of Law in Support of its Motion for Summary Judgement | 1-11 |
| Simons' Response to the IRS' Motion for Summary Judgment | 12-25 |
| Simons' Motion for a Directed Verdict and an Evidentiary Hearing | 26-33 |
| Simons' Motion to Dismiss IRS Claims for Lack of Subject Matter Jurisdiction | 34-63 |
| District Court Order, June 19, 2002 | 64-67 |

Certificate of Filing

I hereby certify that on this 13 th day of May, 2006, a copy of the Defendant's Motion For To Dismiss was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/Michael N. O'Connell
Michael N. O'Connell