Case 1:06-cv-00115-SGB Document 12-2 Filed 05/13/2006 Page 1 of 33

PAUL M. WARNER (3389)
United States Attorney
185 South State Street, Suite 400
Salt Lake City, Utah 84101
Telephone: (801) 524-5682

JEFFREY D. SNOW
Trial Attorney, Tax Division
U.S. Department of Justice
P.O. Box 683, Ben Franklin Station
Washington, D. C. 20044
Telephone: (202) 307-6605

Attorneys for the United States of America

FILED IN UNITED STATES DISTRICT COURT, DISTRICT OF UTAH
[illegible] 2001
BY ____________

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, Plaintiff, | ) |
| v. | ) Civil No. 2:92CV-1071B |
| DAN C. SIMONS, et al., Defendants. | ) |

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

The United States, Plaintiff herein, has moved for summary judgment. This Memorandum is offered in support of that Motion.

**Issue**

Does there exist a genuine issue of material fact requiring a trial; and preventing this Court from granting Plaintiff's Motion (with, thereafter, the entry of judgment against the Simons' for their previously agreed-to 1974 income tax liabilities)?

142

Case 1:06-cv-00115-SGB Document 12-2 Filed 05/13/2006 Page 2 of 33



**The Standard for Relief by Summary Judgment**

"Summary judgment procedure," states the Supreme Court in Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986) "is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy and inexpensive determination of every action."

> The object of a summary judgment motion is, of course, to separate what is formal or pretended from what is genuine and substantial, so that only the latter may subject a litigant to the burden of a trial (citation omitted).

Becker v. Safelite Glass Corp., 244 F.Supp. 625, 631 (D. Kans. 1965), where the District Court also notes that such a motion "... goes to the merits of the case and the Court on summary judgment procedure is entitled to consider the pleadings, ...affidavits, if any, ... documentary and other evidentiary materials which are the subject of judicial notice."

**Introduction**

The United States brought this action to reduce income tax assessments against Dan C. Simons and Sally J. Simons for (a) 1974, (b) 1982 and (c) 1987 to judgment; and for a determination that the Simons' residence (as well as three condominiums and a parcel of unimproved property) were held by the trustees of two trusts as the nominees of Dan C. Simons and Sally J. Simons (or in the alternative that the transfer of those parcels of real property by the Simons to the trusts were fraudulent conveyances), and (3) to foreclose the federal tax liens against those parcels of property.

Case 1:06-cv-00115-SGB Document 12-2 Filed 05/13/2006 Page 3 of 33



**Undisputed Facts**

The underlying liability pertaining to the Simons' (a) 1974 tax year was assessed "On July 25, 1983... [for] a $17,071 deficiency in income tax and an $854 addition to tax against taxpayers for tax year 1974", United States v. Dan C. Simons, et al., 129 F.3d at 1386, 1388 (10th Cir. 1990), and *was based upon* an "agreed" Tax Court Decision entered on April 22, 1983.[1] A copy of this Decision, which also provided for "statutory interest, is attached as Exhibit IV-A to Plaintiff's Motion. A compilation of the escalating 1974 liability, as of June 5, 1992, is set forth in a Department of the Treasury Certificate of Assessments and Payments which is attached as Exhibit IV-B to Plaintiff's Motion. (This calculation will be brought current should Plaintiff's Motion be granted by this Court.)

---

[1]This Court, after Plaintiff brought the instant "collect-ion" case to it, granted judgment *against* the United States with regard to the 1974 liability on the ground that the statute of limitations for bringing the action had expired. That ruling was later reversed and remanded to this Court by the Tenth Circuit Court of Appeals in order "... to determine if or when the government signed tax-payers' offer." See, United States v. Dan C. Simons, et al., 129 F.3d 1386, 1390 (1997), a copy of which opinion is attached as Exhibit III-A to Plaintiff's Motion. Thus, the Offer in Compromise referred to by the Appellate Court at p. 1388 (at second paragraph of "Background"), was made by Mr. and Mrs. Simons on February 2, 1989, and was signed by Internal Revenue Officer Don Thurman on June 15, 1989. A copy of this Offer is attached as Exhibit III-B to Plaintiff's Motion. The Offer was rejected by letter dated June 18, 1990. A copy of this letter is attached as Exhibit III-C to Plaintiff's Motion.

Additionally, this Court (b) granted the United States summary judgment with regard to the 1987 tax year, and (c) dismissed without prejudice the Government's claim with regard to the 1982 tax liability (which 1982 liability, however, is now moot as it has been fully satisfied). See, Judgment and Order, March 30, 1995, of copy of which is attached as Exhibit I to Plaintiff's Motion.

As to the "fraudulent conveyance" portion of this case, the record shows that the parties have stipulated that the United States' tax liens have priority over the trusts in the parcels of real property before the Court, and that the other entities named in the complaint--which might claim an interest in the parcels of real property--have disclaimed any interest in the real property. See, Order, May 14, 1998, a copy of which is attached as Exhibit II to Plaintiff's Motion. Therefore, if Plaintiff's Motion is granted by this Court, an Order of Foreclosure would be immediately appropriate.

