NO. 06-115C
(Judge Braden)

IN THE UNITED STATES COURT OF THE FEDERAL CLAIMS

DANNY C SIMONS AND SALLY J. SIMONS,

Plaintiff,

v.

THE UNITED STATES,

Defendant.

# DEFENDANT'S RESPONSE TO PLAINTIFFS' MOTION TO STRIKE

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

MICHAEL N. O'CONNELL
Assistant Director

MICHAEL O'CONNELL
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street N.W.
Washington, DC 20530
Tele: (202) 307-0282
Fax: (202) 514-8624

June 30, 2006

Attorneys for Defendant

## TABLE OF CONTENTS

TABLE OF CONTENTS . . . . . . . . . . I

TABLE OF AUTHORITIES . . . . . . . . . . ii

DEFENDANT'S RESPONSE TO PLAINTIFFS' MOTION TO STRIKE . . . . . . . . . . 1

INTRODUCTION . . . . . . . . . . 1

ARGUMENT . . . . . . . . . . 2

I. RCFC 7 & 12(f) Provide No Basis To Strike Defendant's Motion . . . . . . . . . . 2

II. The Plaintiffs Are In The Wrong Court . . . . . . . . . . 2

III. Res Judicata Bars The Simons From Attacking The Two Settlements . . . . . . . . 6

IV. The Simons Claims Are Time Barred . . . . . . . . . . 10

A. The Tucker Act Should Not Be Equitably Tolled . . . . . . . . . . 10

B. Accrual Suspension Does Not Apply . . . . . . . . . . 11

V. The Court Does Not Possess Jurisdiction To Consider The Simons' Tort Claims . . . . . . . . . . 13

CONCLUSION . . . . . . . . . . 14

# TABLE OF AUTHORITIES

## CASES

Ammex, Inc. v. United States,
334 F.3d 1052 (Fed. Cir. 2003) . . . . . 2

Ayres v. United States,
66 Fed. Cl. 551 (Fed. Cl. 2005) . . . . . 13

Boston Edison Co. v. United States,
64 Fed. Cl. 167 (2005) . . . . . 2

Carney v. United States,
199 Ct. C 462 F.2d 1142 (1972) . . . . . 4, 5

Indian Head Nat'l Bank of Nashua v. Brunelle,
689 F.2d 245 (1st Cir. 1982) . . . . . 4

Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee,
456 U.S. 694 (1982) . . . . . 5, 6

Irwin v. Dept. of Veterans Affairs,
497 U.S. 89 (1990) . . . . . 10

Japanese War Notes Claimants Assoc. v. United States,
178 Ct. Cl. 630, 373 F.2d 356 (1967) . . . . . 12

Joshua v. United States,
17 F.3d 378 (Fed. Cir. 1994) . . . . . 6

Kenmen Eng'g v. City of Union,
314 F.3d 468 (10th Cir.2002) . . . . . 9

Martinez v. United States,
333 F.3d 1295 (Fed. Cir. 2003) . . . . . 10, 11

Mock v. T.G. & Y Stores Co.,
971 F.2d 522 (10th Cir. 1992) . . . . . 8

Rekhi v. Wildwood Indus., Inc.,
61 F.3d 1313 (7th Cir.1995) . . . . . 9

Rodes v. United States,
225 Ct. Cl. 672, 674 (1980) . . . . . 4

Simons v. Commissioner of Internal Revenue,
185 F.3d 875 (10th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

United States v. Anderson,
584 F.2d 369 (10th Cir.1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

United States v. Scherping,
187 F.3d 796 (8th Cir.1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

United States v. Simons,
86 Fed. Appx. 377 (10th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Welcker v. United States,
752 F.2d 1577 (Fed. Cir. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 12

Wood v. United States,
961 F.2d 195 (Fed. Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

## STATUTES

**United States Codes**

26 U.S.C. § 7402(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

28 U.S.C. §§ 1340 & 1345 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| DANNY C. SIMONS AND SALLY J. SIMONS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 06-115C |
| v. | ) | (Judge Braden) |
| | ) | |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

DEFENDANT'S RESPONSE TO PLAINTIFFS' MOTION TO STRIKE

Pursuant to Rules 12(b)(1)&(6), and (f) of the Rules of the Court of Federal Claims ("RCFC"), defendant respectfully submits this opposition to the motion to strike of plaintiffs Danny and Sally Simons. To the extent that the Court treats the Simons motion to strike as an opposition to our motion to dismiss, defendant requests that the Court consider this brief as our reply brief. Defendant also requests the Court consider this our opposition to the Simons' motion for RCFC 11 sanctions.

