IN THE UNITED STATES DISTRICT COURT

DISTRICT OF UTAH

CENTRAL DIVISION

---

UNITED STATES OF AMERICA, )
Plaintiff, )
vs. ) CASE NO. 2:92-CV-1071B
DANNY C. SIMONS, ET AL., )
Defendants. )

---

BEFORE THE HONORABLE DEE BENSON

----------------------------------

June 18, 2002

Motion Hearing

A P P E A R A N C E S

For Plaintiff: JEFFREY D. SNOW
P.O. Box 683
Ben Franklin Station
Washington, D.C. 20044

For Defendants: SUSAN ROSE
9553 South 1335 East
Sandy, Utah 84092

June 18, 2002 2:00 p.m.

P R O C E E D I N G S

THE COURT: We'll go forward in United States of America versus Dan C. Simons, et al. This is 92-CV-1071. We're here on a motion for summary judgment which has been pending for some time and renewed by the United States as plaintiff, and also I have a motion to dismiss brought by the defendant's claiming a lack of subject matter jurisdiction.

Susan Rose for the defendant. The plaintiff is represented by Mr. Kirk Lusty and Mr. Jeffrey Snow.

MR. LUSTY: Your Honor, I am not appearing for the United States. I am here more as an observer. I no longer am involved in this case.

THE COURT: Okay. Well, you did a good job of both faking me out and distancing yourself by your comments and faking me out by sitting at counsel table. But you're very welcome, Mr. Lusty, and I know that you have a fair amount of history with this case as does Mr. Snow.

We're here following a settlement effort which to the Court's dismay and disappointment did not happen after it had been represented to the Court that a settlement had been reached. I am frankly wondering why we are not here on some kind of motion from the United States to enforce what at least as I said appeared to the Court to be a settlement agreement

as to an amount to be paid.

Do you mind at least addressing that just for a moment before we go on to the motions, Mr. Snow?

MR. SNOW: Your Honor --

THE COURT: Just for my curiosity. Go ahead.

MR. SNOW: -- I have the settlement document in my hands.

As you know at the Court's suggestion all of the parties and all of the counsel, and a lot more than here today, met and we discussed this thing for an hour. At the end of an hour we agreed subject to agreement by D.C. and I agreed I would recommend acceptance of a specific dollar amount to the penny which is represented here, that we would be paid in return for a worldwide settlement. The payment was to be made in 30 days. If the payment was not made plaintiff's motion would be reset and that was what we wrote down here. Everybody in town signed it including myself. It was to be worldwide and everything was to happen.

I went back to D.C. and wrote it up and convinced my superiors to accept this offer. Needless to say months and months went by and Ms. Rose and I did have contact but no payments have ever been forthcoming.

THE COURT: What was the amount?

MR. SNOW: I am very dismayed about that.

THE COURT: What was the amount that was agreed to?

MR. SNOW: $55,000 even. It was the bargain of the century.

THE COURT: How much is it, just to remind me, the amount in controversy, what does the United States claim that Ms. Simons owes if the United States' position is correct?

MR. SNOW: Well over $100,000 with that accrued compounding daily interest, because this liability goes back to calendar year 1974. The interest clock starts running, as you know, Your Honor, on April 15th, 1975.

THE COURT: Right.

MS. ROSE: May I speak, Your Honor?

THE COURT: Yes, please.

Ms. Rose.

MS. ROSE: For the defendant's side of the story --

THE COURT: What happened?

MS. ROSE: First of all, what was purported to be worldwide, as you know we have supplemented the complaint with the Court's order with Mr. Lusty and Mr. Thurman and there was a problem with that in that, one, the letter that was drafted by the Justice Department did not mirror this offer word for word. Two, we could not determine how to get an agreement from Mr. Lusty and Mr. Thurman, and Mr. Simons was requesting his records, and we were told at least once that if he stopped looking for his records that they would go ahead and get the agreement from the other two people. We were trying to get

all of the information we needed to know what was going on on the account --

THE COURT: Why did you need an agreement from Mr. Lusty and this Mr. Thurman?

MS. ROSE: Because if we would have settled with the I.R.S. there is at least the possibility that Mr. Lusty and Mr. Thurman could have come back on Mr. Simons for frivolous suit, for naming them frivolously, for any kind of cause that they might want to bring.

THE COURT: Who is Mr. Thurman?

MS. ROSE: He was the revenue agent or officer that withheld Mr. Simons' records in 1988 when this thing started. Next we also wanted a list of the specific issues that we were resolving with this compromise and we were not getting those issues.

THE COURT: Would you remind me, please, and I am sorry to interrupt you, but were you the attorney handling the matter when the settlement effort was undertaken?

MS. ROSE: Yes, sir.

