Original

FILED
16 FEB 01 PM 4:06
DISTRICT OF UTAH
BY: DEPUTY CLERK

Susan R. Schildmeyer #7485
Attorney for the Defendants
11091 S. Shilling Ave. Ste. 2452
South Jordan, Utah 84095
(801) 576-0091

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION
UNITED STATES OF AMERICA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>plaintiffs,<br>v.<br>DANNY C. SIMONS, Sally J. Simons, et al<br><br>defendants. | **civil no. 92-C-1071B**<br><br>MOTION FOR A DIRECTED VERDICT AND EVIDENTIARY HEARING<br>MEMORANDUM OF LAW<br>Judge Dee V. Benson |

NOW COME THE DEFENDANTS, Danny and Sally J. Simons (Taxpayers), by and through their undersigned counsel, pursuant to the Federal Rules of Civil Procedure at Rules 52(c) to move the Court for directed verdicts as to the counterclaims of lack of contract, breach of contract, accord and satisfaction, fraud, duress, illegal liens and levies, and violation of the statutes of limitation, violations of due process, misuse of judicial process, malicious prosecution, and Rule 11, 26 and 37 sanctions for withholding discovery documents. The Defendant Taxpayers reserve their damages for a jury. Pursuant to Rule 7 the Defendants move the Court for an evidentiary hearing. The evidence is coordinated with IRS statutes and regulations too



SCANNED 147

numerous to spell out in the ten pages allotted for the brief. Each piece is essential as it maps the violations of statutes and regulations. Oral explanation will clarify this.

"A directed verdict is appropriate only if the evidence, viewed in the light most favorable to the nonmoving party, points but one way and is susceptible to no reasonable inferences supporting the nonmoving party." *Knight v. Snap-On Tools Corp.*, 3 F.3d 1398, 1401 (10th Cir. 1993). Here the IRS has proffered only a defective record of assessments, a single 1983 Tax Court decision (when the alleged agreement entailed two stipulated Tax Court decisions that were for one agreement) and have produced no notice and demand that is an essential part of an assessment and collection, and has withheld the records of the Taxpayers, while having access to them at all times.

This motion is being brought at this time based upon recent 7th and 10th Circuit cases. The 10th Cir. Court found " On appeal, the Nippers contend that, contrary to a recognized exception to the usual presumption of correctness afforded tax assessments, the government prevailed despite its failure to present the required minimal evidentiary foundation for the assessments." *U. S. v. Nipper*, docket no. 98-CV-526-K, decided by the Tenth Circuit Court of Appeals on February 8, 2001. While that case may be

distinguishable as to it being an under reporter case, the Nippers prevailed on a theory of law that should be equally applicable here. i. e. the Government has failed to support their position with a minimum accurate record of assessment or the 'timely notice and demand' as found in their Complaint has no evidence in the record to substantiate it.

As to duress in a contract, which is what the 10th cir. has found a stipulated Tax Court decision to be, the 7th cir. has found, "Duress is a basis under the common law of contracts in Wisconsin as elsewhere for rescinding a contract, and a settlement is for this purpose a contract. Wurtz v. Fleischman, 293 N.W.2d 155, 160 (Wis. 1980); Pope v. Ziegler, 377 N.W.2d 201, 203 (Wis. App. 1985); JPM, Inc. v. John Deere Industrial Equipment Co., 94 F.3d 270, 272 (7th Cir. 1996) (Wisconsin law); Selmer Co. v. Blakeslee-Midwest Co., 704 F.2d 924 (7th Cir. 1983) (same); see generally E. Allan Farnsworth, Contracts sec.sec. 416-419 (3d ed. 1999). Duress, understood most concretely, is the situation in which one person obtains a temporary monopoly that it tries to use to obtain a benefit to which it is not entitled.. . . Another way to state the principle is that exhaustion of remedies is not a prerequisite to suing for duress, since, if it were, a party in PSN's position (or in the position of the Alaska seamen) might be able to use the costs of suit as a lever to obtain an undeserved benefit. Even a colorable