**"Disputed" Fact**

The Simons are imploring this Court to reopen the aforesaid April 22, 1983 "agreed" Tax Court Decision pertaining to their 1974 tax liabilities. They seek to convince this Court that the said Tax Court Decision did not reflect the parties' "true" settlement agreement. Thus, see the Simons' recently filed "Amendment and Supplement to the Defendants' Pleadings" where at "Statement of

Case 1:06-cv-00115-SGB Document 12-2 Filed 05/13/2006 Page 5 of 33



Facts" (at p. 1, paras. 3 and 5) they allege that

> At all times the IRS had the Taxpayers original 1974 return and a District Counsel Decision [dated "1/26/83" and attached as Exhibit VI to Plaintiff's Motion] that explained a package settlement agreement between the IRS and the Simons for tax years 1973, 1974, and 1975 *memorialized* in two Tax Court decisions in 1983. (Emphasis supplied.)
>
> The District Counsel Decision goes into detail as to the issues being resolved by the agreement and all three tax years being treated together for purposes of settlement....

Thus, the Simons' plea to this Court is similar to their February, 1998, motion to the Tax Court where the Simons unsuccessfully[2] moved that Court to vacate the subject 1974 Tax Court Decision (and a 1973 Tax Court Decision not before this Court) based upon the Simons' aforesaid alleged "true" settlement agreement with Plaintiff:

> The taxpayers allege that they sent the IRS a check for what they believed to be the total obligation due under their [pre-Tax Court Decision] settlement agreement with the IRS for tax years 1973 and 1974. They further allege that the IRS erroneously applied the entire payment toward their 1973 tax obligations, plus interest.

Danny C. Simons et al. v. Commissioner, 1999 WL 485378 (10th Cir. July 12, 1999) (unpublished), which opinion is attached as Exhibit V to Plaintiff's Motion. As indicated in that 1999 case, the Tax Court's denial of the Simons' request for relief was affirmed by the Tenth Circuit Court of Appeals.

---

[2]The Tax Court had no jurisdiction as "A party seeking to vacate a Tax Court decision must file a motion within thirty days after entry of the decision...." Danny C. Simons et al. v. Commissioner, 1999 WL 485378 (10th Cir. July 12, 1999) (Exhibit V to Plaintiff's Motion.

Case 1:06-cv-00115-SGB Document 12-2 Filed 05/13/2006 Page 6 of 33



**Discussion**

*Factually*, the Simons' contention that they settled their 1974 tax liability with the Internal Revenue Service *prior* to the date of the entry of the Tax Court Decision (with a check *later* "sent" by them to the Service) is *not* supported by the record:

**First**, a reading of the "District Counsel's Decision" dated "1/26/83" (Exhibit VI to Plaintiff's Motion) at its pp. 2-3 reaffirms Plaintiff's position that the 1974 year has been resolved as stated in the Tax Court Decision. E.g., as pertains to the year 1974, District Counsel states that certain deductions would be disallowed as business expenses but allowed as short term capital losses; that the negligence penalty by consent of Mr. Simons would be asserted; and that because District Counsel (unilaterally) determined that fraud could not be proven, the United States would not assert a civil fraud penalty for 1974 against Mr. Simons.

**Second**, three months *after* the "District Counsel's Decision"[3], but 17-days *before* the Tax Court Decision was entered, the parties through their respective counsel on **"4/5/83"** signed off on the proposed Decision to be presented to the Tax Court for its entry. Exhibit IV-A to Plaintiff's Motion. Obviously, counsel for the

[3]Plaintiff believes that the District Counsel's Decision is better characterized, not as a "decision", but as a *rationale* for the settlement of the Tax Court cases which was to follow.

Simons would *not* have signed the said document to be presented to the Tax Court for entry if the terms stated in the document were not the terms which, through negotiations[4], had been ultimately arrived at, and agreed to by the parties.

**Third**, the modifications discussed in District Counsel's Decision were--without objection--reflected in the **April 22, 1983,** agreed Tax Court Decision (i.e., the actual, resulting "settlement") for the year 1974. Exhibit IV-A to Plaintiff's Motion. If, arguendo, the Simons had--as they claim--settled their tax matters with the Internal Revenue Service at some time between early January and April 22, 1983, it follows that the Simons' attorneys (and the Service) would have so notified the Tax Court and withdrawn the proposed, stipulated, Tax Court Decision.

**Fourth**, the Simons--as would persons who were "comfortable" with a negotiated Tax Court Decision--did nothing for 6 years. Then, in 1989, Mr. Simons--again, as would any person who wanted to "get a fresh start by resolving an uncontested old debt, offered--as reflected in a document dated "2/21/89" (Exhibit III-B to Plaintiff's Motion), to settle his 1974 tax liabilities. He noted

---

[4]Those discussions were credited by the Tenth Circuit Court of Appeals in Danny C. Simons, et al. v. Commissioner, supra (Exhibit V to Plaintiff's Motion), as having occurred "During the course of the Tax Court proceedings [when] the taxpayers' counsel negotiated with the IRS to settle the disputed taxes. The record before us ...does contain some correspondence from the taxpayers' counsel concerning proposed terms of the settlement. On April 22, 1983, the Tax Court entered decisions in both cases, each of which purported to be ":[p]ursuant to agreement of the parties"."

Case 1:06-cv-00115-SGB Document 12-2 Filed 05/13/2006 Page 8 of 33



in his offer, *not* that the 1974 year involved had previously been settled, or paid, but that "I cannot pay these taxes." His offer was rejected by the Internal Revenue Service. Exhibit III-C to Plaintiff's Motion.

**Fifth**, it was not until 1998, 24-years after the tax period in issue and 15-years after the entry of the Tax Court Decision for that 1974 period, that the Simons "switched gears" by belatedly asserting that the Tax Court Decision did *not* mirror the true settlement of the parties. Specifically, they moved the Tax Court to *redetermine* their signature-agreed to, previously unopposed, and, in fact, later-affirmed (see Exhibit III-B to Plaintiff's Motion) Tax Court Decision for 1974. Predictably, the Tax Court refused to do so. That refusal was affirmed by the Tenth Circuit Court of Appeals in United States v. Dan C. Simons, et al., 129 F.3d at 1386, 1388 (10th Cir. 1990) (Exhibit V to Plaintiff's Motion).