## INTRODUCTION

On May 13, 2006, the Government filed a motion to dismiss the Simons' amended complaint pursuant to RCFC 12(b)(1)&(6). The Simons did not file an opposition to the motion but instead have filed a motion to strike. In their motion, they do not contest our argument that they fail to state a claim for a Government taking. They fail to contest our argument that the Court does not possess jurisdiction to consider their tort claims, other than a statement on page 11 of the motion that the Court possesses jurisdiction to consider claims for tortious breach of contract. With respect to our argument that res judicata bars their claims, the Simons only response to this argument is that the district court judgment is "void," which they assert

throughout their brief. However, they give no explanation as to why they are making this argument in this Court rather than the district court. As we establish below, the Simons' motions to strike and for sanctions are without merit and the Court should grant defendant's motion to dismiss.

## ARGUMENT

### I. RCFC 7 & 12(f) Provide No Basis To Strike Defendant's Motion

The Simons rely upon RCFC 7 and 12(f) in support of their motion to strike. RCFC 12(f) provides that a party may move to strike from a "pleading" any insufficient defense, or any redundant, immaterial, impertinent, or scandalous matter. Pleadings are defined by RCFC 7(a) to include a complaint, answer, and a reply to a counterclaim. RCFC 7(a) further provides that no other pleading shall be allowed. A motion to dismiss, therefore, is not a pleading. As this Court has stated, RCFC 12(f) cannot be relied upon to strike a non-pleading. Boston Edison Co. v. United States, 64 Fed. Cl. 167, 180, fn. 15 (2005). Thus, the Simons' motion to strike is without a basis in the rules of this Court.

### II. The Plaintiffs Are In The Wrong Court

As we established in our motion to dismiss, this lawsuit is an attempt to relitigate and decide a matter that has already been litigated and decided in the United States District Court for the District of Utah. In their motion to strike, the Simons do not dispute that the parties are the same here as in the district court, that the district court entered judgment in that matter, or that the cases arise from the same transactional facts. See, Ammex, Inc. v. United States, 334 F.3d 1052, 1055 (Fed. Cir. 2003). Moreover, they specifically admit that they paid $55,000 to the Government to settle the district court action. Motion to strike at 15, ¶ 32. Rather than denying

the similarity of the cases, the Simons request that the Court declare the district court judgment "void," disregard 10 years of litigation in the district court, and allow the Simons' to reassert defenses that the district court and the United States Court of Appeals for the Tenth Circuit have rejected.

The Simons allege at least 12 times in their 19 page brief that the district court judgment is "void" or "void ab initio." Motion to strike *passim*. They contend that the judgment is void because the district court lacked subject matter jurisdiction to consider the Government's 1992 law suit to collect the Simons unpaid taxes. E.g., Motion to strike at 6, ¶ 13. Rather than successfully invoking the jurisdiction of this Court, these allegations establish only that the Simons are in the wrong court. While the Simons argument that the district court lacked jurisdiction to entertain the Government's law suit appears to be without merit because, among other reasons, the Tenth Circuit has already affirmed that judgment and specifically rejected their jurisdictional defenses in its decision, United States v. Simons, 86 Fed. Appx. 377, 378-80 (10th Cir. 2004) ("Simons IV"), if the Simons really want to press an argument that the district court judgment is void, they must do so in the district court that issued the judgment.

The Federal Rules of Civil Procedure ("FRCP") prescribe the method of obtaining relief from a void judgment. FRCP 60(b)(4) provides in relevant part:

> On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: ... (4) the judgment is void ... The motion shall be made within a reasonable time ...

Similar to FRCP 60(b)(4), RCFC 60(b)(4) provides that this Court may relieve a party from a void judgment. Also similar to FRCP 60(b), RCFC 60(b) provides that "[t]his rule does not limit

the power of a court to entertain an independent action to relieve a party from a judgment, order, or proceeding, or to set aside a judgment for fraud upon the court." However, this rule does not grant the Court jurisdiction to consider a Rule 60(b)(4) motion or an independent action attacking the judgment of a district court. Carney v. United States, 199 Ct. Cl. 160, 462 F.2d 1142 (1972).