THE COURT: Okay. I had forgotten that.

Could I see that yellow sheet of paper, please.

MS. ROSE: In addition, Your Honor, in looking at this as a contract, we also consulted with the attorneys at Cohne, Rappaport & Segal and we found that there were these different flaws, and frankly we didn't want to get into

another problem where we would have another settlement that was somehow deficient in certain specific details and go back on that.

THE COURT: So you thought because of all of those reasons that this settlement that you had reached and that Mr. Simons had signed was no longer required?

MS. ROSE: I think there is one more reason.

THE COURT: Okay.

MS. ROSE: We have had this case now examined by no less than six tax attorneys, and all of them are in agreement that Mr. Simons fully paid the settlement that was entered into in 1983, and that there are problems with notice and demand and lack of timely assessments. So we were wondering what we were getting for the settlement other than the Court's pleasure, what was the I.R.S. giving up in exchange for the taxpayer giving $50,000 that the I.R.S. should already be giving up. That is, stopping to pursue these taxpayers based on this account.

In the motion to dismiss, Your Honor, we have spelled out the specific very simple reasons why this Court has no jurisdiction over this matter.

THE COURT: And that simple reason is because the money was paid earlier?

MS. ROSE: There are basically four. One is that there was a settlement. The Tenth Circuit found there was a

settlement. There was an underlying agreement that the Tenth Circuit referred to based upon letters between the taxpayers' counsel and the D.O.J. and the only thing that the agreement was silent on was interest. We have got the Fourth Circuit Court in U.S. v. Hurt and the Tenth Circuit Court in Anthony, where it states that it is a contract and if it is silent to interest it is construed against the I.R.S.

The next issue is timely assessment. In the complaint on I believe page 4, possibly paragraph 10, it states that an assessment was made and there was timely notice and demand. When we looked at the exhibit, the internal working document that was attached to the motion to dismiss, we find that after the tax court decision there was an assessment requested. Excuse me while I find this. Exhibit 413. It is a requisition order for a quick assessment to be made on 1974.

THE COURT: Okay.

MS. ROSE: As you will see up at the top it states the date of request, 6-23-83, up in the upper right-hand corner.

THE COURT: Yes.

MS. ROSE: Then it shows the statutory period for assessment expiring 7-19-83. Then just left of center on the second line from the top it shows that the 23-C date as calculated by the I.R.S. at that time with the managers

approval signing off on this document, the 23-C date was 7-25-83.

This means that with management approval a person requesting the assessment on June 23rd was requesting that the assessment be made after the period of assessment expiration date. So you have this 23-C date of 7-25 and you have the statute expiration date of 7-19-83.

Now, I am not sure how they calculated those dates, but we can presume that either the I.R.S. was correct on this document or it was correct years later in 1988 when they didn't have all of the documents. Additionally, Your Honor, there is a reason the assessment is late and we briefed this and it is based upon the form 872 which is Defendant's Exhibit 10. This sets a time certain, and I know that you have heard this argument in this case before --

THE COURT: Yes.

MS. ROSE: -- just a little differently.

However, in this instance when an assessment is made based upon a time certain where the taxpayers are consenting to an extension of time, there are absolutely no circuits that I have been able to discover with due diligence that has not used that date certain to calculate the time for the assessment.

In this instance on page 16 of our motion to dismiss, we show that the Fourth, Eleventh, First and Second

Circuits have uniformily agreed that a form 872, which this is, expires on its own and sets a time certain for the statutory time to fall. When this case was finished in 1983, according to the stipulated decision, there was a time certain for the assessment to be done according to contract principles and they did not do that assessment timely. Without a timely assessment we find that the Court would have no jurisdiction over any type of quiet title or collections claims. Significantly, the complaint raised by the I.R.S. in 1992 is not a complaint for collection, it is a quiet title action only.

Then on notice and demand, we have attached with the exhibits the internal policies of the I.R.S. showing those codes on the computer which hold notices. Those codes show that there were restricted interest codes, litigation suspension codes, hold code threes all over the 1974 transcript. Those codes would hold notices. Now, that is affirmative proof in our estimation that there were no notices and demands timely sent in this matter. These are unrefuted by any contrary evidence by the I.R.S.

Next the certificate of assessment is flawed. For the I.R.S. case they would have you look only at the 1974 stip decision and the certificate of a settlement and say, see, the assessment was done. Based on this we need to take interest all the way back to the date the return was due.

What we are saying is that there is much more to this than just that. According to the district counsel's decision approved by the appeals office, '72, '73 and '74 were to be treated together. This is consistent with the taxpayers' letter to the I.R.S. saying we want a package settlement. So they now go into negotiations and we get the district counsel's decision and the appeals approval, we have got the underlying work documents showing income averaging between the three years, and we have got all of these I.R.S. work documents and we now have a C.P.A., Brian Bolander, who has gone through all of these things and found that there is absolutely no mention or provision for interest.