suit brought or maintained for an improper purpose--not to win the suit but to obtain some collateral benefit (the classic example is suing your daughter's fianc, in the hope that the strain of litigation will cause the engagement to be broken off)--is actionable in tort, as an abuse of process, though we needn't try in this case to align that tort principle with the doctrine of duress in the law of contracts." *Professional Service Network, Inc. v. American Holding Co.*, doc. No. 00-1018, decided by the 7th Circuit Court of Appeals January 29, 2001. Here, the District Counsel's Decision shows unequivocally the taxpayer was agreeing to open a statutorily closed tax year, for an amount of money claimed owed but never received by the Taxpayer during that year. PLAINTIFFS' EXHIBIT 14 AS ATTACHED TO THE "AGREEMENT" AS SUBMITTED TO THE COURT ON JUNE 17, 2000 PAGE 2.

Further, the Taxpayer further argues that no proper assessment was made after the coerced 1983 alleged agreement. I.R.C. § 6401. If a tax payment is an "overpayment," the IRS must refund it. I.R.C. § 6402(a) ("In the case of any overpayment, the [IRS] . . . shall . . . refund any balance."); Alexander v. United States , 44 F.3d 328, 331 (5th Cir. 1995) ("[P]ayments made after the limitations period are defined as `overpayments' and, as such, must be refunded."). While the IRS may argue

tax year 1972 and 1973 are not at issue in 1974, they are mistaken for two reasons. First, 1972 was part and parcel of the *one single* alleged agreement of 1983 involving 1972, 1973, and 1974, and was by the IRS' own admission time barred. (District Counsel's Decision, page 1). Second, the income averaging work sheets show the adjustments made to 1972 carried over into 1973 and 1974. PLAINTIFFS' EXHIBIT 7 AS ATTACHED TO THE AGREEMENT. As to 1974, without the carryovers from 1972, any deficiency would not amount to 25% or more of 1974's income, the civil fraud claim was dropped, and therefore the statutes for assessments had run prior to any assessment in 1983. District Counsel's Decision page 2. So for the IRS to say it is collecting for only tax year 1974 is ludicrous. "Even tax administration does not as a matter of principle preclude considerations of fairness." *Angelus Milling Co. v. Commissioner of Internal Revenue* , 325 U.S. 293 , 297 (1945).

The Defendant Taxpayers seek recoupment of all moneys paid pursuant to a single alleged agreement with the IRS consummated in two Tax Court stipulated decisions; all fees and costs, associated with all the administrative and judicial processes wherein they attempted to resolve the IRS' claim in any manner; and all damages for the harm done to them by the IRS and be given the benefit of the bargain

damages pursuant to the Court's sanction and equitable and Mandamus powers, Pursuant to Rules 37 and 11, as against the Internal Revenue Service (IRS) , M.K. Mortenson, Revenue Agent Don Thurman, and Kirk Lusty and the Department of Justice (DOJ) for withholding the Taxpayers' records from the Taxpayers and their Tax Professionals both in the administrative process and in the judicial processes. The IRS and DOJ had access to them at all times, and subjected the Taxpayers to enforced collection actions and court proceedings when the IRS and DOJ knew or should have known the amounts claimed owed were false. Taxpayers are moving the Court for a writ of mandamus to the IRS to pay sanction fines amounting to $1000 a day for each and every lien and levy, for each and every day, the liens and levies were on their property, to be paid to the Taxpayers, with some of this amount to be paid out of the personal assets of Don Thurman, Kirk Lusty, and M. K. Mortenson.