*Legally*, the Simons' 1974 tax liability, which resulted in the Tax Court's entry of a final, appealable Decision having the status of a "final judgment", should not be litigated here since the issue the Simons currently raise, i.e., that they settled their 1974 tax liability with the Internal Revenue Service *prior* to the date of the entry of the, consequently, "erroneous" Tax Court Decision,

Case 1:06-cv-00115-SGB Document 12-2 Filed 05/13/2006 Page 9 of 33



*could* have been brought by the Simons to the Tax Court's attention (and litigated) before the Tax Court entered its Decision on April 22, 1983. Thus, see, In re Daily, 47 F.3d 365, 369 (9th Cir. 1995), where the Appellate Court explains that,

> It is implicit in the doctrine of collateral estoppel that, where a party has been accorded a full and fair opportunity to litigate an issue in a prior proceeding, due process is not violated by denying the party a further opportunity to litigate the same issue in a subsequent proceeding. *See Blonder-Tongue Labs., Inc. v. Univ. of Ill. found.*, 402 U.S. 313, 328-29 (1971).

In closing, see Allen v. McCurry, 449 U.S. 90, 94 (1980), where the United States Supreme Court states that the doctrines of *res judicata*[5] and *collateral estoppel* aim to "... relieve parties

---

[5]As concerns the related doctrine of res judicata, see Commissioner v. Sunnen, 333 U.S. 591, 597-598 (1948), where the United States Supreme Court explains that

> The general rule of *res judicata* applies to repetitious suits involving the same cause of action.... The rule provides that when a court of competent jurisdiction has entered a final judgment on the merits of a cause of action, the parties to the suit and their privies are thereafter bound "not only as to every matter which was offered and received to sustain or defeat the claim or demand, *but as to any other admissible matter which might have been offered for that purpose.*" (Emphasis supplied.)

Thus, e.g., assuming, arguendo, they would otherwise have been entitled to do so, the doctrine of *res judicata* would prevent the Simons from filing a suit in this Court *to contest* their tax liabilities for the year 1974 since the record clearly shows that after negotiations, and with the explicit consent of counsel for both parties, the Tax Court entered the Decision, Exhibit IV-A to Plaintiff's Motion, now being questioned. .

Case 1:06-cv-00115-SGB Document 12-2 Filed 05/13/2006 Page 10 of 33



of the cost and vexation of multiple lawsuits, conserve judicial resources, and, by preventing inconsistent decisions, encourage reliance on adjudication."

**Conclusion**

Plaintiff submits that its Motion for Summary Judgment should be granted with its attorney directed to prepare a proposed Judgment and Order of Foreclosure.

Respectfully submitted,

PAUL M. WARNER
United States Attorney

By: ______________________
JEFFREY D. SNOW
Trial Attorney, Tax Division
U. S. Department of Justice

December 28, 2000

CERTIFICATE OF SERVICE

I certify that on December 28, 2000, I placed the foregoing Motion with Exhibits and Memorandum of Law in the Department's mailing system in a sealed envelope, postage prepaid, addressed to the Simons' attorney as follows:

Susan R. Schildmeyer, Esq.
11091 South Shilling Avenue,
Suite 2452
South Jordan, Utah 84095

JEFFREY D. SNOW

Case 1:06-cv-00115-SGB Document 12-2 Filed 05/13/2006 Page 12 of 33

FILED IN UNITED STATES DISTRICT COURT, DISTRICT OF UTAH
JAN 29 2001
MARKUS B. ZIMMER, CLERK
BY DEPUTY CLERK

Susan R. Schildmeyer #7485
Attorney for the Defendants
11091 S. Shilling Ave. Ste. 2452
South Jordan, Utah 84095
(801) 576-0091

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION
UNITED STATES OF AMERICA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>plaintiffs,<br>v.<br><br>DANNY C. SIMONS, Sally J. Simons, et al<br><br>defendants. | **civil no. 92-C-1071B**<br><br>RESPONSE TO THE IRS' MOTION FOR SUMMARY JUDGMENT<br>(Oral hearing requested)<br><br>Judge Dee V. Benson |

Now come the defendants, Danny C. and Sally J. Simons, (Taxpayers) by and through their undersigned counsel, request the Court to deny the IRS' motion for summary judgment, as follows:

The standard for summary judgment set forth in Rule 56(c), sustains summary judgment as proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986). See, Federal Rules of Civil Procedure (FRCP) at Rule 56(c). On summary judgment the inferences to be drawn from the underlying facts contained in such materials must be viewed in the light most favorable to the party opposing the motion. *United States v. Diebold, Inc.*, 369 U.S. 654, 656 (1962). Here, the IRS claims the Taxpayers owe money pursuant to two (2)



144

alleged contracts: (1) a 1974 Tax Court decision, (Plaintiffs' Ex. IV) that the taxpayers contend was part of one alleged agreement for three tax years, 1972, 1973, and 1974 memorialized in two (2) stipulated Tax Court petitions; and (2) pursuant to the tolling of the statute of limitations for a 1989 offer in compromise. The IRS wholly fails to deny the Taxpayers' claims that no notice and demand was sent prior to the liens and levies they attempt to collect upon, even though the Taxpayers has submitted computer readouts and IRS policies to the court showing why they never received notice and demand. The IRS fails totally to provide the Court with the latest computer readout showing nothing, zero, zip is owed, (Def. Exhibit 1B), evidencing the disputed material fact that at least one branch of the IRS is at odds with another.