In general, a party seeking to have a judgment declared void must file its Rule 60(b)(4) motion in the district court that issued the judgment. E.g., Indian Head Nat'l Bank of Nashua v. Brunelle, 689 F.2d 245, 248 (1st Cir. 1982). In certain limited circumstances, district courts have allowed a party to bring "independent equitable actions" pursuant to FRCP 60(b) in a district court different from the court issuing the judgment. Id. at 250. When the prior judgment is attacked in a different court, "the new court must be one having 'independent and substantive equity jurisdiction' because the action is equitable in nature." Carney, 462 F.2d at 1144 (quoting 7 Moore's Federal Practice, § 60.36). Such an action "represents one of the farthest reaches of equity jurisprudence ...." Id., 462 F.2d at 1145. Thus, the Court of Claims held in Carney that because, pursuant to the Tucker Act it only exercised equitable powers incidental to its general jurisdiction, "there does not seem to be any possible doubt that an 'independent action' under 60(b) ... when against a judgment of a different court, is more in the nature of 'specific equitable relief'" and not within the court's jurisdiction. Id. Accord Rodes v. United States, 225 Ct. Cl. 672, 674 (1980) ("It was the responsibility of the district court to determine who was entitled to the award in case of any title dispute, and it did so. If it committed error, FRCP provided a means of correcting it, together with the usual direct appellate review. Res judicata does not permit a collateral review in this court. If the action is regarded as an 'independent action' such

as might lift the bar of res judicata if brought in the proper court, ours is as Carney holds, not a proper court and we would have no jurisdiction.")

The Simons invite this Court to declare the district court judgment void and that their 1983 payment to the IRS settled their tax liabilities in full. E.g., Pl. Br. at 4, ¶ 8. However, this Court lacks jurisdiction to consider the Simons complaint for the same reasons stated by the Court of Claims in Carney. Congress has not amended the Tucker Act since the Court of Claims decision in Carney to grant this Court the "independent and substantive equity jurisdiction" which would be necessary to declare a district court judgment void. Carney, 462 F.2d at 1144. As a result, all of the Simons' arguments which attempt to explain why the district court lacked jurisdiction or committed legal error, and all of their contentions that there are "undisputed facts" which prove that the district court judgment is void, are irrelevant. E.g., Pl. Br. at 4-5. The question that is relevant now is not whether the district court possessed subject matter jurisdiction, but whether this Court possesses jurisdiction to rule on the district court's jurisdiction. As the Court of Claims decision in Carney establishes, this Court does not possess such jurisdiction.

At page 9, fn. 4, the Simons cite several cases in support of an argument that collateral estoppel does not apply to this matter. Most of these cases merely state that a void judgment is a nullity but provide no support for an argument that this Court may declare a district court judgment void. The only case they cite which would be binding on this Court is Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee, 456 U.S. 694, 706 (1982), which deals with personal rather than subject matter jurisdiction. In Ins. Corp. of Ireland, the Supreme Court noted that a defendant served with a law suit filed in a district court which lacks personal

jurisdiction over the defendant may ignore the law suit and then challenge the judgment in a collateral proceeding. Id. Here, the Simons are residents of Utah according to amended complaint ¶ 6a, and have never argued that the District Court for the District of Utah lacked personal jurisdiction over them. Thus, Ins. Corp. of Ireland does not help the Simons establish that they may attack the district court's subject matter jurisdiction in this Court.

It is well-established that the Court "does not have jurisdiction to review the decisions of district courts or the clerks of district courts relating to proceedings before those courts." Joshua v. United States, 17 F.3d 378, 380 (Fed. Cir. 1994). While the Simons attempt to avoid this jurisdictional bar by arguing that the district court judgment is void, this argument does not save their claims. If the Simons are seeking to have the district court judgment declared void, they need to do so in the district court or the Tenth Circuit.

III. Res Judicata Bars The Simons From Attacking The Two Settlements

In their motion to strike, in their response to defendant's motion to correct its motion to dismiss, and in their RCFC 11 motion, the Simons' argue that there cannot be two settlements in one case. They request that the Government explain how this can be so and request sanctions against the Government for stating that there were two settlements. E.g., Motion to strike at 1-3; Response to motion to correct at 1-2; motion for sanctions at 2. The answer is simple: there was a settlement of the deficiency in tax in 1983 in the Tax Court action that the Simons failed to pay in full. Their failure to pay in full resulted in the 1992 collection action and the 2002 settlement where the Simons agreed to pay the Government $55,000.[1] As we establish below, the Tenth

[1] The Simons also state at pages 2, 12, and 14 of their motion to strike that the Government does not dispute that they fully paid the 1983 settlement. Since we have not filed an answer or proposed findings of fact admitting this, and since the Simons voluntarily agreed to the

Circuit has characterized the events in both 1983 and 2002 as settlements. Our accurate citations to these decisions demonstrate that the Government's motion to dismiss should be granted, and that the Simons motion for sanctions is meritless.