Now, the next question is, could there have been? We believe, Your Honor, that very easily Defendant's Exhibit 4 could have easily have provided for interest. Defendant's Exhibit 4 is one of the work documents that went with the Rule 155 tax court computations that were mandatory. There is a sentence that is below the columns that says interest for blank year will be computed under section blank of the Internal Revenue Code. Up at the top we have initials showing district counsel, Salt Lake City presumably, and at least two other peoples' initials reviewing this document.

THE COURT: Which one are you on?

MS. ROSE: Defendant's Exhibit 4.

THE COURT: 4 hyphen N?

MS. ROSE: No. This would be attached, and if I may, Your Honor, I will provide the Court with a copy.

Do you see the columns and the sentence just below the columns, Your Honor?

THE COURT: Yes.

MS. ROSE: The I.R.S. could have easily put a tax year in there. They could have put a statute in there. They could have put an interest amount and an estimated interest rate, a percentage, and they did none of those things. We believe that that was done purposely, Your Honor, because this was a package unique settlement.

We go on and if you hold up the stipulated decision for 1974, the question has to be asked could the I.R.S. successfully claim this court's jurisdiction just holding that and nothing more? We disagree. We believe that there has to be some additional proof that there were assessments made because by statute an assessment is required to be made before a liability can be collected upon.

In this instance, Your Honor, the certificate of assessment, which is Defendant's Exhibit 1-C-A, and it is our first exhibit, this certificate of assessment, Your Honor, has a number of transaction codes if they are legible.

May I provide the Court this?

THE COURT: Yes.

MS. ROSE: If those codes are legible, Your Honor,

we have to observe that there is no TC-494 in 1979 for a notice of deficiency. There is no 582 for tax liens that were filed and levies that were issued in 1988. There is no 560 code showing that there was an 872 assessment statute expiration date extension. There is a 520 litigation code placed on the account suspending the account from collection after the stipulated decision was entered.

The M.F. stat notice entries do not reflect certain notices that were issued, such as the first notice of levy that was received in January of 1989. Without notices of entry for some things how can we be sure that the notices of entry on the other things are accurate? So we are claiming that the certificate of assessment is unreliable. Without the certificate of assessment the jurisdiction of the Court fails for the I.R.S.

Finally, Your Honor, the case is moot. The I.R.S. has released all of the liens. They at one point closed out all the accounts, I mean closed out all amounts owing. They posted $76,000 to the account and closed it out in approximately 8-7 of 1995. Only after the Department of Justice attorney Jeff Snow instructed them did they add the $76,000 back on in 2001 and, of course, this is without any additional interest over what they deleted in '95.

So the computer readout on this account is in error now and we now have the position where opposing counsel is

creating evidence. We have an affidavit from Gail Anger, and he is a 25 years veteran appeals officer, Defendant's Exhibit 18.

THE COURT: I have that.

MS. ROSE: Gail Anger is very experienced as an appeals officer, and it was his statement in that affidavit that for us to be able to restructure the settlement to within seven pennies using eight place factoring tables for three year's worth of tax and penalties and the restricted interested, and to come up with something as close as seven cents was literally astronomically impossible unless the I.R.S. did it just that way.

It was also his conclusion that very rarely are multiple year payments credited properly. We have cited in our brief that the I.R.S. has now stated to Congress that a computer can only calculate interest all the way back to the date the return is due. In this case if you have three years, you have 1972 closed, statutes, closed, and you have 1973 and you have 1974. The I.R.S. computer can only calculate interest all the way back. One of the simplist ways that you can post the payment is before the payment is entered you close '74 and you close '72 and the payment comes in and it all goes into '73. Our computer readouts show that the account had a zero assessment one working day after Dan Simons talked with the revenue officer and said I will pay what you

have told me to.

THE COURT: Aren't you in effect arguing to me that there are contested issues of fact about whether interest was to be assessed against the 1974 tax liability?

MS. ROSE: No. If that is a contested fact then I would have to say that there is only evidence one way, as a matter of law.

THE COURT: Well, then isn't that the standard for summary judgment? If there is no genuine issue of material fact aren't you really in essence arguing to me that you are entitled to summary judgment, not that I don't have jurisdiction?

MS. ROSE: No, I am arguing that because all of the evidence shows that there was no interest provided for, as a matter of law under Anthony and Hurt there is no interest and so there is no liability to collect, no matter how you look at how it is posted. The C.P.A. was saying the same thing. No matter how you post it the payment has been made. If there is no liability --

THE COURT: Why then don't you argue to me that you are entitled to summary judgment as opposed to an argument that I don't have jurisdiction?