While the Court may, on initial glance, consider this amount to be quite high, Taxpayer Mr. Simons had the finest quality Real Estate Company in the State of Utah in 1979, that was torn to pieces by admittedly unfounded IRS claims of criminal fraud. Five long years after the alleged 1983 settlement, he was seeking to develop property he had held since 1968 in a partnership. It was at this time, he discovered the illegal

liens and levies that had been placed on his property without advance notice and demand and for amounts he was unable to borrow to pay off or pay attorney's fees to remove. The property had to be sold at distressed prices once the liens were removed to support his family and to pay bills accrued during the previous years of litigation. The property he was planning on developing? Point of the Mountain home developments with now a projected value of over 85 million dollars. When other losses are examined, the losses come to approximately 91 million dollars, had the Taxpayers reaped the benefit of their alleged bargain with the IRS. There is absolutely no excuse the IRS can have for what they have put the Taxpayers through by withholding their records and enforced collection activities. $1000 a day for every day for each lien or levy prohibiting the Taxpayers from banking and from having their property rights, is a minimum payment considering the most tragic losses they incurred directly attributable to the IRS who has thousands of lawyers and accountants who could have done the work the Defendants have done to show they owe nothing.

Minimally, the IRS should have the responsibility of showing that the amount owed is correct prior to bringing suit and prior to bringing liens and levies. *Nipper.* They have access to the regulations and statutes as they read in 1982 and 1983, they

had access to internal working documents, and the tax professionals to accurately assess them. No excuse for now 13 years of erroneous collection activity.

Such subterfuge of the judicial processes wherein the records were specifically requested in discovery by their particular document locator number (DLN) and were denied, has delayed resolution of this case, and caused needless years of harm to the Taxpayers. Plaintiffs assert no one and particularly the Court should be subjected to such bogus claims and wasteful and wholly dishonest activities.

This motion and prayer for relief incorporates the attached memorandum of law and all exhibits as submittted to the Court heretofore. The damages as for sanctions that are requested go equitably as to the 'benefit of the bargain' damages, or what the defendants would not have lost if the alleged agreement had been kept, even though the amounts will be far less than the 91 million dollars they would have earned. They are solidly within the inherent powers of the Court.

> "(b) There is nothing in [28 usc] 1927, Rule 11, or other Federal Rules of Civil Procedure authorizing attorney's fees as a sanction, or in this Court's decisions interpreting those other sanctioning mechanisms, that warrants a conclusion that, taken alone or together, the other mechanisms displace courts' inherent power to impose attorney's fees as a sanction for bad-faith conduct. Although a court ordinarily should rely on such rules when there is bad-faith conduct in the course of litigation that could be adequately sanctioned under the rules, the court may safely rely on its

inherent power if, in its informed discretion, neither the statutes nor the rules are up to the task. The District Court did not abuse its discretion in resorting to the inherent power in the circumstances of this case. Although some of Chambers' conduct might have been reached through the other sanctioning mechanisms, all of that conduct was sanctionable. Requiring the court to apply the other mechanisms to discrete occurrences before invoking the inherent power to address remaining instances of sanctionable conduct would serve only to foster extensive and needless satellite litigation, which is contrary to the aim of the rules themselves. Nor did the court's reliance on the inherent power thwart the mandatory terms of Rules 11 and 26(g). *Those Rules merely require that "an appropriate sanction" be imposed*, without specifying which sanction is required. Bank of Nova Scotia v. United States, 487 U.S. 250, distinguished. Pp. 46-51." emphasis added.

*Chambers v. Nasco, Inc.*, 501 U.S. 32 ,34 (1991)

Defendant Taxpayers also move the Court for an evidentiary hearing on this matter as expeditiously as possible. This case is now 9 years old, and Defendants believe these motions may expedite the case's conclusion and is in all parties best interest. Defendants' pray for all other relief as the Court may find to be fair and just.

So signed this15th day of February, 2001.

Susan R. Schildmeyer
Counsel for the Defendants

A true and correct copy of the foregoing has been mailed by priority mail, U.S. Mail prepaid, to opposing counsel on this15th day of February, 2001.

Susan R. Schildmeyer