Here, "[i]t is true that the issue of material fact required by Rule 56(c) to be present to entitle a party to proceed to trial is not required to be resolved conclusively in favor of the party asserting its existence; rather, all that is required is that sufficient evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *First Nat. Bank v. Cities Service*, 391 U.S. 253, 288-289 (1968). As in *First Nat.*, " The case at hand presents peculiar difficulties because the issue of fact crucial to petitioner's case is also an issue of law. . . ". Id.

In support of the Taxpayers contention they do not owe, they rely upon (1) a large 1 ½" blue book captioned "The Agreement Between the IRS and the Taxpayers" submitted on or about June 17, 2000 wherein 28 numbered documents, with explanations preceding each document, spells out dozens of facts explaining why the IRS collection efforts are in error; (2) another 1 ½ " blue book

captioned Defendants Exhibits 1A through 41; (3) another large 1 ½" blue book with over sixty FOIA and Privacy Act requests and responses showing how the IRS was refusing to give them their records though the IRS and the DOJ had access to them all along. These compilations have charts and explanatory documents attached to the Defendants' Exhibits. The Defendants hereby designate each numbered document in these compilations as a Defendants' Exhibit relating to the facts contained in the documents and as explained in the explanatory documents with each document. The Defendants also attached charts for the last two compilations and a time line for the first compilation to simplify the task of the Court and the IRS to identify those facts in contention.

Since the IRS is still collecting, the IRS is at odds with some of those facts, though the IRS fails to state why or identify which facts, further denying the Taxpayers' due process to adequately respond or explain the IRS errors. It is a surprisingly novel theory of law that the IRS can collect an undisclosed amount, based upon undiscussed material facts that fly in the face of their contention, and based upon only bare assertions that the Taxpayers received the REQUIRED notice and demand associated with tax assessments.

It is the Taxpayers' contention that the IRS applied and is applying the wrong statutes as to interest collected on the stipulated decisions, partially accounting for why the payment of $50,000 by the Taxpayers was almost totally used to 'satisfy' only 1973's claimed taxes, instead of to all three tax years, 1972, 1973, and 1974 as the Taxpayers assert was allegedly agreed to. In short, the computer does not reflect the agreement or the stipulated decisions, and shows zero owing, and the IRS is still claiming the Taxpayers owe, without stating why or upon what basis. ( A huge genuine

issue of material fact). A summary judgment motion by the IRS is utterly frivolous in the face of all the Taxpayers' asserted facts (most often associated with statutes or regulations) and over one hundred defendants exhibits and exhaustive research--- as there are many facts to be determined to resolve this dispute. The defendants invite, and have invited the IRS, to specifically identify which of the facts the Taxpayers have put forward they believe are in error. They do not, apparently leaving it to the Court's imagination to understand why the 1974 tax court decision is now being collected separately from all the other tax years that were part of ONE agreement. See Plaintiffs' Exhibit VI.

## COLLATERAL ESTOPPEL DOES NOT PREVENT THE SIMONS' FROM RAISING THEIR DEFENSES AND THEIR COUNTERCLAIMS.

The IRS states that collateral estoppel prevents the Taxpayers from raising their claims based upon the two 1983 stipulated Tax Court decisions. This is a blatantly erroneous position. Collateral estoppel is a form of res judicata or issue preclusion. Collateral estoppel as a form of res judicata prevents the relitigation of an issue decided upon the merits. "[M]atters which were actually litigated and determined in the first proceeding cannot later be relitigated. Once a party has fought out a matter in litigation with the other party, he cannot later renew that duel. In this sense, res judicata is usually and more accurately referred to as estoppel by judgment, or collateral estoppel. See Restatement of the Law of Judgments,68, 69, 70; Scott, 'Collateral Estoppel by Judgment,' 56 Harv.L.Rev. 1." *CIR v. Sunnen*, 333 U. S. 591, 599 (1948). The litigation must be on the merits for a judgment to be final for purposes of res judicata or collateral estoppel. See,

*Cromwell v. County of Sac*, 94 U.S. 351, 352 A ' judgment' " in the prior action operates as an estoppel, not as to matters which might have been litigated and determined, but 'only as to those matters in issue or points controverted, upon the determination of which the finding or verdict was rendered." *Cromwell v. County of Sac* at 353. Even if the stipulated decisions were a final judgment based upon the merits of an independent finding of the court, resting on evidence and witnesses, estoppel will be applied very narrowly "where the second action between the same parties is upon a different cause or demand. . ." *Sunnen* at 598. The Taxpayers ardently claim that amounts the IRS is attempting to collect is not based upon on the Tax Court decision terms and law at the time, but new unknown and un-described terms, policies, regulations unknown to the Taxpayers when they entered the alleged agreement. The Taxpayers compilations include policies for the computer adopted after the Tax Court decision that may explain why the 1974 account was later, in 1985, erroneously identified collectable.

In this case, a stipulated decision is an 'agreement' with no findings of facts based upon the merits. It is nothing more than a contract. *Kurio v. U. S.*, 71-1 USTC, 85,556, *Hurt v. U. S.*, 76 AFTR 2d 95-7815 ¶95-5717 (4th Cir. 1995 unpublished), and *Anthony v. U.S.*, 987 F.2d 670,673 (10th Cir. 1993). As such collateral estoppel simply does not apply.