The Simons liability with respect to their 1974 tax liability was settled for the first time in 1983 in the Tax Court. The Tax Court decision memorializing the settlement states that it was "[p]ursuant to agreement of the parties in this case." Plaintiff's appendix (Pl. App.) 14-15. The Simons assent to the Tax Court decision is further evidenced by the signature of their counsel in the Tax Court decision. Pl. App. 15. Almost 15 years later, the Simons filed a motion with the Tax Court to vacate this decision, which motion the Tax Court summarily denied. Simons v. Commissioner of Internal Revenue, 185 F.3d 875 at slip op. 1 (10th Cir. 1999) ("Simons II).

The Simons appealed to the Tenth Circuit, which noted that the Simons alleged that they had paid in full pursuant to the 1983 settlement but the IRS had erroneously applied their payment to their 1973 tax obligation rather than 1973 and 1974, and had commenced an action in district court to collect even though the Simons had allegedly paid in full. Id. The Tenth Circuit further noted that the Simons "raise a number of new arguments concerning the validity of the underlying settlement agreement with the IRS." Id. at slip op. 3 (emphasis added). The Tenth Circuit rejected all of the Simons' arguments with respect to the 1983 settlement. Id.

The second settlement occurred in the district court action. With respect to this settlement, the Tenth Circuit stated that "[t]he parties eventually agreed to settle all claims in exchange for $55,000" paid by the Simons to the Government. Simons IV, 86 Fed. Appx. at 378

---

entry of judgment against them in the district court, we do not understand the basis for this statement.

(emphasis added). After the Simons "reneged on the payment and instead moved to dismiss the action," the district court held a hearing at which it informed the Simons that the court "was ready to grant the government's summary judgment motion but, in the interest of closure" it allowed the Simons one more chance to honor the agreement. Id. In an order issued after the hearing, the district court held that the Simons' "failure to honor the settlement agreement was not in good faith." Defendant's appendix at 65 (emphasis added). The Simons then paid the $55,000 and prepared the consent judgment for the court to sign.[2] Id. at 378-379.

Notwithstanding their preparation of the judgment and payment of the $55,000, the Simons then appealed to the Tenth Circuit. Id. The Tenth Circuit observed that it "is a well accepted rule that a party to a consent judgment waives any objection to matters within the scope of the judgment." Id. at 379 (emphasis added). However, the court of appeals also noted that if "lack of actual consent, fraud in obtaining consent, lack of federal jurisdiction, or mistake are shown," then this rule does not apply. Id. (quoting Mock v. T.G. & Y Stores Co., 971 F.2d 522, 526 (10th Cir. 1992). The court of appeals held that this exception to the general rule did not apply because the "handwritten original draft of the agreement is fairly reflected in the consent judgment, which defendants themselves prepared for the court to sign." Id. (Emphasis added).

Finally, the Tenth Circuit also addressed the Simons' arguments that the district court did not possess jurisdiction to consider the Government's action against the Simons. We quote the court of appeals at length because the court's opinion further demonstrates that the arguments the

[2] In their motion to strike, the Simons refer to the $55,000 settlement payment as a "Court ORDERED payment." Motion to strike at 3, ¶ 5. As the Tenth Circuit opinion in Simons IV makes abundantly clear, the district court did not order this payment. Simons IV, 86 Fed. Appx. at 378-80. Rather the Simons voluntarily agreed to settle the matter.