MS. ROSE: Because I really don't think that you have jurisdiction over this case if there is no liability. I'll make a motion for summary judgment, Your Honor, right

here, right now, if that is what you would prefer.

THE COURT: Well, Ms. Rose, if in every case where the defendant's version of events is accepted by the Court it stripped the Court of jurisdiction, how would the Court even rule in favor of the defendant?

MS. ROSE: The Court can rule that the I.R.S. has not established that there is a liability owing. If the I.R.S. has not established with any credible evidence that there has been an assessment, that there has been notice and demand, that there is any kind of liability, they have nothing. There is not one piece of evidence that is credible or one case law that they can rely upon to say these people owe. So if there is no liability then what they are attempting to collect is an illegal exaction not a tax and it falls outside the Court's purview.

THE COURT: Okay. Thank you. Let's hear what Mr. Snow has to say about that.

Mr. Snow, I want to pose the same question to you. Why hasn't she raised enough to require me to do what the circuit told me to do when they sent this back to me and that is make a factual determination? Tell me, if you will, and help me out, how have I done what the circuit required me to do on remand anyway?

MR. SNOW: The circuit sent it back, Your Honor, as I understand it, reversing your decision on the collection

statute of limitations.

THE COURT: Yes.

MR. SNOW: And wanted to know who, if anyone, had signed what is now Government's Exhibit 6.

THE COURT: Right.

MR. SNOW: And if you look at Government's Exhibit 6 you will see that a revenue officer signed it as well as Simons.

THE COURT: You're talking of Richard Jones?

MR. SNOW: I am talking --

THE COURT: Make sure you have the right exhibit.

MR. SNOW: Okay. I think it is in my exhibits, Your Honor, Government's Exhibit Roman numeral six. No, that is wrong. Thank you for correcting me. It is in there. It is probably 3-B.

THE COURT: 3-B. Right. Okay.

MR. SNOW: I have the original with me. These, of course, are photocopies that you have in front of you.

THE COURT: What the circuit sent back was a simple remand saying that because the parties have placed this material fact in dispute we must remand it to the District Court for further proceedings to determine if or when the government signed taxpayers offering. You're saying 3-B conclusively indicates that this offer and compromise was signed --

MR. SNOW: June 15th, 1989.

THE COURT: -- by Mr. Simons as the taxpayer opponent and then accepted by the revenue officer on 6-15-89.

MR. SNOW: That is exactly correct.

THE COURT: You say that eliminates any material issue of fact that the circuit directed me to have a factual inquiry on?

MR. SNOW: That is correct.

That answered the issue that the circuit sent back here.

THE COURT: Why doesn't all of this factual information that Ms. Rose has so carefully laid out create an issue of fact on whether there was an interest amount to be added to the tax liability for 1974?

MR. SNOW: I don't think there is any question about that, Your Honor. A review of the two stipulated tax court decisions, and you can find those decisions in Simons' Exhibit 12, there were three years and two decisions entered.

THE COURT: Right.

MR. SNOW: As part of negotiations which had taken place prior to the entry of those decisions, and the government's part of those negotiations is represented and I have given it to the Court as Government's Exhibit Roman numeral six, which is prior to the entry of these decisions.

THE COURT: Yes.

MR. SNOW: The government gave up 1972 and then we agreed to consent to deficiencies for 1973 and 1974.

THE COURT: Right.

MR. SNOW: You will see there that Simons' attorney at that time, and this is some while ago, of course, signed each of those consents.

THE COURT: Yes.

MR. SNOW: He has signed them well before the decisions were entered by the tax court. If you notice the tax court entry date --

THE COURT: Okay.

MR. SNOW: Okay. If something had been wrong you would have expected this attorney, Mr. Landa, or someone to come in and say, no, that is not what we wanted in the interim.

Moreover, in Simons' second appeal to the Tenth Circuit in this case, that was where the tax court refused to review all of this that we are talking about and they said, look, you had 30 days after entry, and it is right in the tax court's decision, which I have included as one of the government's exhibits here, you have 30 days afterwards to make a motion to vacate those decisions. That was not done.

THE COURT: Could I stop you there? Tell me where it is in the decision of the tax court that makes it in your view clear that interest will be accruing on the amount?

MR. SNOW: There is nothing in the tax court decision about that. It is clear in the tax court's consent decision, because on page 2 of that it references deficiencies plus statutory -- I note the word statutory -- interest. Statutory interest.

THE COURT: Show me --

MR. SNOW: Not restricted interest or any other kind of interest.

THE COURT: Show me the language.

MR. SNOW: Yes, sir.