Further, when the sovereign sues, the Taxpayer can sue for recoupment. Fair is fair.

> "If the claim for income tax deficiency had been the subject of a suit, any counter demand for recoupment of the overpayment of estate tax could have been asserted by way of defense and credit obtained notwithstanding the statute of limitations had barred an independent suit against the Government therefor. This is because recoupment is in the nature of a defense arising out of some feature of the

> transaction upon which the plaintiff's action is grounded. *Such a defense is never barred by the statute of limitations* so long as the main action itself is timely."

*Bull v. United States*, 295 U.S. 247,262 (1935).

> The United States, we have held, cannot, as against the claim of an innocent party, hold his money which has gone into its treasury by means of the fraud of their agent. United States v.State Bank, 96 U.S. 30 . *While here the money was taken through mistake without any element of fraud, the unjust retention is immoral and amounts in law to a fraud on the taxpayer's rights.* What was said in the State Bank Case applies with equal force to this situation. 'An action will lie whenever the defendant has received money which is the property of the plaintiff, and which the defendant is obliged by natural justice and equity to refund. The form of the indebtedness or the mode in which it was incurred is immaterial. ... In these cases (cited in the opinion), and many others that might be cited, the rules of law applicable to individuals were applied to the United States'. Emphasis added.

Id.

These Taxpayers assert most ardently that they were cheated by these 'contracts' and that the stipulated decisions are not a contract at all, but an illegal attempt to collect what is not owed.

**THE ONE SETTLEMENT FOR TAX YEARS 1972, 1973, AND 1974, MEMORIALIZED IN TWO TAX COURT DECISIONS ON APRIL 22, 1983 IS AN ILLEGAL UNENFORCABLE CONTRACT**

The Tenth Circuit court has found stipulated tax court decisions to be formal contracts. *Anthony v. U.S.* 987 F.2d 670, 673 (10th Cir. 1993). As such, general contract principles apply. Id. *United States v. ITT Continental Baking, Co.*, 420 U. S. 223, 238 (1975). Necessarily, the Court must ascertain the meaning and intent of the parties as expressed in the language utilized. *See, Sand Filtration Corp. v. Cowardin*, 213 U.S. 360 (1909). If the contract is unambiguous, then the parties' intent is a matter of pure law and only the four corners of the document are necessary for examination. *Nehi Bottling Co. v. All-American Bottling Corp.*, 8 F.3d 157, 162 (4th Cir. 1993).

*Anthony* at 673. The Court must determine if there is an ambiguity as a matter of law. *Nehi* at 161-162. An ambiguity exists when the words used to express the intention of the parties are insufficient in the sense that "the contract may be understood to reach two or more plausible meanings." *Beehive Brick company v. Robinson Brick Company* 1989 Utah App. LEXIS 146 **10. Here, the mere fact the IRS is collecting based upon the Tax Court decisions, and the Taxpayers are fighting, shows a genuine issue of material fact as to the meaning of the alleged settlement.

Once the Court determines that a contract is ambiguous, parol evidence is admissible to determine the parties intent." Id. at **11 citations omitted. "<u>When contract interpretation will be determined by extrinsic evidence of intent, it becomes a question of fact</u>." *Copper State Leasing Col. v. Blacker Appliance & Furniture Co.*, 770 P.2d 88,90 (Utah 1988). The IRS' attachment and reference to the District Counsel's Decision, which is extrinsic evidence, is an admission that a genuine issue of material fact exists as to the intent of the parties in the alleged agreement. The IRS fails to acknowledge the IRS drafted income averaging documents that never so much as referenced any interest statutes, though they had a square to check and a blank space to specifically reference any interest statutes being used. Def. Ex. 9 in Def. Exh. 1A through 41. A simple matter that could have avoided this entire mess.

Ambiguities in the IRS drafted documents are to be construed against the drafter. *Anthony* at 674. *See, Milk 'N' More, Inc. v. Beavert*, 963 F.2d 1342, 1344 (10th Cir. 1992); *Clapp v. Commissioner*, 875 F. 2d 1396, 1399 (9th Cir. 1989). Like Anthony and Hurt, interest on the Tax Court stipulated decisions is not noted in the underlying documents or the decision. "The laws

which exist at the time and place of making a contract determine its validity, construction, discharge and measure of efficiency for its enforcement." *Ireland v. Mackintosh* 1900 Utah LEXIS 29 ***12. In 1982, when the alleged agreement was negotiated, and in 1983 when the Tax Court came to Salt Lake and the stipulated decision was signed, the following regulations could be applied to this alleged agreement. It is a factual matter as to which regulations were applied to the alleged agreement for interest calculations: For example, if the IRS applies one type of interest to all three years we obtain a calculation within .07 cents of what the Taxpayers actually paid in 1983. See Defendants' Exhibit 13 attached to the defendants' description of the alleged agreement. If the IRS applies another statute's interest to the Tax Court decisions then nearly all the Taxpayer's payment is applied to only 1973.

"The laws which exist at the time and place of making a contract determine its validity, construction, discharge and measure of efficiency for its enforcement." *Ireland v. Mackintosh* 1900 Utah LEXIS 29 ***12. Here, the IRS appears to be applying the year 2001 versions of the law to tax years 1972, 1973 and 1974. The IRS appears to be ignoring the now extinct income averaging statutes that were applicable at the time, along with their statutes of limitation and limited interest.

Here, Taxpayers argue the extrinsic evidence and finding of fact of income averaging and the use of mitigation statutes is necessary to establish intent of the parties. An issue of material fact.