Simons are attempting to raise here with respect to the jurisdiction of the district court have already been addressed by the district court and the court of appeals:

> Finally, the government notes that this action to reduce a tax assessment to judgment clearly falls within the broad grant of jurisdiction to the district courts over matters arising under the internal revenue laws. 28 U.S.C. §§ 1340 & 1345; 26 U.S.C. § 7402(a); see United States v. Anderson, 584 F.2d 369, 370 (10th Cir.1978); United States v. Scherping, 187 F.3d 796, 798 (8th Cir.1999). Defendants resist this point by asserting various objections to the government's case and characterizing these as jurisdictional deficiencies. Defendants do not, however, substantiate their jurisdictional arguments with relevant legal authority. Their most transparent argument in this respect is that, accepting their view on the merits, they owe no taxes, there is thus no lost revenue involved, and, hence, the government lacks the legal injury necessary to have standing. This reasoning, which rests on the tacit premise that standing is not established unless and until the case is won on the merits, would effectively transform every action by the government to collect taxes into a jurisdictional dispute over standing. Defendants do not cite any authority supporting this facially implausible notion. Moreover, their invocation of res judicata and collateral estoppel to support their position on the merits does not introduce any jurisdictional element into the case; these are mere affirmative defenses. See Kenmen Eng'g v. City of Union, 314 F.3d 468, 479 (10th Cir.2002); Rekhi v. Wildwood Indus., Inc., 61 F.3d 1313, 1317 (7th Cir.1995).

Id. at 379-80. Thus, although the Simons allege in their motion to strike that the Tenth Circuit issued a decision "completely ignoring all the Plaintiffs subject matter jurisdiction claims," this assertion is demonstrably false. Motion to strike at 15, ¶ 32.

Despite the Simons protestations to the contrary, the Tenth Circuit has characterized the resolutions in both 1983 and 2002 as a settlement. Obviously, the Simons vehemently disagree with the Tenth Circuit decisions. However, disagreement with those decisions does not provide the Simons a good faith basis to argue in this Court that there were not two settlements, and our citation to these decisions is certainly not the basis for sanctions.

IV. The Simons Claims Are Time Barred

In our motion to dismiss, we established that, assuming for purposes of the motion that the Government acted improperly with respect to the 1983 settlement, the Simons cause of action accrued in 1988 when the Government began collection activities, or at the latest in 1992 when the Government filed suit in district court. Motion to dismiss at 10. Thus, the six year Tucker Act statute of limitations ran no later than 1998. At pages 11-17 of their motion to strike, the Simons make various arguments contending that the statute of limitations should be tolled or which could be construed as arguing that the Court should apply accrual suspension to the statute of limitations. We address these contentions in turn.

A. The Tucker Act Should Not Be Equitably Tolled

Although the Court of Appeals for the Federal Circuit has not definitively ruled whether the Tucker Act can be equitably tolled, Federal Circuit precedent "make[s] clear that equitable tolling against the federal government is a narrow doctrine." Martinez v. United States, 333 F.3d 1295, 1318 (Fed. Cir. 2003) (en banc). "There must be a compelling justification for delay, such as 'where the complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass.'" Id. (quoting Irwin v. Dept. of Veterans Affairs, 498 U.S. 89, 96 (1990)). In Irwin, the Supreme Court "explained that the doctrine had been applied 'sparingly' by federal courts in the past and would not in any event be applied 'to what is at best a garden variety claim of excusable neglect.'" Martinez, 333 F.3d at 1317 (quoting Irwin, 498 U.S. at 96).

Here, the Simons cite no conduct by the Government which tricked them into allowing a filing deadline to pass. Having filed a lawsuit against the Simons to collect their unpaid taxes in

1992, the Simons certainly were on notice that they must raise any defenses they had to the Government action. The Tenth Circuit decisions establish that they raised their defenses but those defenses were rejected by the district court and the Tenth Circuit. The Simons have had their day in court on the issues they raise in this law suit. Indeed, they had 10 years in the district court. Although, they are unhappy with the result in the Tenth Circuit, such unhappiness is no basis for tolling the statute of limitations here.

B. Accrual Suspension Does Not Apply

Accrual suspension suspends or tolls the running of the statute of limitations until the plaintiff knew or should have known that a claim existed. Martinez, 333 F.3d at 1319. Similar to equitable tolling, accrual suspension is "strictly and narrowly applied: ... [the plaintiff] must show that defendant has concealed his acts with the result that plaintiff was unaware of their existence or it must show that its injury was 'inherently unknowable' at the accrual date." Id. (quoting Welcker v. United States, 752 F.2d 1577, 1580 (Fed. Cir. 1985). Here, it is inconceivable that the Government could be charged with concealing its acts or that the Simons cause of action was inherently unknowable since the Simons' vigorous defense of the 1992 law suit demonstrates that they were fully aware of what the Government was doing.