THE COURT: Point me to it. Is this the Richard Jones decision? Is that what you are referring to now?

MR. SNOW: Well --

THE COURT: You just said on page 2, page 2 of what?

MR. SNOW: Of Simons' Exhibit 12. There are two decisions there, the decisions except for the amounts --

THE COURT: I can't follow either of your exhibits, by the way. I can't find Simons' Exhibit 12.

MR. SNOW: Well, let's not use her exhibits, let's us my own exhibits.

THE COURT: Just some exhibit that I can find.

MR. SNOW: Government's Exhibit 4-A, Roman numeral 4-A.

THE COURT: I have that in front of me.

Now, you tell me there is no indication of interest on the first page and you're saying on the second page the reference --

MR. SNOW: Yes, I am saying that. It is stipulated that effective upon the entry of the decision by the court, petitioners waive the restriction prohibiting assessments and collection of the deficiency plus statutory interest. Okay. Everybody understood statutory interest, as I have pointed out in my memoranda of law, statutory interest by definition of Congress runs from the last date prescribed for payment. In this instance for 1974 that would be April 15th, 1975 until the date of payment. That is in 26 U.S.C. Code 6601(a). Rates are compounded and changed quarterly see 26 U.S. Code 6621 and 2. Everybody understood it was statutory interest.

THE COURT: Will, she says they didn't.

MR. SNOW: Well, I'm sorry if they didn't. They had a lawyer and I can't explain their ineptitude, but that is what the agreement was. That agreement merged all prior discussions. She is barred by the parol evidence rule, res judicata, collateral estoppel from trying to reopen up those tax court decisions. I mean, if you could reopen them up there would no be no reason to ever make them.

THE COURT: Would you admit or agree with me that the decision itself could have been clearer?

MR. SNOW: Everything in life can be clearer, but

it does reference statutory interest. The statutes say that is automatic, and the statutes say that this is what will happen. So it would seem to me where you have a what will happen mandate, as made by Congress, it would be nice to put that in the tax court decision. But turning it around, it would be mandatory to put it in the tax court decision when you are not going to follow the congressional mandate and that is when you would have to put something in.

In any event, we followed the congressional mandate and so noted that in this tax court and the other tax court decisions.

THE COURT: Okay. Thank you, Mr. Snow.

MS. ROSE: May I respond?

THE COURT: Yes, you may, briefly.

Is this Mr. Simons in the courtroom?

MS. ROSE: Yes, sir.

THE COURT: Okay.

MS. ROSE: As long as we are talking about congressional mandates, Your Honor, I believe at 6215 I.R.S. code it says that once the I.R.S. has agreed to settle on something they cannot go back and reopen it in a case to try to collect what they have given up in the settlement. That is paraphrasing it but that is how I understand it.

THE COURT: If, in fact, they gave it up.

MS. ROSE: Right. Okay.

If we are talking res judicata here, we did not bring this suit and we are not trying to tear apart this settlement. We are saying there was a settlement. It was memorialized. It was a contract. As a point of law the boilerplate language referring to statutory interest is ambiguous and it is construed against the I.R.S. It is ambiguous as found in Hurt and ambiguous as found in Anthony, but beyond that, Your Honor, let's talk about statutory interest. There is 6601(a) interest and that goes all the way back. There is 6601(e) interest and that is limited to one year, I believe, beginning after the notice and demand for additional amounts.

Now, if we would like to confuse this issue any further, but at the same time simplify it --

THE COURT: That is a good trick.

MS. ROSE: We are income averaging and what are we doing? Mr. Snow referred to the district counsel's decision, right? Let's look at that district counsel's decision. What they were doing was they were claiming that there were problems with 1972, a closed year. So what did they do? They pull the adjustments for '72 through to '73 and '74 and those are the mitigation statutes. We are also dealing with capital gains and losses here, all falling outside the notice of deficiency type of taxes normally under the tax court's jurisdiction.

Now, am I challenging the tax court's jurisdiction? No. What I am saying, Your Honor, is that there was a contract and whether the tax court had jurisdiction or not jurisdiction over these types of taxes there was a formal contract as in Anthony that was signed off by all the parties. We have recalculated the interest in accordance with the tax and penalties to within seven cents and nobody beats that.

Finally, on Defendant's Exhibit 6 --

THE COURT: What do you claim your client owes?

MS. ROSE: Pardon me?

THE COURT: What do you claim your client owes?

MS. ROSE: Zero.

In fact, he paid them completely. He paid his payment 49,545.69 and we took the taxes and we took the penalties, and in looking at it from a mitigation point of view where they have one year after the determination to issue a notice and demand, we calculated out the interest to what he paid to within seven cents.

THE COURT: Excuse me.