Further, the 10th Circuit court has found that the word "taxes" as used in a settlement document includes interest. *Anthony*. Such a meaning is within the meaning of the aforementioned regulations. Without interest, the Taxpayers would not have had to pay interest at all. The 4th Cir.

Case 1:06-cv-00115-SGB Document 12-2 Filed 05/13/2006 Page 20 of 33

found that if interest was not discussed in an agreement or in the stipulated decision itself, as drafted by the IRS, that the IRS waived any claim to interest. *Hurt* at 95-7818. If interest is totally eliminated from collection in 1983 and for the amounts owing, the Taxpayers owe nothing and are due a refund for the interest paid with interest for the money used.

In one respect this case is very unlike *Anthony* and *Hurt*, where the IRS merely threatened to collect more interest, and the Anthonys and Hurts , upon notice thereof, paid the IRS and sued for a refund. Here, more like unto *Kurio*, the Taxpayers were victims of liens and levies for amounts never owed and for which they never received notice and demand, and where the IRS and DOJ at all times had access to the Taxpayers' records but failed to disclose them. Like Kurio, the Taxpayers were denied their records. Like *Kurio*, the agreement reserved to the IRS alternative promises prohibiting unequivocal acceptance and upon which the Taxpayers were fraudulently lead to believe would relieve them of future tax problems with these three years. Like *Kurio*, there was no meeting of the minds, good faith and fair dealing, clear and unequivocal description of the terms of the agreement. All these issues are genuine and are of material fact as to the legality and enforcement of the contract. If there was "an illegal contract" the IRS could not prevail upon its claims for recovery, and further, the Taxpayers should be equitably entitled to recoup what they paid under such a contract, and further obtain damages resulting from the illegal actions based upon the illegal contract. *See, Fibro Trust, Inc. v. Barahman Financial, Inc. et al* 1999 Utah LEXIS 14. Here, the Taxpayers have claimed fraud, mistake and duress, bad faith, lack of good faith and fair dealing, lack of mutual assent or meeting of the minds, lack of unequivocal acceptance, and lack

Case 1:06-cv-00113-SGB Document 12-2 Filed 03/13/2006 Page 21 of 33

of due process. Based upon the foregoing, summary judgment for the IRS should be denied.

## IF THE COURT FINDS THERE WAS A CONTRACT THE IRS IS ILLEGALLY BREACHING ITS CONDITIONS

Discerning breach of a contract is a fact sensitive question requiring examination of evidence of actions occurring since the formation of the contract. Usually when a debt is owed and paid, the other party is obligated to forebear collections. Here, the Taxpayers argue the IRS is applying statutes and regulations and policies not in existence at the time of the agreement, and after the fact that placed their 1974 account into collections two years after the fact and without their knowledge. The Service Center Replacement System policy of 1985 is one example wherein suspended accounts were unsuspended to IRS collections. A fact question- a material fact, that if proven will show how the IRS went back after the Taxpayers for an unagreed sum, based upon an inconsistent theory of law, without notice and demand. Breach of contract lies in actions or non-actions of the parties which are factual issues left to a judge and jury. Summary judgment is premature on the issue of breach. Breach is also an issue that will help clarify the intent of the parties.

## THE ILLEGAL OFFER IN COMPROMISE WAS SIGNED WHILE UNDER DURESS IN VIOLATION OF GOOD FAITH AND FAIR DEALING

The IRS relies upon the Offer in Compromise for extending the Statute of Limitations. If this document was signed under duress it is an illegal contract and is not enforceable. The offer in compromise operates as an option wherein an offer is made and the IRS forebears collection while

reviewing the offer. A promise for a promise. However, in this case, the IRS had levies upon the Taxpayer's bank accounts filed in 1988 (*Def. Ex. 22* Def. Ex. 1A through 40, *Def. Exhibits 25* Def. Exhibits attached to the Agreement). The notice and demand was mailed in January 1989. *Def. Ex. 23*, Def. Ex. 1A through 40. The IRS collection officer Don Thurman, while having the Taxpayers' records and not so informing the Taxpayer or his representative, was threatening enforced collection actions of seizure and the like if the Taxpayer did not enter the agreement. While duress is a legal term, it is fact sensitive.

Duress is (1) physical compulsion and/or (2) improper threat. *Andreini v. Hultgren et al,* 1993 Utah LEXIS 123 ** 15-16. A threat is improper if it is a breach of good faith and fair dealing, if the resulting exchange is not on fair terms, and the threat leaves the party with no reasonable alternative. Id. ** 17. Here, the only way to determine if the enforced collection action threats by Officer Thurman were improper is to examine the facts. First, were such threats made? See Thurman's notes *Def. Exh. 26* as attached to the Agreement, "Told him I would proceed with ECA [enforced collection action] date 9-1-88; "Taxpayer would not sign waiver (900). Warned of possible suit or other enforcement if deadlines not met. " 11-21-88; "Warned of ECA if not resolved levy, seizure, summons." 8-18-88.