However, the Simons allege that the Government failed to produce "key records" to them until February, 2000. Motion to strike at 3, 16. Since the district court judgment was not entered August 2002, almost 30 months later, the Simons had abundant time to bring these documents to the attention of the district court. Pl. App. 215. This argument is simply

another aspect of the Simons unhappiness with the result in the district court. They acknowledge that they brought these documents to the attention of the district court but complain that the district court "refused to make any findings as to its own jurisdiction when presented with the documents ..." Motion to strike at 3, ¶ 3. Of course, as the Simons well know, the district court did not issue a detailed decision deciding the case because the Simons voluntarily settled the case. However, the Tenth Circuit decision in Simons IV, which we quoted at length above, and which was issued almost four years after the Simons received the documents in question, demonstrates that the Tenth Circuit considered the Simons' jurisdictional arguments and rejected them.

Moreover, the Simons make the same mistake that the plaintiff in Welcker made: equating its failure to obtain the alleged proof of its claims with concealment by the Government or an inherently unknowable claim. In Welcker, the plaintiff claimed that the statute should not begin to run until after Congress had passed the Privacy Act which allowed him to obtain a copy of his file from the Federal Bureau of Investigation. Welcker, 752 F.2d at 1579. The court of appeals rejected this claim. It explained that "defendant is not required to wait until plaintiff has started substantiating his claims by the discovery of evidence. Once plaintiff is on inquiry that it has a potential claim, the statute can start to run." Id. at 1580 (quoting Japanese War Notes Claimants Assoc. v. United States, 178 Ct. Cl. 630, 634, 373 F.2d 356, 358-59 (1967). Similarly, the filing of the 1992 lawsuit provided all of the notice that the Simons needed to start the statute of limitations. Their inability to obtain "proof" of their allegations does not accrue the statute of limitations.

V. The Court Does Not Possess Jurisdiction To Consider The Simons' Tort Claims

In our motion to dismiss, we established that the Court does not possess jurisdiction to consider the Simons' tort claims. The Simons do not dispute this argument at length in their motion to strike, although they do state at page 11 that the Court possesses jurisdiction to consider claims for tortious breach of contract. It is unclear from their motion to strike if the Simons are contending that their claims for fraud, slander, abuse of process, conspiracy and willfulness, and harassment are actionable in this Court simply because there is also a claim for breach of contract in the amended complaint.

"[W]here the 'tort' complained of is based entirely upon breach by the government of a promise made by it in a contract so that the claim is in substance a breach of contract claim, and only incidentally and conceptually also a tort claim, we do not think that the common law or local state law right to waive the breach and sue in tort brings the case within the Federal Tort Claims Act." Ayres v. United States, 66 Fed. Cl. 551, 565 (Fed. Cl. 2005) (quoting Wood v. United States, 961 F.2d 195, 198 (Fed. Cir. 1992)). The torts the Simons complain about are not "incidentally and conceptually" tort claims, but rather are pure torts, for example, slander. In Ayres, the plaintiff argued that "because she had alleged a breach of contract, the court has jurisdiction over all of Plaintiff's claims." Id. However, the Court rejected that argument, holding that all of the plaintiff's tort claims involved statutes not incorporated into the contract and "stand separate and apart from the alleged breach of contract." Id.

Here, the contract that the Government is alleged to have breached is a very brief (two-page) decision of the Tax Court. Pl. App. 14-15. It is difficult to imagine, for example, how the Government could have committed a slanderous breach of contract, to the extent that such a

claim could even exist, that is only incidentally and conceptually a tort claim and is primarily a contract claim. Rather, such a claim would stand separate and apart from their contract claim. Similarly, the Government could not have committed abuse of process that is only incidentally and conceptually a tort claim and is primarily a contract claim. Thus, the Court does not possess jurisdiction to consider the Simons' tort claims.

## CONCLUSION

For the foregoing reasons, defendant respectfully requests that the Court grant its motion to dismiss, deny the Simons' motion to strike, and deny the Simons motion for RCFC sanctions.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

s/Mark A. Melnick
MARK A. MELNICK
Assistant Director

s/Michael N. O'Connell
MICHAEL N. O'CONNELL
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit, 8th Floor
1100 L St., NW
Washington, D.C. 20530
Tel: (202) 307-0282
Attorneys for Defendant

Dated: June 30, 2006

Certificate of Filing

I hereby certify that on this 30th day of June, 2006, a copy of the Defendant's Motion For To Dismiss was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/Michael N. O'Connell
Michael N. O'Connell