Does the I.R.S. agree that Mr. Simons paid the $17,071 amount required by the tax court decision? Mr. Snow, just help me out with that.

MR. SNOW: Of course not. The amount she is talking about, Your Honor, is represented in Simons' Exhibit 22. That all went to pay the 1973 tax court decision within a

couple of pennies, and she even notes that in her little comments on the front of Simons' Exhibit 22 with a picture of the check.

MS. ROSE: If we look at the '73 accounts it is over 2,000 off if you don't add the failure to pay penalties and some other penalties. Other than that it is $30 off. Our calculations still comes astronomically closer to within seven cents. You just don't do that by accident where they place factoring tables calculating out 336 days even on a leap year, and you just don't do that unless the I.R.S. did it, when they calculated how much he owed.

The Court asked Mr. Snow an interesting question. You said could the I.R.S. have been a little bit more specific about the statutory language?

THE COURT: Are you retained or are you doing this pro bono?

MS. ROSE: I am retained.

THE COURT: Okay. What's your hourly rate on this case?

MS. ROSE: $125 an hour, but it is also contingency, Your Honor.

THE COURT: You are on a contingency?

MS. ROSE: Yes, sir.

THE COURT: Contingent on what?

MS. ROSE: My winning.

THE COURT: Does your client expect to win money from the I.R.S.?
MS. ROSE: I expect to get attorney's fees.
THE COURT: Where will they came out of?
MS. ROSE: What do you mean?
THE COURT: Somebody has to pay you those attorneys fees.
MS. ROSE: Yes. In order to get attorney's fees I have to get what they owe and I also have to get what he will pay me.
THE COURT: You think the I.R.S. owes Mr. Simons money?
MS. ROSE: I believe they owe him attorney's fees.
THE COURT: I see. It is contingent on you prevailing.
Have you requested attorney's fees?
MS. ROSE: I am today, Your Honor.
THE COURT: I don't mean to be unfairly prying, but it does seem to me that if money is going to be paid out here by Mr. Simons, I am still somewhat puzzled why this matter was not settled.
MS. ROSE: May I refer to Defendant's Exhibit 6, Your Honor?
THE COURT: You sure may. Defendants or plaintiffs?

MS. ROSE: Defendants.

THE COURT: Okay.

MS. ROSE: Defendant's Exhibit 6.

I am just going to read a paragraph out of that defendant's exhibit. It says it is stipulated that interest will be assessed as provided by law on the deficiencies in tax, in addition to tax and penalties due from the petitioners. This paragraph is to be added to the stipulated decision to clarify that there is an interest amount to be collected.

Now, the boilerplate language that is included in all stip decisions is just not specific. Neither does it apply to mitigation circumstances where interest is only collected from the date of the termination to the notice and demand in some cases. Mr. Anger has stated that he has settled some cases using mitigation statutes. They are the only statues that apply and yet they are outside the normal notice of deficiency type taxes before the tax court.

Now, here is another reason why the interest would be extraordinarily limited. In 1976 there was an audit with some auditor's notes as to what could be done to collect a little extra taxes but no assessment was made. It went to criminal and the district counsel's decision spells out that they had no evidence for the criminal. Then it went through civil negotiations and they found that there was no evidence

for the civil fraud charges.

I think under those conditions where you have got the I.R.S. without evidence prolonging this man's misery from 1974 until 1983, there is a very good reason to say we are just going to collect one year's interest. Here is the date of the letter that the taxpayer's attorney said we are going to settle. We have that as an exhibit. One year later we find the district counsel's decision. We find mysteriously that we have interest calculated for that period of time.

Why else would the district counsel's decision refer to the tax years as being treated together? We cannot help the mechanics of the computer that force interest to be collected all the way back contrary to some statutes. But what we can say is that in 1983 Mr. Simons was contacted by Dell Lawson and told to pay $49,545.69 which he paid to the penny. If it were broken out the way our calculations shows it should be, then we come to the point where there is no evidence to refute this application of interest, this collection of interest, and simply put the stipulated decision is silent as to interest. The underlying work documents prepared by the I.R.S. are silent as to interest and intentionally so. The three tax years are mathematically and logically and legally connected with the income averaging. There is no other way that this thing could have come down.

THE COURT: Okay. Thank you, Ms. Rose.

Mr. Snow, was anything communicated to the Simons to indicate that the department was willing to accept this $55,000 amount?

MR. SNOW: Absolutely. It is signed by the chief of the section.

THE COURT: You don't happen to have that with you?

MR. SNOW: I have it back at my hotel. I can get it out here pretty quickly by fax.

Do you have that?

THE COURT: Here is what I am going to do. If the government will agree to this I am just going to -- You can sit down if you want, Mr. Snow.