Did Officer Thurman obtain the Taxpayer's records and copy them? Yes. "Also recd Orig of 7412 return- 1 ½ -2 inches thick-copy return later- sent to ROAide to copy." Id. 06-15-88. Did Officer Thurman understand that District Counsel had entered into a settlement agreement? Yes. "Return Copied-Info shows case went to tax court & District Council agreed to settle by clearance

of major penalties & minor tax changes. Apparently 1972 & 1973 are closed satisfied. Appears to be no open issues on 1974." Id. 7-11-88. Did Officer Thurman understand the importance of the Taxpayer receiving these documents? Yes. In Def. Ex. 26 as attached to the Agreement there are two nearly identical pages of Revenue Officer notes, one marked with a large 14, the other not so identified, both dated 91-88. In the first FOIA response a portion of the Action History page is redacted. In a subsequent FOIA response for the same page, date 9-8-88 is not redacted. There we find that Officer Thurman, just two months after studying the Taxpayers' original records and understanding there were "no open issues for 1974", "Told him [CPA] without any evidence that bal [balance] due is in error I must proceed with ECA. He sd. TP will fight it in court. I sd on what basis and if what that what he wants to do. " [exact quote from Revenue Officer notes]. These facts do not evidence good faith and fair dealing. They do not evidence due process. They do evidence a prima facie case for duress, and improper threat such that the Taxpayer had not alternative but to sign the Offer in Compromise and 900 waiver to extend the statutes of limitations or face seizure. The Taxpayer was hamstrung. He could not understand why the debt was claimed owed, could not obtain his records that were secreted by the IRS, could not obtain loans on liened property, had no credit with banks due to the levies on his account, could not afford large attorney bills. He took the only route open.

The IRS misquotes his intentions in signing the Offer in Compromise, referencing the Offer in Compromise document, with quotes, though these quotes can not be found in that document. Another fact issue that must be determined. Frankly, the Taxpayer was attempting to get rid of the

enormous bill facing him and was willing to try anything, including paying more money he did not owe, once again, to get the IRS out of his life. Too bad the IRS did not take his generous offer.

Based upon the foregoing, the Taxpayers' plead with the court to deny the IRS' motion for summary judgment founded upon the dozens of genuine issues of material fact that are still at issue. However, if the information contained herein is not sufficient to deny the IRS motion, the Taxpayers request a hearing so they may present their evidence to the Court. Defendants also pray for whatever other relief the Court may find to be just and fair.

So signed this 28th day of January, 2000.

Susan R. Schildmeyer
Counsel for the Defendants

A true and correct copy of the foregoing has been mailed by priority mail, U.S. Mail prepaid, to opposing counsel on this 28th day of January, 2000.

Susan R. Schildmeyer

# Exhibits/ Attachments to this document have **not** been scanned.

# Please see the case file.

Case 1:06-cv-00115-SGB Document 12-2 Filed 05/13/2006 Page 26 of 33

FILED
16 FEB 01 PM 3:59
DIST... UTAH
BY: DEPUTY CLERK

Susan R. Schildmeyer #7485
Attorney for the Defendants
11091 S. Shilling Ave. Ste. 2452
South Jordan, Utah 84095
(801) 576-0091

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION
UNITED STATES OF AMERICA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>plaintiffs,<br>v.<br>DANNY C. SIMONS, Sally J. Simons, et al<br><br>defendants. | **civil no. 92-C-1071B**<br><br>MOTION FOR A DIRECTED VERDICT AND AN EVIDENTIARY HEARING<br><br>Judge Dee V. Benson |

NOW COME THE DEFENDANTS, Danny and Sally J. Simons (Taxpayers), by and through their undersigned counsel, pursuant to rule 52 to move the Court to enter a directed verdict, leaving the damages for a jury, and request an evidentiary hearing. "A directed verdict is appropriate only if the evidence, viewed in the light most favorable to the nonmoving party, points but one way and is susceptible to no reasonable inferences supporting the nonmoving party." *Knight v. Snap-On Tools Corp.*, 3 F.3d 1398, 1401 (10th Cir. 1993). The defendants also pray for Rule 11, 26 and 37 sanctions of payment of all attorneys fees and a $1000 a day fine for each day for each lien and each levy, that deprived the Taxpayers of their rights to do business

and own their property. While seemingly high, it can not match the $91 million dollars the Taxpayers could have made had they been allowed to develop the property they sought to develop in 1988 when they discovered the unnoticed liens and levies. Point of the Mountain home developments. But for the IRS' unexcusable actions, their profit would have been assured.

The Defendants rely on two new cases: *U. S. v. Nipper*, docket no. 98-CV-526-K, decided by the Tenth Circuit Court of Appeals on February 8, 2001 (minimum requirement to show accuracy of assessment); *Professional Service Network, Inc. v. American Holding Co.*, doc. No. 00-1018, decided by the 7th Circuit Court of Appeals January 29, 2001 (duress in contract, abuse of process).

Here, the only material evidence the IRS has produced as to the assessments upon which they attempt to collect are a defective record of assessments (an erroneous computer readout), a single Tax Court decision (that by their own District Counsel's Decision was but part of a single alleged agreement for three years memorialized in two stipulated Tax Court decisions). The IRS has failed to produce (1) any notice and demand or proof of certified mailing or hand delivery as to the amount the IRS collected in 1983(a statutory requirement for an assessment); (2) any notices of

Case 1:06-cv-00115-SGB Document 12-2 Filed 05/13/2006 Page 28 of 33

deficiency for the new amounts they seek to collect after payment (that would have allowed the Taxpayers to contest the amounts claimed after payment in Tax Court); (3) and has failed to evidence how the Tax Court decision for 1974 was not part of a single agreement for three tax years, 1972, 1973, and 1974 that the IRS proffered to the Simons to agree to in their two Tax Court decisions.

The Taxpayers have produced a prolific amount of evidence as to:

*Fraud, duress, lack of good faith and fair dealing,*
*malicious prosecution, misuse of judicial process,*
*lack of mutual assent, lack of unequivocal acceptance,*
*lack of contract, justifying equitable recoupment and*
*attorneys fees and costs and damages*

(1) The IRS obtained the Tax Court stipulated decisions by coercing the Taxpayers into agreeing to pay amounts they legitimately did not owe as being after the statutes of limitation or that were admittedly not owed because the income was not received in the years the IRS was crediting the income to, wherein there is no mutual consideration or assent.