I am going to try to be as clear as I can be on this. This case as I indicated last time has quite a history. Litigation is supposed to be designed to be the way people resolve disputes in a civilized society, one in which we have a system of justice that allows a place with rules and procedures that are followed in reaching resolutions of disputes. An effort is to reach just ends and to the extent possible speedy resolutions so people can get on with their lives. That includes disputes against the government or disputes by the government against some of the citizens.

It is not designed to foster an ongoing feud. It is not a place for decades long feuds. Usually when sensible civilized litigation turns into a feud it is because at least

one of the parties or both of them is unwilling to be responsible and to act in ways that genuinely attempt to end the matter with some resolution, whether it be a jury trial or whether it be a legal motion rendered by the court and thereafter appealed. But here there is an irony to me that Mr. Simons has alleged well after the fact that the government has breached an agreement that they had with him way back in 19 -- whenever it was -- 83, and that he said, well, they didn't say they were going to get interest and so on and so I don't have to pay it.

In the Court's view Mr. Simons is turning this into a decades long feud and he is sitting here and he should hear this. He hides behind counsel who spouts legal theories to the Court that I have rarely heard. This agreement should be honored, Mr. Simons. I am ordering that this $55,000 agreement be honored, as an honorable human being should do. This Court required these parties to go out and attempt to reach a settlement. You didn't have to do it but you did it. This document is proof that the matter was settled. It did not allow for something inconsistent with the good faith nature of that effort, and to the Court's view that is exactly what happened.

Rather than pay the check after it is undisputed that the Department of Justice approved the matter, and it was a compromise and it was not what the Department of Justice

wanted, and it was apparently an amount that Mr. Simons was willing to pay and this is his signature on this document. Rather than comply with an agreement we have Freedom of Information requests, we have further litigation, and this Court will not be a party to this feud in light of this uncontested settlement. This settlement is not unclear. It is not. It obligates Mr. Simons to pay a cash payment of $55,000 made payable to the Department of Treasury. The only condition that needed to occur after that is for the Department of Treasury to accept his offer which they undisputedly did. It should have been paid.

MS. ROSE: May I speak?

THE COURT: No, not until I am finished.

MS. ROSE: Yes, sir.

THE COURT: So to say I'm disappointed is to put it very lightly. I didn't enter into this. I encouraged strongly for sensible, responsible, civilized human beings to resolve this two decade long dispute. This Court when it had an opportunity to construe the law in favor of the taxpayer did so and got reversed by the circuit. It was the procedure, the process that civilized litigation takes and it came back. I see no disputed issue of fact here. I see the government's position to be absolutely correct.

I am going to enter summary judgment for the United States. The amount will be considerably more than $55,000,

which the Court encouraged the parties to resolve it in some manner and that was done frankly last time with an eye towards being helpful to the taxpayer, Mr. Simons, giving him all the benefit of the doubt. You go talk to the I.R.S. and the Justice Department people and see if there is a figure that you can live with, not a figure that you can agree to and then resort to legal machinations to attempt to get out of a binding agreement.

My reference to the agreement now is to give Mr. Simons one additional opportunity to live with the agreement that he reached and pay a lot less than he is going to pay under the order I am going to enter ten days from now if this agreement is not complied with.

The ruling will be, so there is no misunderstanding, the Court will rule for the United States. I find no disputed issue of fact here. I find the facts completely clear in favor of the government. The decision, the original United States Tax Court decision indicates very clearly that statutory interest was contemplated. The defendants' arguments are legally completely lacking in merit. They are inventive, they are attempts at being creative, and they want to work backwards all the way back to 1973 and '74 and 1983, and the Court is not having any of it. You can throw four inches of material at me but it does not eliminate the simple fact, and it is ironic to me that it was a decision that was

reached then by the taxpayer. So to say that I'm a little frustrated would be to make this an understatement.

Mr. Simons, I am disappointed in you. You can honor this agreement and pay maybe half of what they are going to assess if I enter this order ten days from now, and then you can go ahead and appeal that to the Tenth Circuit and you'll still have all of the legal processes to fool around with and maybe you can do it until the day you die, but it is no way to use the Court system. It is not. It is no way to try to manufacture after the fact a story that is not supported in law, and apparently to this Court's present point of view supported in fact.

So I want to make it clear, I am enforcing the settlement agreement at the present time requiring the parties to comply with the $55,000 amount that was agreed to after a settlement was entered into following our last meeting. If the defendant, Mr. Simons, continues to refuse to honor his binding agreement then the alternative for this Court will be to grant summary judgment for the United States and then the matter can continue in its legal process.

Ms. Rose?

MS. ROSE: I would just like to make a statement for the record, Your Honor.

THE COURT: You can make any statement that you want just keep it brief.