(2) The IRS committed fraud by obtaining the Taxpayers cooperation in settling the three years by secretly reserving to themselves an alternative basis for collection which resulted in thirteen years of illegal administrative and judicial enforced

collection processes.

*Breach of Contract, accord and satisfaction, illegal liens and levies, misuse of judicial processes, malicious prosecution*

(3) The IRS breached any alleged contract by using different statutes to attempt to collect upon than were used in their 1983 closing settlement agreement.

(4) The IRS has not rebutted the Taxpayers' evidence that they fully paid for their agreement.

*Denial of Due Process, Fraud, Duress, Illegal liens, misuse of judicial process malicious prosecution*

(4) The primary method that the IRS has used to attempt to collect amounts claimed owed has been liens and levies and Court action, based upon secrecy, duplicity, and the failure to produce the records of the Taxpayers to their Tax Professionals and the Taxpayers, even as to misrepresenting to the Taxpayers that the records were destroyed, while the IRS, Kirk Lusty, and the Department of Justice had access to these records at all times.

*Statute of Limitations violations, bad faith prosecution, lack of contract*

(5) The IRS had one year after the Tax Court decision (determination) to assess

Case 1:06-cv-00115-SGB Document 12-2 Filed 05/13/2006 Page 30 of 33

with a notice and demand pursuant to 26 USC §1314[1] and failed to do so, wherein the statutes of limitations for collection have run also under §6601 (Taxpayers use 1983 statutes and regulations). The IRS knew or should have known this when bringing their claims against the Taxpayers.

(6) The IRS' 900 waiver, as a contract, for the statute of limitations upon which they claim the statutes are still good, was signed under duress of illegal liens and levies due to a. the lack of prior notice and demand, and b. after the statutes of limitation had run. The IRS knew or should have known this prior to bringing this action. Mr. Mortenson recommended this Court action while in a position to know or should have known the amounts claimed owed were dubious and unfounded. Don Thurman placed the liens and levies on the property after noting that there were no open issues for 1974, and without prior notice and

---

[1]The adjustment authorized in section 1311(a) shall be made by assessing and collecting, or refunding or crediting, the amount thereof in the same manner as if it were a deficiency determined by the Secretary with respect to the taxpayer as to whom the error was made or an overpayment claimed by such taxpayer, as the case may be, for the taxable year or years with respect to which an amount is ascertained under subsection (a), and as if on the date of the determination one year remained before the expiration of the periods of limitation upon assessment or filing claim for refund for such taxable year or years. IRC 1314(b)

demand. Don Thurman had the original and copies of the Taxpayer records.

(7) The IRS has failed to produce any notice and demand prior to 1989 in regard to tax year 1974. The IRS knew or should have known this fact before pursuing collection.

*Violations of due process, misuse/abuse of judicial processes*

(8) The IRS has failed to produce any notices of deficiency for the new amounts they sought to collect after five years of silence, after the Taxpayers 1983 payment in full for the tax years 1972, 1973, and 1974, so as to disallow the Taxpayers to petition the amounts claimed owed in Tax Court first.

(9) The IRS has failed to produce the Taxpayers' records administratively or judicially, thus depriving them of the ability to meet their burden of proof pursuant to 26 USC 7422(e). *Kurio v. U. S.*, 71-1 USTC ¶85,560. "The Government as a litigant is, of course, subject to the rules of discovery.. . . The Government therefore had no right to ignore the Plaintiffs' discovery demands. Moreover, as representatives of the Government, all personnel connected with the litigation, including counsel, had an obligation "to be frank and fair and disclose all the facts." . . The Government's failure to furnish [the documents

requested] had an immediate practical effect on the trial. " Id. at ¶85, 561.

The evidence of collection agents notes, letters, District Counsel's Decision, FOIA/Privacy Act requests and replies, Revenue Officer notes, computer records, and lack of records that would normally be kept if they exist, (as found in the two blue books of exhibits proffered by the Taxpayer), the IRS' accessibility to records and to tax professionals to avoid the travesty here, only points in one direction that the claims of the IRS are disingenuous and that judgment for the Taxpayers' is warranted by a directed verdict as to all the enumerated counterclaims in their motions. *Knight, supra*. The Taxpayers' plead for the Court to grant their motion for an evidentiary hearing, since each piece of evidence relates to pertainent case law and statutes and regulations AT THE TIME,- an extremely complex situation to say the least wherein oral discussion will simplify and aide the trier of fact. The Taxpayers, upon a finding that the evidence only points in one direction, prays for a directed verdict as to all their counterclaims enumerated herein, their motion for sanctions and a writ of mandamus for the IRS to pay $1000 dollars for each lien and levy, and for each day of the liens and levies, to be paid to the Taxpayers, some out of the Kirk Lusty, Don Thurman, and M. K. Mortenson's retirement income for the same number of years of the liens and

levies on theTaxpayers, and grant any and all other relief the Court may find to be fair and just.

So signed this15th day of February, 2001

Susan R. Schildmeyer
Counsel for the Defendants

A true and correct copy of the foregoing has been mailed by priority mail, U.S. Mail prepaid, to opposing counsel on this15th day of February, 2001, and will be personally served upon M.K. Mortenson, Don Thurman, and Kirk Lusty.

Susan R. Schildmeyer