MS. ROSE: The reason that this case has gone on so long is because the key documents were not in discovery. They were not through the revenue officer. What is a taxpayer supposed to do when the I.R.S. comes after him and does not give him his original return that shows the revenue officer in his own handwriting that there were no open issues remaining on '74? Mr. Simons has not had a feud with the I.R.S., the I.R.S. has sought to literally economically imprison the man since '88 with liens and levies while holding his records from him.

He went to the appellate court based on a late notice of deficiency because there was no code, improper certificate of assessment, errors all over the place, and he is looking at this and he is saying where is my justice?

THE COURT: Ms. Rose, if you're going to represent a client while he is engaged in a settlement negotiation that is reduced to writing, there is some obligation of good faith that attaches to that.

Wouldn't you agree?

MS. ROSE: I agree that --

THE COURT: He didn't need to sign that.

MS. ROSE: Good faith attached in '74, too, and in 1983.

THE COURT: Well, Ms. Rose, he shouldn't have signed this if he still wants to fight that fight. This was a

resolution of those difficulties and you were his lawyer. He signed it. There is no question that the matter was resolved by agreeing to pay a sum certain by a date certain. There is a good faith obligation that attaches to an agreement to resolve the very issues that you just raised.

Now, I don't know how I can get that through to you, but I can make the rulings that I am empowered to make and that is what I have done. And in case it hasn't sunk in, my delaying this for ten days is yet another effort by the Court to encourage a settlement that will end this matter.

I could grant summary judgment for the government right now from this bench and apparently the tax liability is somewhere above $100,000. I could do it if I wanted to be as harsh as I could be to your client and to your position, but your position has no legal merit in my view whatsoever. None. The motion to dismiss for lack of subject matter jurisdiction is so off that I don't even know where to begin to address it as a legal proposition.

So I am encouraging you, and I know I have expressed plainly my disappointment and my bewilderment that this settlement was not adhered to, and talk about an example of bad faith, entering into this agreement and then at the same time digging back into it through a federal Freedom of Information requests? Talk about exhibits, that is Exhibit A of bad faith.

Now, I am giving you one more chance or your client one more chance to honor this agreement and pay less than he may well be paying if this thing runs its way for another period of time through the litigation process. I have seen this case from this bench time and time again and I don't know how many times over the past several years, but I was greatly impressed and heartened frankly by hearing unequivocally from the attorneys last time that this matter had been resolved and there is great value in resolving a conflict.

There are conflicts around the world right now that people would be glad to hear they are resolved, even if each side is still disgruntled and entered into the resolution and into the settlement somewhat grudgingly, and the only thing we would all hope is that when that settlement is reached that it is honored, and especially that when it is reached it is not simultaneously being undercut by an effort to find evidence to strengthen one's position from the beginning.

MS. ROSE: May I mention one other thing that the Court should possibly review? In 1995 the Court issued an order in March. That was renewed in, I believe, October, 182 days later. That is past the 180 days allowed for an appellate Rule Five motion for an extension of time and none was filed.

THE COURT: Is this a new issue?

MS. ROSE: No. In March of '95 you issued an order

that resolved --

THE COURT: That is not before me here today. Is this going back to the appeal of that order that was in your client's favor?

MS. ROSE: I am saying, Your Honor, that the statute has run and that that is another basis for our motion to dismiss.

THE COURT: All right. I hope it is clear.

Will you do an order that I can sign today, Mr. Snow?

MR. SNOW: I will do it right here at this table.

THE COURT: Well, you don't need to especially do that, but if I could sign it today or tomorrow reflecting the Court's ruling, and today is the 18th, and what is the 28th? Is that a weekend?

THE CLERK: It is a Friday.

THE COURT: This order granting summary judgment to the United States will be entered on the 28th. I want it clear that I am also finding that the settlement agreement is binding. I rarely have seen such a clear case of a binding settlement agreement.

In the event that the defendant has not honored his obligation under that agreement I will enter summary judgment on the 28th day of June.

We are in recess.

(Proceedings concluded.)

STATE OF UTAH )
)
COUNTY OF SALT LAKE )

I, Ed Young, do hereby certify that I am Official Court Reporter for the United States District Court for the District of Utah;

That as such Reporter I attended the hearing of the foregoing matter on 6-18-02, and thereat reported in Stenotype all of the testimony and proceedings had, and caused said notes to be transcribed into typewriting; and the foregoing pages numbered from 1 to 38 constitute a full, true and correct report of the same.

DATED at Salt Lake City, Utah, this 18 day of July, 2006.

Ed Young, U.S. Court Reporter
247 U.S. Courthouse
350 South Main Street
Salt Lake City, Utah
(801) 328-3202