Susan Rose #7485
Attorney for the Defendants
9553 South Indian Ridge Dr.
Sandy, Utah 84092
phone: (801) 545-0441
fax: (801) 545-0449

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION
UNITED STATES OF AMERICA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>plaintiffs,<br>v.<br><br>DANNY C. SIMONS, Sally J. Simons, et al<br>defendants. | **civil no. 92-C-1071B**<br><br>Motion to file an oversize brief<br><br>Judge Dee V. Benson |

NOW COME THE PLAINTIFFS, by and through undersigned counsel, to move the Court to allow them to file an oversized brief based upon the attached memorandum.

So Signed this 1st day of September, 2006.

________________________________

Susan Rose
Attorney for the Defendants
9553 South Indian Ridge Dr.
Sandy, Utah 84092
phone: (801) 545-0441

CERTIFICATE OF SERVICE

I hereby certify that service of the foregoing document was made this 1st day of September, 2007, by depositing a copy in the U S mail, postage prepaid, or by courier,to the following:

Mr. Paul Warner and Mr. Jeffrey Snow
Suite 400 Trial Attorney
185 South State Street U. S. Department of Justice- tax division
Salt Lake City, Utah 84111 P. O. Box 683
Ben Franklin Station, D.C. 20044-0683

A copy is also being served upon the Court of Federal Claims in a Motion to Stay those proceedings.

Susan Rose #7485
Attorney for the Defendants
9553 South Indian Ridge Dr.
Sandy, Utah 84092
phone: (801) 545-0441
fax: (801) 545-0449

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION
UNITED STATES OF AMERICA

UNITED STATES OF AMERICA

plaintiffs,
v.

DANNY C. SIMONS, Sally J. Simons, et al
defendants.

civil no. 92-C-1071B
Memorandum in support of
Defendants'

Motion to file an oversize brief
For their motion to vacate

Judge Dee V. Benson

---

NOW COME THE PLAINTIFFS, by and through undersigned counsel, to move the Court to allow them to file an oversized brief based upon the following memorandum.

The defendants are seeking a complete review of the entire case. Necessarily for fact specific questions numerous documents, relating to numerous statutes and legal issues, over a ten year or more period of time are entailed. Also, a complaint has been filed in the Court of Federal Claims wherein those proceedings are referenced and documented. Unfortunately this case is like a large very fine swiss watch. One big design, one function, and dozens of gears to examine.

If this motion could have been made more simply, without waiving any key arguments or facts

or exhibits, it would have been.

Based on the foregoing, the Simons ask for permission to file an overlenghth brief for their motion to vacate.

So Signed this 1st day of September, 2006.

______________________________

Susan Rose
Attorney for the Defendants
9553 South Indian Ridge Dr.
Sandy, Utah 84092
phone: (801) 545-0441

CERTIFICATE OF SERVICE

I hereby certify that service of the foregoing document was made this1st day of September9, 2007, by depositing a copy in the U S mail, postage prepaid, or by courier,to the following:

| Mr. Paul Warner | and | Mr. Jeffrey Snow |
|---|---|---|
| Suite 400 | | Trial Attorney |
| 185 South State Street | | U. S. Department of Justice- tax division |
| Salt Lake City, Utah 84111 | | P. O. Box 683 |
| | | Ben Franklin Station, D.C. 20044-0683 |

A copy is also being served upon the Court of Federal Claims in a Motion to Stay those proceedings.

Susan Rose, #7985
ATTORNEY FOR THE DEFENDANTS
9553 South Indian Ridge Dr.
Sandy, Utah 84092
phone: (801) 545-0441
susan_rose@comcast.net

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION
UNITED STATES OF AMERICA

| | |
|---|---|
| UNITED STATES OF AMERICA<br>*Plaintiff*, | DEFENDANTS' MOTION FOR THIS COURT TO VACATE ITS JUDGMENTS |
| v. | |
| DANNY C. and SALLY J. SIMONS, et al.<br>*Defendants.* | **Civil No. 92-C-1071B**<br>The Honorable Judge Dee V. Benson |

---

THE DEFENDANTS, Danny C. and Sally J. Simons (Taxpayers), by and through their undersigned counsel, move for an Order from this Court to declare all its judgments void in this case, pursuant to Rules 60(b)(3), (4) & (6), and 12(h)(3) of the Federal Rules of Civil Procedure and its own inherent powers, based on the following memorandum of facts and law.

Signed this 1st day of September, 2006

________________________

Susan Rose, Utah Bar No. 7985
ATTORNEY FOR THE DEFENDANTS
9553 South Indian Ridge Dr.
Sandy, Utah 84092
phone: (801) 545-0441
susan_rose@comcast.net

CERTIFICATE OF SERVICE

I hereby certify that service of the foregoing document was made this 1st day of September, 2006, by depositing a copy in the U.S. mail, postage prepaid, or by courier, to the following:

| | | |
|---|---|---|
| Mr. Paul Warner<br>Suite 400<br>185 South State Street<br>Salt Lake City, Utah 84111 | and | Mr. Jeffrey Snow<br>Trial Attorney<br>U. S. Department of Justice - Tax Division<br>P. O. Box 683<br>Ben Franklin Station, D.C. 20044-0683 |

A copy is also being served upon the Court of Federal Claims in a Motion to Stay Proceedings.

Susan Rose, Utah bar no. 7985
ATTORNEY FOR THE DEFENDANTS
9553 South Indian Ridge Dr.
Sandy, Utah 84092
phone: (801) 545-0441
susan_rose@comcast.net

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION
UNITED STATES OF AMERICA

UNITED STATES OF AMERICA
*Plaintiff*,

v.

DANNY C. and SALLY J. SIMONS, et al.
*Defendants.*

MEMORANDUM IN SUPPORT OF THE DEFENDANTS' MOTION FOR THIS COURT TO VACATE ITS JUDGMENTS

**Civil No. 92-C-1071B**
The Honorable Judge Dee V. Benson

---

## TABLE OF CONTENTS


**SYNOPSIS** 1

**MATERIAL FACTS** 4

PLAINTIFFS CLAIMS ARISE OUTSIDE OF FEDERAL LAW 4

*Defendants Paid the 1983 Agreement in Full* 4

*Plaintiff Purposefully Performed the 1974's yr. 1983 Assessment Late* 6

*Plaintiff Gave No Written Notice and Demand* 7

*Plaintiff Imposed a Levy Before Notifying Defendants of their Intent* 7

*Material Documents were Withheld which Obstructed This Court's Decision* 7

*Mistake, Lack of Actual Consent, Fraud* 8

**LEGAL ARGUMENT** 9

*Denial of Documents Constituted a Denial of Due Process and Fraud on the Court* 11

*Mistake* 14

*Statutory Bars to the Use of this Court were Violated in 1983, Possibly to Protect the Defendants from Further Collection* 15

***Res Judicata and 26 U.S. C. §7121*** 16

***No Timely Assessment*** 17

***No Timely Written Notice and Demand*** 18

***No Timely Prior Notice of Intent to Levy*** 18

***No Notices of Deficiency for Supplemental Assessments*** 18

**EXCLUSIVE JURISDICTION OF THE COURT OF FEDERAL CLAIMS** 18

**PRAYER FOR RELIEF** 20


## TABLE OF AUTHORITIES

**Cases**


*American Fire & Casualty Co. v. Finn*, 341 U.S. 6, 17 -18 (1951) 15

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) 15

*Anthony v. United States,* 987 F.2d 670 (10th Cir. 1992) 12, 15

*Bowden v. United States,* 106 F.3d 433, 438 (D.C. Cir. 1997) 19

*Bull v. U. S.,* 295 U.S. 247, 261, 262 (1935) 16,20

*Christopher Village v. U.S.,* 2004 U.S. App. LEXIS 4379, *; 360 F.3d 1319 4, 19

*CTA Incorporated v. United States,* 44 Fed. Cl. 684, 698 (1999) 19

*Dixon v. CIR,* 2003 U.S. App. LEXIS 640,*12-13, 14;316 F.3d 1041 2,14

*Edwards v. United States*, 19 Cl. Ct. 663, 669 (1990) 19

*Felty v. Graves-Humphreys,* 818 F.2d 1126 (4th Cir. 1987) 19

*Guthrie v. Sawyer,* 1992.C10.40894 <http://www.versuslaw.com>; 970 F.2d 733 13, 18

*Hazel-Atlas Glass Co. v. Hartford-Empire Co*., 322 U. S. 238, 244 (1944) 10

*Heckler v. Community Health Service,* 467 U. S. 51, 61 (1984) 11

*Herring v. U.S.,* 2005 U.S. App. LEXIS 20300, *; 424 F.3d 384 13

*Hurt v. U. S.,* 70 F.3d 1261 (4th Cir. 1995) 13, 15

*In re Four Seasons Sec. Laws Litig*., 502 F.2d 834, 842 (10th Cir. 1974) 1,10, 15

*Jersey Shore v. U.S.,* 1987 U.S. LEXIS 289, *; 479 U.S. 442 18

*Kurio v. U. S.,* 429 F. Supp. 42, 1970.STX.0000028 http://www.versuslaw.com 10,14,15

*Laing v. U.S.,* 1976 U.S. LEXIS 144, *; 43-44; 423 U.S. 161 13,14

*Liljeberg v. Health Services Acquisition Corp*., 486 U. S. 847, 864 (1988) 10

*Mansfield, C. & L. M. R. Co. v. Swan,* 111 U.S. 379, 382 (1884) 15

*Michaels v. CIR,* 7th cir. dkt.no. No. 45700-86, May 15, 1998, fn. 1. **17**

*Nardone v. United States,* 302 U.S. 379, 383(1927) 15

*Price v. Litton Business Systems,* 694 F.2d 963, 965 (4th Cir. 1982) 19

*Ripley v. Comm'r Ripley v. Commissioner,* 103 F.3d 332 (4th Cir.) 17

*Simons v. CIR,* 185 F.3d 875, 1999.C10.42905 http://www.versuslaw.com 4, 17

*Singleton v. U.S.,* 1997.C04.0002424 http://www.versuslaw.com 18

*Summit Contractors, Inc. v. United States,* 22 Cl. Ct. 54, 56 (1990) 19

*U.S. v. Botufer,* 2002 U.S. App. LEXIS 22703, * 36; 309 F.3d 1263 17

*U.S. v. Buck,* 2002 U.S. App. LEXIS 3682, * 9-10; 281 F.3d 1336 (Tenth Circuit) 9

*U. S. v. Ellis*, 50 F.3d 419, 423 (7th Cir.) 2,14

*U.S. v. United Mine Workers of America*, 1947 U.S. LEXIS 2954, * 89-90; 330 U.S. 258; 67 S. Ct. 677; 91 L. Ed. 884 15, 16

*U.S. v. Simons*, 129 F.3D 1386 (10th Cir. 11/26/1997), 129 F.3d 1386, 1997.C10.0001337 http://www.versuslaw.com 1, 12

| | |
|---|---|
| *U.S. v. Simons*, 10th Cir., Dkt. No. 02-4201 (2004) ATTACHMENT A | 1,10 |
| *U.S. v. Yeje- Cabrera*, 2005 U.S. App. LEXIS 23654,*13-14;430 F.3d 1 | 2,14 |
| *Wolin v. Smith Barney, Inc.,* 83 F.3d 847, 852 (7th Cir. 1996) | 19 |
| *Wood v. United States,* 961 F.2d 195, 198 (Fed. Cir. 1992) | 19 |


**Statutes**


| | |
|---|---|
| I.R.C. 108 | 3 |
| I.R.C. 6204 | 18 |
| I.R.C. 6213 | 18 |
| I.R.C. 6215 | 7 |
| I.R.C. 6303 | 7 |
| I.R.C. 6331 | 3, 7, 18 |
| I.R.C. 6330 | 7, 18 |
| I.R.C. 6501 | 6,7 |
| I.R.C. 6502 | 6,7 |
| I.R.C. 7121 | 1, 16,17 |
| 28 U.S.C. 1346 | 18 |
| 28 U.S.C. 1491 | 18 |
| 28 U.S.C. 2201, 2202 | 14,18 |
| 28 U.S.C. 2501 | 4, 19 |

**Constitutional Provisions**

Article III 1, 3, 13, 20

**Federal Rules of Civil Procedure**

Rule 26 13

Rules 60(b)(3), (4), (6) 1, 20

Rule 12(h)(3) 1, 20

**Other Authorities**

NETTING OF INTEREST ON TAX OVERPAYMENTS AND UNDERPAYMENTS, P. 8.
http://www.treasury.gov/offices/tax-policy/library/t0neting.pdf#search=%22IRS%20computer%20netting%20interest%22 6

KEY STATUTE----
FORECLOSING ANY NEW AGREEMENTS REGARDING 1974 AND THE 1983 SINGLE AGREEMENT INCLUDING TWO INSEPARABLE TAX COURT DECISIONS
Sec. 7121. Closing agreements
(b) Finality
If such agreement is approved by the Secretary (within such time as may be stated in such agreement, or later agreed to) such agreement shall be final and conclusive, and, except upon a showing of fraud or malfeasance, or misrepresentation of a material fact -
(1) the case shall not be reopened as to the matters agreed upon or the agreement modified by any officer, employee, or agent of the United States, and
(2) in any suit, action, or proceeding, such agreement, or any determination, assessment, collection, payment, abatement, refund, or credit made in accordance therewith, shall not be annulled, modified, set aside, or disregarded. [emphasis added].

Sec. 6501 Limitations on Collections and Assessments
a) General rule
Except as otherwise provided in this section, the amount of any tax imposed by this title shall be assessed within 3 years after

the return was filed,….. and no proceeding in court without assessment for the collection of such tax shall be begun after the expiration of such period.

6215. Assessment of deficiency found by Tax Court

**(a) General rule**

If the taxpayer files a petition with the Tax Court, the entire amount redetermined as the deficiency by the decision of the Tax Court which has become final **shall** be assessed and shall be paid upon notice and demand from the Secretary. No part of the amount determined as a deficiency by the Secretary **but disallowed as such by the decision of the Tax Court which has become final** shall be assessed or be collected by levy or by proceeding in court **with or without assessment**

[emphasis added]

The Defendants, Danny C. and Sally J. Simons (Taxpayers), by and through their undersigned counsel, move for an Order from this Court to declare all its judgments void in this case, pursuant to Rules 60(b)(3), (4) & (6), and 12(h)(3) of the Federal Rules of Civil Procedure, and its own inherent powers, based on the following memorandum of facts and law. The Defendants have also included an Appendix ("Def. App.") consistent by page number with their Appendix in the Court of Federal Claims. ATTACHMENT E

## **SYNOPSIS**

Either Plaintiffs were right in 1983 with a single agreement of two inseparable Tax Court decisions, closing all three accounts, and not collecting---or right in 1988, with new collections, withheld documents, and false claims here. If correct in 1983, then all acts after are a series of Breaches of Contract, and takings judiciable in the Court of Federal Claims, exclusively. Any subsequent 'agreement' or judgment is prohibited by I.R.C. §7121, *res judicata*, and *estoppel*. Concealed documents voids judgments, denies due process, and usurps this Court's power.

The Defendants appealed this Court's judgments and failed. The Tenth Circuit Court denied their appeal on January 22, 2004. ATTACH. A. However, the 10th Cir. Court stated that the Decree could be vacated if "lack of actual consent, fraud in obtaining the consent, lack of federal jurisdiction, or mistake are shown." *U.S. v. Simons*, 10th Cir., Dkt. No. 02-4201, p. 3 ATTACHMENT A. A judgment is void "if the court which rendered it lacked jurisdiction of the subject matter, or of the parties, or acted in a manner inconsistent with due process of law." *In re*

*Four Seasons Sec. Laws Litig*., 502 F.2d 834, 842 (10th Cir. 1974) After the 30-day period to appeal to the U.S. Supreme Court expired in February 2004, ***the Plaintiff billed the Defendants for $4100*** (Def. App. p. 139b). Judgments procured by concealment of material facts and evidence are likewise subject to reopening. [[1]] The damages to the Simons equate to over $40 million dollars due to the inability of Mr. Simons to fully participate in development of Traverse Ridge, point of the mountain, in a partnership, whose interests Rev. Officer Don Thurman documented. That development is valued at $500 million dollars now. ATTACH. C. The Defendants profits would have been far greater than Suncrest, because they bought the partnership in 5000 acres at least about twenty years earlier than Suncrest.

Their claims were not frivolous or meritless. Four lawyers brought many of their counterclaims, they were not without a basis in fact or law, reviewed by Tax experts, but only completely provable after the Feb. 15, 2000. By the time they could prove this, this Court stated "the Court is having none of it". Def. App. pg. 230. Examining 1983 is examining this Court's jurisdictional authority to give relief to the government for 1988 further collections. 1983's agreement was a final I.R.C. 7121 closing agreement, approved by Appeals.Def. App. pg. 28-30.

August 5, 2002, this Court issued a judgment, without findings of fact as to if the

---

[1] *Dixon v. C.I.R*., 2003 U.S. App. LEXIS 640,*12-13, 14;316 F.3d 1041 ("The Tax Court believed it was hearing a legitimate adversarial dispute when, in fact, the proceeding was a charade fraught with concealed motives, hidden payments, and false testimony. What did occur was clearly designed to defile the court itself, and there is no question that it was carried out by an officer of the court."). See, also, *U.S. v. Yeje- Cabrera*, 2005 U.S. App. LEXIS 23654,*13-14;430 F.3d 1; *United States v. Ellis*, 50 F.3d 419, 423 (7th Cir.)

Defendants owed the Plaintiff or this Court's U.S. Constitutional Article III authority to grant the U.S. relief, that supposedly extinguished all of the Plaintiff's conceivable claims for the tax year 1974. It was based on a handwritten document, not signed with anyone with delegated authority to bind the government, lacking actual agreement, that was a legal impossibility under Internal Revenue Code (I.R.C.) 7121 and *res judicata* of a 1983 agreement consisting of two *inseparable* Tax Court decisions. The 2001, and 2002 judgments lacked finality due to the possibility the IRS can now pursue the Defendants for not declaring a forgiven, now Court-legitimized, 1988 debt that was never owed, under I.R.C. 108, was not on a final closing agreement form, and was violated by the Plaintiffs' further billing of the Defendants. It upheld numerous U.S. procedural statutory violations that invalidated any assessments and levies and liens, which the original Complaint misrepresented, procured by concealing the Defs evidence until about Feb. 15, 2000.

By the time the Plaintiffs obtained their records, the Court, convinced of the U.S. position, frustrated by the long litigation, denied supplementation of the record (Def. App. pg. 219), and relied on the DOJ attorney Mr. Snow's statement to the Court indicating that the Plaintiffs agreed unequivocally to the handwritten document (Def. App. pg. 222), not done (Def. App. pg. 130, compare 131-132) to severely chastise the Defendants. (Def. App. pg. 228-230).

After the most recent billing, the Defendants then submitted a formal request for abatement, Form 843, to the Plaintiff, (Def. App. pg. 1), who subsequently sent the Defendants a refund check in the amount of $23.17 (Def. App. p. 139). The Defendants did not cash the check but instead returned it to the Plaintiff as in error and filed a claim for breach of contract in the

Court of Federal Claims for the 1983 fully-paid contract, and charged that there was no contract for the 2001 handwritten offer for which the Defendants paid $55,000. ATTACHMENT B. The Tucker Act makes the Claims Court the only Court available to hear the Defendants breach of 1983 contract and takings claims. Plaintiffs rely on this Court's colloquy and judgments to dismiss the defendants Claims Court claims. ATTACH. D. [ [2]]

The relief the Defendants seek is simple. Generally, it is, vacate the Court's judgments, and *second*, transfer the counterclaims to the U.S. Court of Federal claims, as they all stem from timely raised, breaches of the 1983 contract. Third, declare that the Defendants claims could not officially 'accrue' within the meaning of 28 U.S.C.§ 2501, until they obtained their evidence, at which time their counterclaims were also their defenses, and were never ruled on, until now.

**MATERIAL FACTS**

PLAINTIFF'S CLAIMS ARISE OUTSIDE OF FEDERAL LAW

*Defendants Paid the 1983 Agreement in Full*

1. The Plaintiff admits that there was one agreement for tax years 1972, 1973 and 1974 (Def. App. p.28), memorialized into two Tax Court decisions (Def. App. p.28), inseparable by tax court rule 155 IRS computations interlinking all three years (Def. App. pp.16-21).

---

[2] The Defendants rely on the Federal Circuit Court's ruling in *Christopher Village v. U.S.* (2004 U.S. App. LEXIS 4379, *; 360 F.3d 1319) to show that the District Court and the Appeals Court lack jurisdiction over the Defendants' breach of contract and takings claims arising out of the Plaintiff's continuous breaches of the 1983 contract that was fully paid by the Defendants. The Plaintiff asserts that the Defendants' tort claims do not stem from continuous breaches of contract, and should be tried in this Court.

2. In 1999, the Tenth Circuit Court in this case, *Simons v. CIR*, 185 F.3d 875, 84 A.F.T.R.2d 99, 1999.C10.42905 http://www.versuslaw.com par. [11], found the following undisputed facts:

> "... [I]n 1979, ... the IRS issued a notice of deficiency relating to taxpayers' 1974 income taxes. The taxpayers filed a petition for redetermination with the Tax Court on July 13, 1979, disputing the notice of deficiency (Tax Ct. No. 79-10312). In 1980, the IRS issued another notice of deficiency, this time relating to taxpayers' 1972 and 1973 income taxes. Again, the taxpayers filed a petition for redetermination in Tax Court disputing the notice of deficiency (Tax Ct. No. 80-13016). During the course of the Tax Court proceedings, the taxpayers' counsel negotiated with the IRS to settle the disputed taxes. The record before us does not contain a copy of the settlement agreement ultimately reached between the taxpayers and the IRS, but it does contain some correspondence from the taxpayers' counsel concerning proposed terms of the settlement. On April 22, 1983, the Tax Court entered decisions in both cases, each of which purported to be "[p]ursuant to agreement of the parties." Tax Ct. Rec. No. 79-10312, Doc. 13 at 1; Tax Ct. Rec. No. 80-13016, Doc. 10 at 1. In No. 79-10312, the Tax Court found that the taxpayers owed additional taxes of $17,071 and a negligence penalty of $854 for tax year 1974. In No. 80-13016, the Tax Court found that the taxpayers owed no additional taxes or penalties for tax year 1972, but that they owed additional taxes of $23,573 and a negligence penalty of $1,179 for tax year 1973."

3. The Defendants paid the amount Revenue Officer Dal Lawson told them over the phone, $49,546.55 (Def. App. p.51), on October 21, 1983 (Def. App. p.141), for all three years. On October 24, 1983, just one working day later, 1974's account was closed, with a zero Assessment and disposal code of 01 until after July 1989 (Def. App. pp.104, 62a).

4. On about February 15, 2000, the Plaintiff disclosed the Defendants' *material* documents (Def. App. pp.123-129, 117-118): (1) their original return (Def. App. p.31); (2) Form 872, consent to extend the statutes of limitation for assessment until a time certain (Def. App. pp.57-59); (3) the internal manager's order to perform the 1974 assessment after the statute I.R.C. 6501, 6215 limits expired on July 19, 1983 (Def. App. p.5); (4) and the District Counsel's

Decision which showed all three years would be treated "together" but the "agreement" [singular] would be memorialized in two Tax Court decisions (Def. App. p.28).

5. CPA Bryan Bolander, current Utah State CPA association President, found that all the amounts tracked through letters of offer (Def. App. pp.22, 25) and the District Counsel's Decision (Def. App. p.28), and the original returns (Def. App. p.31), and, most importantly, the IRS drafted Tax Court Rule 155 calculations, for full payment for all years (Def. App. p. 6-10).

6. CPA Henry Van Tiendren, shows full payment to within .07 cents. (Def. App. p.52).

7. Veteran expert IRS Appeals Officer of 23 years, Gail Anger, states it is impossible to post multiple-year settlement amounts to the IRS computer, and it would be 'astronomically impossible' for anyone to reconstruct how payment was made on a multiple-year settlement with netted interests using eight place factoring tables to within .07 cents of what was paid, or .001 error, unless the IRS did it identically. (Def. App. pp.119-122).

8. The IRS computer cannot post amounts other than 'full interest,' such as here, 'restricted' interest (Def. App. p. 9, 119-121 ) to the computer. See NETTING OF INTEREST ON TAX OVERPAYMENTS AND UNDERPAYMENTS, **P. 8.** http://www.treasury.gov/offices/tax-policy/library/t0neting.pdf#search=%22IRS%20computer%20netting%20interest%22

9. The IRS can abate interest when the Service is to blame for the time delays. (Def. App. pp.28-30, 112). The Plaintiff admits that they were responsible for the delays. (Def. App. pp.28-30).

*Plaintiff Purposefully Performed the 1974 Years 1983 Assessment Late*

10. To accommodate the computer and insure no further collections on the 1974 account, the IRS (under the supervision of a manager) purposefully performed their 7-25-1983 assessment late (Def. App. p.5). The manager clearly identifies 7-19-83 as the 26 U.S.C. §§6501 expiration date, but orders and does the assessment on 7-25-83. *Id*. According to Form 872 (consent for the date certain extension), the Defendants calculate, the date to be around 6-24-83. Regardless, the time required by I.R.C. §§6501 and 6215 to perform an assessment expired at least on midnight on 7-19-1983. Form 872 and the manager's document were withheld from the Defendant and Court by the Plaintiff until after about February 15, 2000. The omission of this material fact usurped the Court's power so as to illegally collect further. Def. App. pg. 182, 183.

11. 1975 was the only assessment date timely performed (Def. App. pp.100, 109,110)fully paid.

*Plaintiff Gave No Written Notice and Demand or new Notices of Deficiency*

12. The Plaintiffs verbally collected (Def. App. p.141) in 1983 without written notice or demand. I.R.C. §6303. No I.R.C. § 6213(a) notices of deficiency for supplemental assessments exists.

*Plaintiff Imposed a Levy Before Notifying Defendants of their Intent*

14. Pursuant to I.R.C. 6330, 6331, the IRS issued a notice of intent to levy Defendants' in January 1989, months *after* the actual levy (Def. App. p.80, compare with 81-83). The Defendants lacked access to a predeprivation hearing and evidence for a defense at the time.

*Material Documents were Withheld which Obstructed This Court's Decision*

15. Revenue Officer Don Thurman had the Defendants' documents in 1988 (Def. App. p.68), noted that there were 'no open issues on 1974' because of the three year settlement, and copied

the documents and returned them. Id. He also noted the Taxpayer Defendants appeared wealthy but paid little or no taxes. Id. He further taunted the Defendant's CPA by declaring that the taxpayer would lose in Court without evidence the Taxpayers could not prove the Plaintiff was in error (Def. App. p.71a). Mr. Thurman met at the Red Lion Inn with 'Dal', who said that collection was easy on the IMF [eliminating the records problems] (Def. App. p. 75-76). CPA Dennis Larsen attests he sought from the government the Defendants history and it was not given him, and they were trying to get documents to Mr. Thurman. (Def. App. pg. 117-118). Mr. Thurman admits he gave the CPA a 'burst' [computer readout]. Def. App. pg. pg. 70, 8-18-88.

16. Mr. Lusty had access to the Defendants' material records. Def. App. pg. 63.Attorney White, now the Dean of the Sandra Day O'Connor School of Law, swears upon oath, that she asked for and did not receive certain key documents necessary to understand the case. See, Mrs. White's request for records (Def. App. p.125), affidavit she never received them(Def. App. pp.123-124).

17. In 1995, the IRS computer readout showed the Defendants owed the Plaintiffs nothing (Def. App. p.110). Mr. Lusty told the Court and Mrs. White that hundreds of thousands of dollars were owing with a summary report he ordered that ignored all the zero-balanced closing assessments and other assessment invalidating documents (Def. App. p.67). The computer readings were not disclosed nor explained as to why the IRS zeroed out the account, in 1995.

18. In 2001, Department of Justice (DOJ) attorney Snow ordered the Plaintiff to backdate about $75,000 to the Defendants account to 1995 (Def. App. p. 110-111a).

*Mistake, Lack of Actual Consent, Fraud*

19. The Plaintiff told the Defendants: (a) that their records were either in the District Office or Service center, yet they were in Special Procedures function (Def. App. pp.177-178, 63, 123-129); (b) there was no denial of records (Def. App. p.167), there was reliance (Def. App. p.64-66a); (c) there were no signed consents for statute extensions, (Def. App. p.137-138, the reason for challenging the Tax Court decision based on a 'late' issued Notice of Deficiency (p. 60-62), not understanding an extension was signed).

20. Paragraph 4 of the Plaintiff's Complaint in this Court (Def. App. p.182-183) represents there was an alleged timely assessment and written notice and demand in 1983. None existed.

21. An offer that was worldwide was proffered (Def. App. p.130). The Plaintiff's responded with a typewritten counter-offer omitting the word 'worldwide', narrowing it to only the claims in this case, leaving the potential open for future litigation and collection (Def. App. p.131-132). They then objected to this Court's final order (Def. App. p.206), further billing the Defendants (Def. App. p.139). Defs filed breach of contract claims in the Court of Federal Claims. ATTACH B.

## LEGAL ARGUMENT

Pursuant to Rules 60(b)(4) & (6) and 12(h)(3) of the Federal Rules of Civil Procedure, and to its inherent powers, a Court can vacate a decision based upon lack of federal jurisdiction, a void judgment, and for 'any other reason' required by justice. *U.S. v. Buck*, 2002 U.S. App. LEXIS 3682,*9-10 ;281 F.3d 1336 (Tenth Circuit).[[3]] This Court has the open door to vacating

---

[3] "Relief [*10] is not dependent on the filing of a motion by a party to the original judgment; the court may assert this power *sua sponte*. *See* 11 Wright & Miller § 2865, at 380; *Id.* §2870, at 411; 12 **Moore's § 60.21**[4][e], at 60-60 (party seeking relief need not have been a

its decrees if "lack of actual consent, fraud in obtaining consent, lack of federal jurisdiction, or mistake are shown." *U.S. v. Simons*, 10th Cir. unpublished, dkt. no. 02-4201 issued Jan. 22, 2004, p.3. ATTACHMENT A. Rule 60(b), authorizes discretionary judicial revision of judgments in the listed situations and in other "extraordinary circumstances," *Liljeberg v. Health Services Acquisition Corp*., 486 U. S. 847, 864 (1988). It reflects, ratifies, and confirms the courts' own inherent and discretionary power, "firmly established in English practice long before the foundation of our Republic," to set aside a judgment whose enforcement would work inequity. *Hazel-Atlas Glass Co. v. Hartford-Empire Co*., 322 U. S. 238, 244 (1944). All aspects of this court's jurisdiction revolve around the issue of payment of the 1983 multiple-year agreement, and adherence to Congressional limits on tax collection. Here, unlike *Buck*, the Plaintiff actually withheld documents in discovery (Def. App. p.125, 123-124), and administratively (Def. App. p. 117-118). *See, generally* process, and bad faith litigation. *Kurio v. U. S.*, 429 F. Supp. 42, 1970.STX.0000028http://www.versuslaw.com.[[4]]

---

formal party to original proceeding); *Id.* §60.21[4][f]; *Id.* § 60.62, at 60-195. There is no time limit for such proceedings, nor does the doctrine of laches apply. *See* **Bulloch v. United States, 763 F.2d 1115, 1121 (10th Cir. 1985)** (en banc); 11 Wright & Miller §2870, at 412; 12 **Moore's § 60.21**[4][g]."

[4] *Kurio v. U. S.*, 429 F. Supp. 42, 970.STX.0000028http://www.versuslaw.com. Once "the mistakes were finally discovered, the Government [and, here, District Court] failed promptly to admit them. The resulting snarl is now before the Court for resolution." *Kurio* ¶ 15.
"The returns sought by plaintiff from the Government were material and relevant because they were the best evidence of the facts on which this issue turned. [Def. App. pp. 9, 123] They were immediately accessible to all participating IRS and Justice Department personnel, any of whom could have determined their location by computer search in the regional Service Center or the National Computer Center and obtained them by oral request. [Def. App. pp.63, 68]. See Treas. Reg. §§301.6103(a)-1(e), -1(h). They were sought by plaintiff through duly ordered, established,

*Denial of Documents Constituted a Denial of Due Process and Fraud on the Court*

A judgment is void "if the court which rendered it lacked jurisdiction of the subject matter, or of the parties, or acted in a manner inconsistent with due process of law." *In re Four Seasons Sec. Laws Litig*., 502 F.2d 834, 842 (10th Cir. 1974) as cited in *Buck* at *16-17. Under *Kurio*, the documents withheld from the Defendants effectively denied them their due process rights. The Plaintiff told the Defendants (a) that their records were either in the District Office or Service center, and they were in Special Procedures function (Def. App. pp.177-178, 63, 123-129); (b) there was no denial of records (Def. App. p.167), reliance by the attorney White is found in her assertions to the Court (Def. App. p. 64-66a); (c) they did not sign any consents for statute extensions (Def. App. pp.137-138) (the reason for challenging the Tax Court decision based on a 'late' issued Notice of Deficiency (p.60-62) relying on the Defendants

---

and well understood discovery procedures [and FOIA and Privacy Act requests]. Nevertheless, they were not furnished and this increased plaintiff's burden of proving his case beyond that contemplated by the Congress and the courts. In effect, plaintiff was deprived the opportunity of satisfying his burden of proof on an important part of his case."
*Kurio v. U. S.* , ¶39 [notes by Defendants].

Here, once the government filed its complaint in 1992 complaint "as a litigant [it] is, of course, subject to the rules of discovery" [citations omitted]. The Plaintiff, therefore, had no right to ignore Defendants' discovery demands. [Def. App. pg. 123-125]. Moreover, as representatives of the Government, all personnel connected with the litigation, including counsel, had an obligation "to be frank and fair and disclose all the facts" [citations omitted]. *Kurio*, ¶37 "Where the government enters into an agreement with its citizens, it has a duty to act with at least a 'minimum standard of decency, honor, and reliability.'" *Heckler v. Community Health Service*, 467 U. S. 51, 61 (1984).

saying no extension was signed). None of this was true.[5] In the 1997 appeal by the Defendants of this case to the Tenth Circuit Court, *United States v. Simons*, 129 F.3D 1386 (10th Cir. 11/26/1997) , 129 F.3d 1386, 1997.C10.0001337 http://www.versuslaw.com par. [29] noted its displeasure that documents were surfacing after 20 years and misleading information had been given the Defendants.[6] The Court's statements reflect the prejudice resulting from the denial of documents and the government's refusal to readily admit they had no legally valid claims. [7] The preponderance of evidence standard should apply to the Defendants because the Plaintiff

---

5 The Defendants simply could not show this Court before February 15, 2001, with documented evidence, that these bars were not met because the Plaintiff withheld the documents from them (Def. App. pp.6-10, 126-129). Nevertheless, the Defendants' prior attorneys, signing statements under Rule 11, Parker Neilson, David Ross, III, Mrs. White, and current counsel, always claimed the Defendants paid the agreement in full (Def. App. p.64-66a). However, the Court was led to rely on the Plaintiff's assertions the Defendants still owed (Def. App. p.182-183), due to the presumption of correctness customarily given U.S. agencies.

6 "The fact that this document is now surfacing is -- I believe one of the reasons we have a statute of limitations -- here we are some almost 20 years after the return was filed and we are dealing with documents surfacing. This is a case where Mr. Defendants had filed three or four or actually four or five Freedom of Information Act Requests . . . to even receive responses from the Internal Revenue Service that the . . . 656 that was signed by the government, did not exist. He actually received a copy of an unsigned one through the Freedom of Information [sic]. There is even a letter from the district director saying that no such document exists, but in fact we now have a document that reflects the fact that there was an agreement." *Id. U.S. v. Simons, supra.*

7 (1) Def. App. p.219: disallowing supplementation of the factual record of the Court; (2) Def. App. p.220: "It has been going on since 1972… towards half a person's lifetime." L. 10-11, "I am sure the Defendants think that some of the results reached legally are unfair and they probably are;" l. 25"); (3) Def. App. p. 227 L. 14: 'This case… has quite a history.' 'It is not a place for a decades long feud' L. 23-24.; (4) Def. App. p.228: "It is an irony to me that Mr. Simons has alleged well after the fact that the Plaintiff breached an agreement that they had way back in 19--- whenever it was --- 83…." Lines 5-8; (5) Def. App. p.230: Defendants "want to work backwards all the way back to 1973 and '74 and 1983, and the Court is not having any of it." Lines 21-22.

stands as any private citizen when contracts are involved. Tax Court decisions are contracts and ambiguities are construed against the IRS. *Anthony v. United States*, 987 F.2d 670 (10th Cir. 1992), *Hurt v. U. S.* 70 F.3d 1261 (4th Cir. 1995), *Kurio, supra*.

No doubt the IRS can rely on computer forms, as 'Dal' said (Def. App. pp. 75-76), avoiding the problematic records, UNLESS, the Defendants could prove to the contrary. *Guthrie v. Sawyer,* 1992.C10.40894 <http://www.versuslaw.com>; 970 F.2d 733 par.[27]. Here, there is no doubt the necessary 'proof to the contrary' that the computer readout assertions were in error, intentionally withheld (Def. App. pp. 68, 110-111, 117-118, 122-129) and manipulated by the DOJ (Def. App. pp.110-111). The usurpation of this Court's authority for the Plaintiff's illegal gain, intentionally or by mistake, were complete once this Court was convinced of and relied upon the false representations and violations of Rule 26 to demand settlement, rather than making the Plaintiff admit its errors.[8] Here, officers of the Court were asked for specific key documents, knew their whereabouts, and caused millions in damages.[9] Claims of material

---

8 *Herring v. U.S.,* 2005 U.S. App. LEXIS 20300,*;424 F.3d 384; "…for proof of fraud upon the court ….there must be: (1) an intentional fraud; (2) by an officer of the court; (3) which is directed at the court itself; and (4) in fact deceives the court…. Fn. 1. …. *see also* **Weese v. Schukman, 98 F.3d 542, 553 (10th Cir. 1996)** (noting that "fraud on the court should embrace only that species of fraud which does or attempts to, subvert the integrity of the court itself, or is a fraud perpetrated by officers of the court") (citation omitted)" *2-3. Current Justice Alito participated in this judgment.

9 *Laing v. U.S.,* 1976 U.S. LEXIS 144,*43-44 ;423 U.S. 161: "The "root requirement" of the Due Process Clause is "that an individual be given an opportunity for a hearing before he is deprived of any significant property interest, except for extraordinary situations where some valid governmental interest is at stake that justifies postponing the hearing until after the event."

omissions that would change the outcome, if known to the Court previously, are entitled to a fair and impartial hearing. [[10]] No one could accurately say what the 1983 agreement consisted of, nor support the invalidation of any claimed assessments

*Mistake, Lack of Consent, Lack of Finality*

The Plaintiff objected to the consent decree (Def. App. p. 206) as did the Defendants (Def. App. p. 209, 228-230), and were subjected to further billing, 139b, and possibly making the Defendants liable for further collections for a now Court-legitimized 'forgiven' debt under I.R.C. §108, equating to HUNDREDS of thousands of dollars, never owed. Without a final 'closing' agreement on the proper forms, *Laing, infra*, or signature of a person with delegated authority (Def. App. pg. 222), collections. The Court never intended such a result. All of this is due to the fact that the Court relied upon Mr. Snow's statement that the Plaintiff had unequivocally accepted the Defendants' offer (Def. App. p.227a L. 1-5). But there was an error, a mistake, no meeting of the minds with the Defendants' offer (compare Def. App. p.130 with pp.131-132), *Kurio, supra*, no un equivocal acceptance, and thus, no contract.

The Plaintiff omitted the word 'worldwide' (Def. App. pg. 131-132), defining it in a way other than originally intended (Def. App. p.222, 206). Without delegated authority (Def. App. pg. 222) or a proper closing form, any Court declarations fall under the limitations of 28 U.S.C.

---

**Boddie v. Connecticut, 401 U.S. 371, 379 (1971)** (emphasis in original). See, e.g., **Bell v. Burson, 402 U.S. 535, 542 (1971); Goldberg v. Kelly, 397 U.S. 254 (1970).**

[10] *Dixon v. C.I.R.*, 2003 U.S. App. LEXIS 640,*12-13, 14;316 F.3d 1041 See, also, *U.S. v. Yeje- Cabrera*, 2005 U.S. App. LEXIS 23654,*13-14;430 F.3d 1; *United States v. Ellis*, 50 F.3d 419, 423 (7th Cir.)

§§2201, 2202, are not final, and there is no *bona fide* 'contract'. *Laing, supra*. The government is contributing no consideration. It already had an obligation not to continue collections, in 1983.

*Statutory Bars to Using this Court were Violated in 1983, Possibly to Protect the Defendants from Further Collection*

"[T]he Plaintiff is subject to a statute. . . . if the statute's purpose is to prevent fraud, injury, or wrong." *Nardone v. United States,* 302 U.S. 379, 383(1927). *Anthony, Hurt, Kurio, Supra, Singleton, infra.* Justice Frankfurter once used the old adage that we are a country of law or we are a country of men.[[11]] Any prior decrees were procured in violation of the law. Persons cannot consent by waiver to a lack of a Court's jurisdictional authority, such as collections outside of procedures never owed. *Laing,* 42, supra*, *American Fire & Casualty Co. v. Finn*, 341 U.S. 6, 17 -18 (1951); *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247-48 (1986); *Mansfield, C. & L. M. R. Co. v. Swan*, 111 U.S. 379, 382 (1884). A judgment is void "if the court which rendered it lacked jurisdiction of the subject matter, or of the parties, or acted in a manner inconsistent with due process of law." *In re Four Seasons Sec. Laws Litig*., 502 F.2d 834, 842 (10th Cir. 1974). If what the Plaintiff was collecting was not 'taxes' defined within the IRS' code, then this Court's limits are set by Congress beyond which this Court is unable to act.

---

[11] *U.S. v. United Mine Workers of America*, 1947 U.S. LEXIS 2954, *89-90;330 U.S. 258; 67 S. Ct. 677; 91 L. Ed. 884 (J. Frankfurter, concurrance) ("To be sure, an obvious limitation upon a court cannot be circumvented by a frivolous inquiry into the existence of a power that has unquestionably been withheld...")

*Bull v. U. S.*, 295 U.S. 247,261, 262 (1935), and *United Mine Workers, supra*.[12] The Plaintiff is in effect entering a partnership with the Court to violate the law, without the Court's knowledge due to the withholding of material documents, interfering with its machinery.

***Res Judicata and 26 U.S. C.§ 7121.*** *Res judicata* applies to Tax Court decisions, *Simons v. CIR, supra*, and the decisions were negotiated to be final closing agreements, complete with Form 870 language where the Defendants agreed to waive any restrictions on immediate assessment (Def. App. p.13, 15). Under 26 U.S.C. §7121, there cannot be another agreement. *General Split Corp. v. United States*, 1974.C07.40336 <http://www.versuslaw.com>; 500 F.2d 998 par. [51,52, 65], gave greater closing authority to a Tax Court decision than a Form 870.

**Two significant sentences by the Plaintiff are found on Def. App. p.28:**

> "Though the [Tax Court] cases have not been formally consolidated before the Tax Court, they do involve the same taxpayers and substantially the same issues, and will therefore be treated together [inseparable] for purposes of settlement. Two settlement documents will, however, be prepared for filing with the Court."

In 1983, the Plaintiff carried this through precisely by making all three years *inseparable* in the Tax Court ***Rule 155 documents***, which were drafted by the Plaintiff and agreed upon by the Defendant, essentially part of both Tax Court decisions (Def. App. pp.16-21; *see also* experts report pp.6-10, and expert certified calculation p.52). In 1988, the IRS peeled 1974

---

12 "If that which the sovereign retains was unjustly taken in violation of its own statute, the withholding is wrongful. Restitution is owed the taxpayer." *Bull v. U. S.*, 295 U.S. 247, 261, 262 (1935). "The United States, we have held, cannot, as against the claim of an innocent party, hold his money which has gone into its treasury by means of the fraud of their agent. *United States v. State Bank. . .*" *Id.*

away from the other decision, away from its Tax Court Rule 155 computations, and secreted the district counsel's decision and original returns, hiding the inseparability and effectively annulling, modifying, and disregarding a final closing agreement against I.R.C. §7121. Any further decree, consent or otherwise, was forbidden by Congress. (Def. App. pp.6-10).

***No Timely Assessment***. The IRS has three years to assess taxes and then ten years to collect them after assessment pursuant to IRC 6501, 6502, *U. S. v. Botufer,* 2002 U.S. App. LEXIS 22703, * 36; 309 F.3d 1263. Using Form 872 consent for the date certain extension, the Defendants calculate the three year expiration to be around 6-24-83.[[13]] The Circuit Courts have unanimously given contractual adherence to the Form 872. *See, generally, Ripley v. Comm'r Ripley v. Commissioner*, 103 F.3d 332 (4th Cir.). Alternatively, using the recently disclosed quick assessment form, the IRS manager set the 3 year expiration date at 7-19-83 and ordered the assessment to be done 7-25-83. In 2001, the Plaintiff attests that the only solitary timely assessment [singular] on its IMF as highlighted by the IRS, as being in 1975, and fully paid (Def. App. pp.100, 109 and 110). The DOJ and IRS had this valuable information always. *Kurio,supra* Collections cease without a I.R.C. 6215 assessment. *Michaels v. CIR,* 7th cir. dkt.no. No. 45700-86, May 15, 1998, fn. 1.

---

[13] In *Simons v. CIR* , the 10th cir. noted the petition had been filed within about 3 days or so of the 90 day suspension of the statutes of limitation after the date of the Notice of Deficiency. The notice of deficiency was sent on the last day of the form 872 consent for an extension. Def. App. pg. 58, and 60—62. This left 63 days after the Tax Court decision to make an assessment. The Tax Court decision was filed April 22, 1983. Def. App. p. 12, 14. Using a Julian calendar and adding 63 days to the April 22, 1983 decision date, the Defendants arrive at a June 24, 1983 as the deadline for the expiration of the statutes of limitation for assessment.

***No Timely Written Notice and Demand***. Congress sets limits on this Court by declaring collections are to stop if there is no timely written notice and demand, within 60 days of a timely assessment (26 U.S.C. §6303). *Jersey Shore v. U.S.*,1987 U.S. LEXIS 289,*; 479 U.S. 442, fn. 3. The Plaintiff performed a verbal collection (Def. App. p.141) for all three tax years. Plaintiff did not issue any written notice or demand (Def. App. p.182-183). Logically, a written notice and demand would not issue on an assessment performed later than allowed by statute. If the complaint would have truthfully stated that no timely written notice and demand was given in 1983, the Court would have dismissed the action. (Def. App. p.182-183). The fact was hidden.

***No Timely Prior Notice of Intent to Levy***. *Guthrie v. Sawyer*, 1992.C10.40894 <http://www.versuslaw.com>; 970 F.2d 733, par. [16] (Levies and liens may issue after written demand IRC 6331). The IRS issued a I.R.C. 6330, 6331 notice of intent to levy in January 1989, months *after* the levies. (Def. App. p.80, compare with 81-83). No predeprivation hearing here.

***No Notices of Deficiency for Supplemental Assessments***. I.R.C. 6204 allows for supplemental assessments. There are several here (Def. App. p.67). Yet none of the supplemental assessments performed after the already late 7-25-83 assessment, had the notice of deficiency required by I.R.C. 6213, invalidating every other assessment. *Singleton v. U.S.,* 1997.C04.0002424<http://www.versuslaw.com>par.[27],[44].

**EXCLUSIVE JURISDICTION OF THE COURT OF FEDERAL CLAIMS**

The Tucker Act (28 U.S.C. §§1346 and 1491) controls, exclusive for contract claims over $10,000; and 28 U.S.C. §§2201 and 2202 limits this Court from using its declaratory judgment

powers for tax claims, and 26 U.S.C. §§6501, 6502, 6213, 6215, 6303, 6330, 6331 (all of which were violated) serve to protect citizens from "fraud, injury, and wrong". Torts are outside the Court of Federal Claims, but not when they directly result from breaches of contract.**[14]** See, *Christopher Village, ltd. v. U.S.*, 2004 U.S. App. LEXIS 4379, *; 360 F.3d 1319. Equitable tolling OF 28 U.S.C. §2501 is justified if documents are concealed or claims were brought in the wrong court.**[15]** "The United States, we have held, cannot, as against the claim of an innocent party, hold his money which has gone into its treasury by means of the fraud of its agent. United States v. State Bank, 96 U.S. 30.**"** *Bull*, LEXIS *26. The Plaintiff wishes the Claims Court to reward the Plaintiffs' successful usurpation of this Court's powers. ATTACH D.

---

14 See also *Summit Contractors, Inc. v. United States*, 22 Cl. Ct. 54, 56 (1990) ("[T]he court has repeatedly asserted jurisdiction over claims based on tortuous breach of a government contract.") This Court's authority over tort claims is limited to where the Plaintiff' tort claim is "'entirely dependent on, and in fact evolves from the contract.'" *CTA Incorporated, v. United States*, 44 Fed. Cl. 684, 698 (1999) (quoting *Dureiko v. United States*, 42 Fed. Cl. 568, 582 (1998)). See also *Edwards v. United States*, 19 Cl. Ct. 663, 669 (1990). Where the plaintiff has stated breach of contract claims, lack of contract, and unjust enrichment, "'the fact that the alleged breach is also tortuous does not foreclose Tucker Act jurisdiction."

15 Equitable estoppel applies where, despite the plaintiff's knowledge of the facts, the defendant engages in intentional misconduct to cause the plaintiff to miss the filing deadline. *Felty v. Graves-Humphreys*, 818 F.2d 1126 (4th Cir. 1987); *Price v. Litton Business Systems*, 694 F.2d 963, 965 (4th Cir. 1982). *Bowden v. United States*, 106 F.3d 433, 438 (D.C. Cir. 1997) ("courts have excused parties, particularly those acting pro se, who make diligent but technically defective efforts to act within a limitations period. . . . Like other courts, we have excused parties who were misled about the running of a limitations period, whether by an adversary's actions . . . by a government official's advice upon which they reasonably relied . . . or by inaccurate or ineffective notice from a government agency required to provide notice of the limitations period.") (citations omitted); *Wolin v. Smith Barney, Inc.,* 83 F.3d 847, 852 (7th Cir. 1996) ("Equitable tolling is invoked when the prospective plaintiff simply does not have and cannot with due diligence obtain information essential to bringing a suit.").

**PRAYER FOR RELIEF**

The Defendants pray for the following relief: 1) that the Court vacate its decision because it is outside the Court's Article III authority to grant relief since (a) res judicata and IRC 7121 prevent altering the fully paid final closing agreements of the Tax Court, *Laing, supra*.; (b) the Court cannot uphold statutory violations that invalidate the assessment, and levies and liens; 2) that the Court will make a finding that the Defendants records material to the case's outcome were concealed until February, 2000, were used in this Court in their defense, and that all the damages to the Defendants arose from a series of breaches of the fully paid 1983 contract, and refer the Defendants counterclaims to the United States Court of Federal Claims, with a declaration that the defendants' claims could not 'accrue' until this Court's determination of its own authority was finalized. Defendants also pray for all other relief that is within this Court's authority as is fair in equity and just under the law.

Signed this 30th day of August 2006.

Susan Rose Utah Bar no. 7985
ATTORNEY FOR THE DEFENDANTS
9553 South Indian Ridge Dr.
Sandy, Utah 84092
phone: (801) 545-0441

I hereby certify that service of the foregoing document was made this 1st day of September, 2006, by depositing a copy in the U.S. mail, postage prepaid, or by courier, to the following:

Mr. Paul Warner
Suite 400
185 South State Street
Salt Lake City, Utah 84111

and

Mr. Jeffrey Snow
Trial Attorney
U. S. Department of Justice - Tax Division
P. O. Box 683

Ben Franklin Station, D.C. 20044-0683

Attorney Michael O'Connell is being likewise served.

A copy is also being served upon the Court of Federal Claims in a Motion to Stay Proceedings electronically, without the more lengthy attachments already filed in that Court.

ATTACHMENT A

THE TENTH CIRCUIT RULING IN *U.S. V. SIMONS* IN 2004

**UNITED STATES COURT OF APPEALS**
**FOR THE TENTH CIRCUIT**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff-Counter-<br>Defendant-Appellee,<br>v.<br>DAN C. SIMONS and SALLY J. SIMONS, individually and as trustees of the Dan C. Simons Equity Trust,<br>Defendants-Counter-<br>Claimants-Appellants,<br>and<br>JOLENE J. SMITH, as trustee of the Charlemagne Trust; FIRST CITY CORP.; HAROLD MARK SIMONS,<br>Defendants-Counter-<br>Claimants. | No. 02-4201 |

**ORDER**

Filed January 22, 2004

Before **SEYMOUR**, **BRISCOE**, and **LUCERO**, Circuit Judges.

This matter is before the court on appellant's petition for a panel rehearing of the order and judgment issued December 2, 2003. The petition presents four requests for relief. The panel denies all but the last, which asks the court to delete part of a passage quoting from the district court transcript.

The original order and judgment is, accordingly, vacated and replaced with the amended order and judgment attached to this order.

F I L E D
United States Court of Appeals
Tenth Circuit

JAN 22 2004

PATRICK FISHER
Clerk

Entered for the Court

PATRICK FISHER, Clerk

By:

Deputy Clerk

**UNITED STATES COURT OF APPEALS
FOR THE TENTH CIRCUIT**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff-Counter-<br>Defendant-Appellee,<br>v.<br>DAN C. SIMONS and SALLY J. SIMONS, individually and as trustees of the Dan C. Simons Equity Trust,<br>Defendants-Counter-<br>Claimants-Appellants,<br>and<br>JOLENE J. SMITH, as trustee of the Charlemagne Trust; FIRST CITY CORP.; HAROLD MARK SIMONS,<br>Defendants-Counter-<br>Claimants. | No. 02-4201<br>(D.C. No. 92-CV-1071-B)<br>(D. Utah) |

**ORDER AND JUDGMENT**[*]

Before **SEYMOUR**, **BRISCOE**, and **LUCERO**, Circuit Judges.

After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

Defendants appeal from a consent judgment dismissing the government's case against them pursuant to an executed and satisfied settlement. We hold that defendants waived their right to appeal the matters they now attempt to raise and affirm.

The government filed this action to reduce a tax assessment to judgment. The parties eventually agreed to settle all claims in exchange for $55,000. When defendants reneged on the payment and instead moved to dismiss the action, the district court held a hearing on the motion to dismiss as well as a pending motion for summary judgment from the government. At the hearing, the court informed defendants that it was ready to grant the government's summary judgment motion but, in the interest of closure, it afforded defendants one last opportunity to end the litigation by allowing them ten days to honor their obligation under the settlement agreement. Defendants paid the $55,000 and submitted an order dismissing the action. The court entered the order and closed the case. Fifty-nine days later, however, defendants filed this appeal challenging the order they had drafted and the resultant judgment it entailed.

It is a well-accepted rule that a party to a consent judgment waives any objection to matters within the scope of the judgment. *Mock v. T.G. & Y. Stores Co.*, 971 F.2d 522, 526 (10th Cir. 1992) (collecting cases). If the party's appeal "represents no more than a retroactive attempt to undo consent properly given," summary affirmance is appropriate. *Id.* at 526 n.5 (quotation omitted). **The rule does not apply, however, if "lack of actual consent, fraud in obtaining consent, lack of federal jurisdiction, or mistake are shown,"** ***id.*****, or if the party expressly reserved the right to appeal,** ***id.*** **at 527.** The government argues persuasively for applying waiver here, noting the overlap between the substance of the appeal and the matters necessarily encompassed within the consent judgment, and also anticipating and refuting defendants' attempts to invoke exceptions to enforcement of the consent judgment.

The government contends, correctly, that defendants did not reserve a right to appeal in either the consent decree or the underlying settlement agreement. At certain points in their briefing defendants suggest the district court "promised" them that they would be able to appeal after they complied with the settlement agreement. Our reading of the court's comments leads us to the opposite conclusion. The obvious thrust of the court's comments is that defendants had come to a crossroad where they could put an end to the protracted litigation by complying with the settlement they had agreed to *or* suffer the entry of a far more costly summary judgment, *appeal that ruling*, and continue the legal process into the incalculable future:

Mr. Simons, I am disappointed in you. You can honor this agreement and pay maybe half of what they are going to assess *if I enter this order* [granting the government's motion for summary

judgment] ten days from now, *and then you can go ahead and appeal* that to the Tenth Circuit . . .

So I want to make it clear, I am enforcing the settlement agreement at the present time requiring the parties to comply with the $55,000 amount that was agreed to after a settlement was entered into following our last meeting. *If the defendant*, Mr. Simons, *continues to refuse to honor his binding agreement then* the alternative for this Court will be to *grant summary judgment* for the United States *and then the matter can continue in its legal process*.

Aplt. App. III at 411c (emphasis added). Defendants' reading misses the court's point, which is to contrast the closure to be achieved through compliance with the agreement and the interminable litigation to be expected from repudiation.

The government also convincingly explains why defendants would have no basis to claim lack of consent or mistake with respect to the parties' settlement agreement and the court's resulting judgment. The handwritten original draft of the agreement is fairly reflected in the consent judgment, which defendants themselves prepared for the court to sign.

Finally, the government notes that this action to reduce a tax assessment to judgment clearly falls within the broad grant of jurisdiction to the district courts over matters arising under the internal revenue laws. 28 U.S.C. §§ 1340 & 1345; 26 U.S.C. § 7402(a); *see United States v. Anderson*, 584 F.2d 369, 370 (10th Cir. 1978); *United States v. Scherping*, 187 F.3d 796, 798 (8th Cir. 1999). Defendants resist this point by asserting various objections to the government's case and characterizing these as jurisdictional deficiencies. Defendants do not, however, substantiate their jurisdictional arguments with relevant legal authority. Their most transparent argument in this respect is that, accepting their view on the merits, they owe no taxes, there is thus no lost revenue involved, and, hence, the government lacks the legal injury necessary to have standing. This reasoning, which rests on the tacit premise that standing is not established unless and until the case is won on the merits, would effectively transform every action by the government to collect taxes into a jurisdictional dispute over standing. Defendants do not cite any authority supporting this facially implausible notion. Moreover, their invocation of res judicata and collateral estoppel to support their position on the merits does not introduce any jurisdictional element into the case; these are mere affirmative defenses. *See Kenmen Eng'g v. City of Union*, 314 F.3d 468, 479 (10th Cir. 2002); *Rekhi v. Wildwood Indus., Inc.*, 61 F.3d 1313, 1317 (7th Cir. 1995).

Defendants also try to attribute jurisdictional status to their objection that the government's collection effort here fell outside the statute of limitations. The case law, however, treats the relevant limitations provision like most statutes of limitation, as just another affirmative defense subject to waiver. *See, e.g.*, *United States v. McGee*, 993 F.2d 184, 187 (9th Cir. 1993); *United States v. Gurley*, 415 F.2d 144, 147 (5th Cir. 1969). Indeed, we recognized that a statute of limitations defense may be defeated through private agreement by the parties something that

cannot be done with respect to jurisdictional deficiencies in this very case on a prior appeal. *See United States v. Simons*, 129 F.3d 1386 (10th Cir. 1997). Defendants ignore this authority and, instead, cite a case holding that a statute of limitations relating to a suit *against* the *federal government* is jurisdictional. *See Sisseton-Wahpeton Sioux Tribe v. United States*, 895 F.2d 588, 592 (9th Cir. 1990). But that case simply reflects the unique status of limitation provisions that qualify a waiver of sovereign immunity when the government is sued, which are imbued with the jurisdictional character of the underlying immunity itself. *See, e.g.*, *Hoery v. United States*, 324 F.3d 1220, 1221 (10th Cir. 2003); *Dahn v. United States*, 127 F.3d 1249, 1252 (10th Cir. 1997). Obviously this principle has no application here.

It is readily apparent that the objections defendants now raise in an effort to escape the binding effect of the settlement agreement and resultant consent decree constitute the very substance of the case that they agreed to settle. These are precisely the "matters within the scope of the judgment" to which the settling party is deemed to have waived objection, rendering affirmance the appropriate disposition of the appeal. *Mock*, 971 F.2d at 526 & n.5 (quotation omitted).

The judgment of the district court is AFFIRMED.

Entered for the Court

Mary Beck Briscoe

Circuit Judge

---

**FOOTNOTES**

Click footnote number to return to corresponding location in the text.

*. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

ATTACHMENT B

THE DEFENDANTS' VERIFIED COMPLAINT IN THE COURT OF FEDERAL CLAIMS
Filed Feb. 15, 2000, Amended with references and incorporation of the Exihibits, see
ATTACHMENT E

ATTACHMENT C

RECENT NEWSPAPER REPORT SHOWING TRAVERSE RIDGE VALUED AT $500 MILLION TO THE DEVELOPER, WHICH THE DEFENDANTS HAD PLANNED TO DEVELOP [see Traverse Ridge Alpine and Geodyne partnership interest Def. App. pg. 71a]

deseretnews.com

Wednesday, August 16, 2006

Advertisements

# Still slide risk, Draper folk told

## SunCrest residents get information on stability of the land

**By Amelia Nielson-Stowell**
Deseret Morning News

DRAPER — Although the Utah Geological Survey did not detail landslide areas in Draper's SunCrest development, the lead geological manager told concerned residents and city officials Tuesday night that ancient landslide areas still have a risk of moving.

On top of that, it should not be assumed that man-made alterations — like grading and lawn watering — have no effect on stability.

Earlier this month, developers for the 3,900-acre SunCrest disputed a city-commissioned study on the future landslide risk of

the south mountain community. SunCrest had submitted its own geological findings to Draper and, following protocol, the city then hired outside consultants to review the SunCrest study.

According to that report, obtained by the Deseret Morning News, the planned community with million-dollar views of the Salt Lake Valley is built on ancient landslide areas on Traverse Ridge.

Advertisement

Oregon-based Landslide Technology created the report and listed several options Draper should follow to avoid landslide risks, like implementing an emergency response fund, posting landslide warning disclosures and obtaining insurance for all residences.

SunCrest developers took issue with the report and threatened to sue the city for $500 million if officials made it public. They have since dropped the threat.

"We were concerned that the city might be giving too much reliance to a study that was very, very preliminary," SunCrest attorney Bruce Baird said, adding **SunCrest has spent seven years and $2.5 million doing geological** surveys of the south-valley mountain top. "We have

tested it thoroughly. There's probably no more tested mountain in Utah or in the western United States than this mountain."

Added SunCrest general manager Ed Grampp: "Our primary concern is safety."

**SunCrest has made $130 million in sales on the site, which currently has 720 homes and a potential for up to 3,800 units. Home prices range from $220,000 to $2 million.**

The Utah Geological Survey was brought in for Tuesday's council meeting as an unbiased party to present its "lessons learned" from recent landslides in other Utah developments.

"It's not that often that you get new landslides. Most landslides are reactivation of existing landslides," UGS geological manager Gary Christensen said. "It's rare to find stable 'old' landslides."

The mayor and council members expressed concern over the potential risk, especially since "warning signs" have been evident in the 7-year-old development. In June 2005, part of a hill eroded after a road was put in next to the slope, putting the edge of the hill a few feet from a resident's back yard.

"There was some treatment made by the developer to try and stabilize that hillside," said Councilman Bill Colbert, who lives

in SunCrest. "I want to do anything we can to make sure we don't have a loss of investment in this community."

Christensen urged the elected officials to hire an outside technical person to review geological issues, especially since they expressed concerns over the conflicted Landslide Technology and SunCrest studies.

"It's a very complicated geology and there's a lot of uncertainties involved," Christensen said. "There's a lot of complexities that need to be looked at." But, "it needs to be done."

Added Councilman Paul Edwards: "To sum it up, to develop on any landslide, irrespective of age, there is a risk involved and what the city needs to do is quantify the risks they're going to take."

Many SunCrest residents attended the meeting to educate themselves on potential threats to their homes. Resident Deron Brunson, said he is no longer nervous about a landslide.

"I feel so much better," he said of the presentation. "It made me feel safer."

---

*E-mail: astowell@desnews.com*

ATTACHMENT D

THE GOVERNMENT'S COURT OF FEDERAL CLAIMS FILING RELYING ON THIS COURT'S STATEMENTS AND JUDGMENTS

[formatting may be slightly off as it was copied from a .pdf file]

A Reply

DANNY C. SIMONS AND SALLY J. SIMONS,

| | |
|---|---|
| Plaintiffs, | ) |
| | ) No. 06-115C |
| v. | ) (Judge Braden) |
| | ) |
| THE UNITED STATES, | ) |
| | ) |
| Defendant. | ) |

DEFENDANT'S REPLY TO THE SIMONS' RESPONSE TO
DEFENDANT'S MOTION TO STAY RESPONSES TO PLAINTIFFS' MOTIONS

Pursuant to Rules 1, 6.1, and 7.2 of the Rules of the Court of Federal Claims, defendant respectfully submits this reply to the Simons' response to defendant's motion to stay defendant's response to the Simons' motion for partial summary judgment and their motion to strike the defendant's response to the plaintiffs' motion to strike the defendant's motion to dismiss. Since we have already filed an opposition to the Simons' second motion to strike, we withdraw that portion of our motion which sought to stay our response to that motion to strike.

INTRODUCTION

The Simons have to this point filed a complaint, an amended complaint, a motion to amend the complaint a second time, a motion to strike defendant's motion to dismiss, a motion for summary judgment, a motion for a hearing on their motion to strike, a second motion to strike, and now a 15-page response ("Response") to the Government's two page motion to stay responses. Their Response follows the format of the Simons' two motions to strike in that it once again contains a lengthy discussion of the underlying facts which, in their view, should have led to their victory in the district court, and their meritless argument that Federal district courts do not possess subject matter jurisdiction to consider tax cases where the Government seeks

more than $10,000. We have already responded multiple times to the Simons' arguments and will not repeat needlessly our arguments. Our reply here is limited to clarifying the arguments that the Simons already made to the district court.

ARGUMENT

I. The Transcript Of The District Court Hearing Demonstrates That The District Court Has Already Considered All Of The Issues In This Case

In our motion to stay, we demonstrated that the Government should not be forced to respond to the Simons' summary judgment motion before the Government has even filed an answer and while its motion to dismiss is still pending. Our motion to dismiss established, in part, that all of the issues that the Simons are attempting to raise in this matter are res judicata because they were or could have been raised in a prior action in the United States District Court for the District of Utah. Our motion to stay established that it is wasteful of both the Government's and the Court's resources to require the Government to respond to the Simons' summary judgment motion while the motion to dismiss is still pending.

In support of their complaint, the Simons attached selected pages from a hearing in the district court on June 18, 2002. Appendix to amended complaint ("Pl. App.") at 225-30. We have just obtained a copy of the full transcript of that hearing from the district court. A review of the full transcript demonstrates beyond any doubt that the arguments that the Simons are making here have already been considered and rejected by that court. Defendant, therefore, should not be required to respond to the Simons' motion for summary judgment because the action is barred by

res judicata. A full copy of the transcript ("Tr.") is attached to this reply.



Actually, both of the Tax Court decisions, signed by the Simons' attorney, state "plus 1 statutory interest." Pl. App. 13, 15.

-3-

The hearing occurred at the district court while the Government's motion for summary judgment and the Simons' motion to dismiss for lack of subject matter jurisdiction were pending, but also after the parties had reported a voluntary settlement to the court. Tr. page 3, lines 20-21 ("Tr. 3/20-21"). The district court allowed the Simons, through their current counsel, Susan Rose, to explain why they had not paid the Government pursuant to the settlement agreement. Tr. 5/11. Ms. Rose then made a series of arguments which demonstrate that the substance of their arguments in both Courts is the same. First, Ms. Rose argued that the Government's acceptance of the settlement was not valid because it did not mirror the Simons' offer. Tr. 5/16-21. This argument is made in this action, for example, in the amended complaint at page 62, paragraph 127 (Am. Compl. 62, ¶ 127), where the Simons allege that "The Department of Justice did not have mutual intent with the Plaintiffs, and vice versa, essentially redrafted what the handwritten settlement offer stated omitting the fact that the offer was for a 'global' settlement ...".

Ms. Rose then made the argument, repeated numerous times in this action, that the Simons paid in full in 1983 after the Tax Court settlement. Tr. 7/9-18. This argument appears, among other places, at Am. Compl. 30, ¶ 57, where the Simons state that they "fully paid" in November, 1983. She then argued that the 1983 Tax Court settlement was "silent" as to interest

and, thus, interest was not owed. Tr. 8/4; compare Am. Compl. 35/61 ("any ambiguities as to 1 'statutory interest' should be read for Plaintiffs").



Ms. Rose argued that there was no timely assessment by the Internal Revenue Service ("IRS"). Tr. 8/8 to 10/20. Among other places this argument appears in paragraph 57(i-u (sic)), pages 31-33 of the amended complaint. She argued that a faulty certificate of assessment deprived the court of jurisdiction. Tr. 10/21 to 13/15; compare Am. Compl. pp 35-63. In a related argument, Ms. Rose argued that the case was moot because the IRS computer had closed out all of the Simons' accounts with nothing owing, but the Department of Justice attorney had created evidence by instructing the IRS to add money owed back to the account. Tr. 13/16 to 14/3; compare Am. Compl. 33, ¶ 57(i-ii). Ms. Rose further advised the court that "There is not one piece of evidence that is credible or one case law that they can rely upon to say these people owe. So if there is no liability then what they are attempting to collect is an illegal exaction not a tax and it falls outside the Court's purview." Tr. 16/11-15; Compare, e.g., Simons second motion to strike at 3 ("not one piece of evidence on the planet exists showing the Simons did not fully pay for all three years in 1983, or the government would have produced in the last 25 years of collection activity. It is no longer a question of fact.")

After giving the Simons considerable time to be heard, the district court then stated:

I am going to try to be as clear as I can be on this. This case as I indicated last time has quite a history. Litigation is supposed to be designed to be the way people resolve disputes in a civilized society, one in which we have a system of justice

that allows a place with rules and procedures that are followed in reaching resolutions of disputes. An effort is to reach just ends and to the extent possible speedy resolutions so people can get on with their lives. That includes disputes against the government or disputes by the government against some of the citizens.

It is not designed to foster an ongoing feud. It is not a place for decades long feuds. Usually when sensible civilized litigation turns into a feud it is because at least one of the parties or both of them is unwilling to be responsible and to act in ways that genuinely attempt to end the matter with some resolution ...

Case 1:06-cv-00115-SGB Document 30 Filed 08/02/2006 Page 4 of 9

-5-

In the Court's view Mr. Simons is turning this into a decades long feud and he is sitting here and he should hear this. He hides behind counsel who spouts legal theories to the Court that I have rarely heard. Tr. 29/13 to 30/ 14. The court further stated that "This settlement is not unclear. It is not. It obligates Mr. Simons to pay a cash payment of $55,000 made payable to the Department of the Treasury. The only condition that needed to occur after that is for the Department of the Treasury to accept his offer which they undisputedly did." Tr. 31/6-11.

The district court then explained its intended disposition of the Government's motion for summary judgment if the Simons continued to refuse to follow the settlement agreement:

> The ruling will be, so there is no misunderstanding, the Court will rule for the United States. I find no disputed issue of fact here. I find the facts completely clear in favor of the government. The decision, the original United States Tax Court decision indicates very clearly that statutory interest was contemplated. The defendants' arguments are legally completely lacking in merit. They are inventive,

> they are attempts at being creative, and they want to work backwards all the way back to 1973 and '74 and 1983, and the Court is not having any of it ...
> Mr. Simons, I am disappointed in you. You can honor this agreement and pay maybe half of what they are going to assess if I enter this order ten days from now, and then you can go ahead and appeal that to the Tenth Circuit and you'll still have all of the legal processes to fool around with and maybe you can do it until the day you die, but it is no way to use the Court system. It is not. It is no way to try to manufacture after the fact a story that is not supported in law, and apparently to this Court's present point of view supported in fact.

Tr. 32/14 to 33/12 (emphasis added).

Finally, the district court then stated its view of the attempt by the Simons and their attorney to renege on the settlement agreement:

> THE COURT: Ms. Rose, if you're going to represent a client while he is engaged in a settlement negotiation that is reduced to writing, there is some obligation of good faith that attaches to that.
> Wouldn't you agree?
> Case 1:06-cv-00115-SGB Document 30 Filed 08/02/2006 Page 5 of 9
> -6-
> MS. ROSE: I agree that --
> * * * * *
> THE COURT: Well, Ms. Rose, he shouldn't have signed this if he still wants to fight that fight. This was a resolution of those difficulties and you were his lawyer. He signed it. There is no question that the matter was resolved by agreeing to pay a sum certain by a date certain. There is a good faith obligation that attaches to an agreement to resolve the very issues that you just raised.
> Now, I don't know how I can get that through to you, but I can make the rulings that I am empowered to make and that is what I have done. And in case it hasn't sunk in, my delaying this for ten days is yet another effort by the Court to encourage a settlement that will end this matter.
> I could grant summary judgment for the government right now from this bench and apparently the tax liability is somewhere above $100,000. I could do it if I wanted to be as harsh as I could be to your client and to your position, but your position has no legal merit in my view whatsoever. None. The motion to dismiss for lack of subject matter jurisdiction is so off that I don't even know where to begin to address it as a legal proposition.
> So I am encouraging you, and I know I have expressed plainly my disappointment and my bewilderment that this settlement was not adhered to, and talk about an example of bad faith, entering into this agreement and then at the same time digging back into it through a federal Freedom of Information requests? Talk about exhibits, that is Exhibit A of bad faith.

Tr. 34/15 to 33/25 (emphasis added).

The Simons' subsequent appeal to the Tenth Circuit, and their filing of this action demonstrate that the district court judge was correct when he stated that Mr. Simons is carrying on a "decades long feud" supported only by arguments that "are legally completely lacking in merit." As our earlier filings and our summary of the hearing in the district court demonstrate, the Simons have had their day in court. They are not entitled to relitigate a case that they settled and this action is barred by res judicata. The Government respectfully requests that the Court stay the Government's response to the Simons' motion for summary judgment, and act upon the





Government's motion to dismiss.

CONCLUSION

For the foregoing reasons, defendant respectfully requests that the Court stay defendant's response to the Simons' motion for summary judgment, or dismiss the complaint.

Respectfully submitted,

PETER D. KEISLER

Assistant Attorney General

DAVID M. COHEN

Director

s/Mark A. Melnick

MARK A. MELNICK

Assistant Director

s/Michael N. O'Connell

MICHAEL N. O'CONNELL
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit, 8th Floor
1100 L St., NW
Washington, D.C. 20530
Tel: (202) 307-0282
Dated: August 2, 2006 Attorneys for Defendant
Case 1:06-cv-00115-SGB Document 30 Filed 08/02/2006 Page 7 of 9
INDEX TO APPENDIX
Document Pages
Transcript of Hearing 1-39
Case 1:06-cv-00115-SGB Document 30 Filed 08/02/2006 Page 8 of 9

ATTACHMENT E

APPENDIX LIST OF EXHIBITS


| | | |
|---|---|---|
| 1. | Power of Attorney | 1-2 |
| 2. | Form 843 | 3-4b |
| 3. | Form 2859 showing manager supervised late assessment | 5 |
| 4. | Analysis of Danny C. and Sally J. Simons 1974 Tax Court Stipulated Agreement by expert CPA | 6-11 |
| 5. | Stipulated Tax Court decision of April 22, 1983 for years 1972, 1973 | 12 |
| 6. | Stipulated Tax Court decision of April 22, 1983 for year 1974 | 14 |
| 7. | IRS-drafted underlying work documents for both stipulated Decisions | 16 |
| 8. | Letter of January 11, 1982 | 22 |
| 9. | Letter of January 15, 1982 | 25 |
| 10. | District Counsel's Decision | 28 |
| 11. | 1974 Original Return | 31 |
| 12. | 1983 Cashier's Check for $49,546.55 | 51 |
| 13. | CPA certified calculation as to how the $49,546.55 fully satisfied all three tax years, 1972, 1973 and 1974 | 52 |
| 14. | FORM 872 to extend time for 1974 assessment to a a time certain | 57-59 |
| 15. | Notice of Deficiency for year 1974 | 60-62 |
| 16. | Computer readout showing year 1974 "closed" 27 July 1989 | 62a |
| 17. | Computer readout showing 1974 "one open case" 8 August 1991 | 62b |
| 18. | Fax of Kirk Lusty to Special Procedures function dated 14 November 1996 showing he knew where were the Defendants' records | 63 |
| 19. | Attorney Trish White's Settlement document faxed to Special Procedures function by Kirk Lusty | 64-66a |
| 20. | Calculation of IRS Personnel for 6/15/96 for year 1974 when all debt had been abated on the IRS computer account for 1974 in 1995, faxed by Kirk Lusty to SPf | 67 |
| 21. | Revenue Officer notes showing:<br>a. 7/11/88: obtained original records and copies showing settlement of all three years "Appears no open issues on 1974" | |

| | | |
|---|---|---|
| | b. states 'to appears wealthy & paying little or no tax" | 68 |
| | c. consistent threats of liens, seizure, levies and seeking records to give Thurman | 69-74 |
| 22. | Thurman's Red Lion notes memorializing conversation with 'Dal' as to how collection is easier on the IMF | 75-76 |
| 23. | Revenue Officer Taylor's notes that the Problems Resolution Person said she would do nothing | 77 |
| 24. | 12/20/88: letter to Don Thurman regarding looking for records from Dan Simons | 79 |
| 25. | 1/10/89: Notice of intent to levy issued after they were imposed | 80 |
| 26. | 10/18/88: Levies predating the Notice | 81-83 |
| 27. | Liens on the Simons' properties | 85-95 |
| 28. | Letter to Parker Nielson from Dan Simons documenting the immediate harm of the 1979 criminal indictment | 96 |
| 29. | 1973 IMF computer readout posting entire 1983 payment with full interest 11/8/83 | 97-99 |
| 30. | March 1, 2002: letter from Department of Treasury including a highlighted IMF for 1974 verifying the only timely assessment with written notice was 10/6/1975, as highlighted by the Treasury Department | 100-109 |
| 31. | Service Center records showing that a debt for 1974 abated was replaced on 7/20/2001 per Department of Justice Attorney Snow | 110-111 |
| 32. | POLICIES OF IRS | |
| | a. 8.7/1.1.2 defining interest | 112 |
| | b. 35.10.7 interest on stipulated decisions | 113-114 |
| | c. GAO dln numbers and dln files | 115-116 |
| 33. | Affidavits | |
| | a. CPA Dennis Larsen's request for records was not met | 117-118 |
| | b. Ex Appeals Officer Gail Anger | 119-122 |
| | c. Attorney Patricia White | 123-124 |
| 34. | Attorney White's written request for documents in litigation in District Court | 125 |
| 35. | Affidavit of Attorney Susan Rose | 126-129 |
| 36. | March 21, 2001: handwritten offer to settle | 130 |
| 37. | Letter from the Department of Justice rewording the Defendants' offer (does not mirror the offer) | 131-132 |
| 38. | Service Center Replacement System Policy | 133-135 |
| 39. | Lien for year 1975 that IRS refused to remove unless the Defendants cooperated in settlement, removed in August 1982 after offer of settlement | 136 |

| | | |
|---|---|---|
| 40. | Letter stating no extensions had been signed by the Defendants | 137-138 |
| 41. | March 2004 billing of the Defendants | 139-a-b |
| 42. | Bank check for $55,000 | 140 |
| 43. | Business card with amount to pay | 141 |
| 44. | Excerpts of Performa designed for Traverse Ridge development | 142-162 |

Some IRS, TREASURY DEPT. FOIA/Privacy Act Responses

| | | |
|---|---|---|
| 45. | July 11, 1991: "If you do not agree [to extension of time to find documents] you have the right to consider this a denial." | 163 |
| 46. | September 16, 1991: FOIA Appeal: "The office of Chief Counsel, Disclosure Litigation Division received your letter … the statutory period for response expires Oct. 4, 1991." | 164 |
| 47. | September 26, 1991: "I have reviewed your account and verified that the letters were sent to you as required by law." | 165 |
| 48. | Simons are given some forms relating to tax liens and a delegation order "forms relating to levies…. " but not to the individual employees. | 166 |
| 49. | February 24, 1992: Dept. of Treasury Appeal response. Both the Ogden Service Center and Salt Lake District Office responded that there were no records responsive to the Defendants' request and therefore 'there was no denial of records" | 167 |
| 50. | April 2, 1992: the statutory period for appeal has passed | 168 |
| 51. | June 23, 1992: Privacy Act appeal response: person must "specify the name and location of the particular system of records" | 169 |
| 52. | July 30, 1992: Appeal response for FOIA request: "We should point out that I.R.C. §6404(b) specifically excludes any taxpayer initiated request for abatement of income taxes. …We have checked our IDRS terminal, and there are no abatements pending for you account for the years you were questioning." | 171 |
| 53. | August 11, 1992: "…a search was conducted, but no records responsive to your request were located." | 172 |
| 54. | August 14, 1992: FOIA appeal response telling Defendants to contact the Ogden Service Center and that no agency records had been withheld | 173 |
| 55. | October 28, 1992: Mrs. Simons' FOIA appeal: "The statutory period for a response has expired…. there are ample administrative and judicial procedures and safeguards to review the Service's activities and afford you with due process." [not if material | |

documents are withheld!] 174-75

56. May 11, 1996: the Department of Treasury appeal responds to Mrs. Simons' letter of October 23, 1991 providing her with redacted document 176

57. October 22, 1996: Appeal response, "Records concerning the processing, assessment, examination, collection and investigation of tax accounts are maintained in the Service Center or District Office in which such actions took place. " [the fact that the records are in Special Procedure function is not mentioned] 177-178

58. November 7, 1996: IRS service center unsigned FOIA response stating that they found no records and they should inquire at the Rocky Mountain District Office 179

DISTRICT COURT DOCUMENTS

57. Excerpts from the U.S. complaint on July 25, 1983; March 18, 1985; November 11, 1985; August 20, 1990; September 3, 1990; November 5, 1990; April 15, 1991 and September 9, 1991 a delegate of the Secretary of Treasury made assessments against Dan C. Simons and Sally J. Simons for unpaid income taxes, plus interest, penalties and fees for ... 1974" "10. Despite timely notice and demand for payment" [no timely written notice of assessment and demand for payment issued; no required Notice of Deficiency for supplemental assessments issued] [pp.182-183] 180-192

58. March 28, 1995: Judgment and Order: dismissing 1974 as past the statute of limitations, 1982 without prejudice, and finding for the U.S. for '87 for "$1355.00 together with interest and other statutory additions for the Simons' 1987 federal income tax liability." [Eventually overturned in 1999 by 10th Cir.] 193-194

59. October 3, 1995: Upon the stipulation of the parties, the record, and because there were no outstanding tax liabilities to foreclose the tax liens, and for good cause, the Clerk is ordered to enter judgment as follows:

"In favor of Dan C. Simons, Sally J. Simons and Harold Mark Simons as trustees of the Dan C. Simons Equity Trust and Jolene J. Smith as trustee of the Charlemagne Trust and against the United States dismissing the United States Complaint as to those defendants. Dated this 13th of Oct., 1995." Approved by DOJ attorney Kirk Lusty. 196

| | | |
|---|---|---|
| 60. | JUDGMENT entered by the District Court Clerk on Oct. 16, 1995 See, P. App. 110 [IRS abates all debt Aug. 7, 1995] | 197 |
| 61. | May 9, 1996: Notice of Appeal is filed after 60 days of 10th Cir. Rule 4(1)(b), a mandatory Congressional time bar, ignored by the government and the court | 198 |
| 62. | May 5, 1998: Defendants stipulate Trusts will not be an impediment on liens [Tenth Circuit issues judgment on appeal reversing statute of limitations District Court dismissal as the Form 900 waiver was for a time certain.] | 199-202 |
| 63. | June 20, 2002: Order states "there is no dispute that each party to this action agreed to the settlement agreement …[EXHIBIT A]" …. "The Court finds that there is no dispute that all necessary conditions have been satisfied to require the $55,000 payment…." | 203-05 |
| 64. | July 26, 2002: Plaintiff's objection to Defendants' proposed Final Order and Judgment as based on the written alleged settlement-denied [p.app. 205] | 206-06b |
| 65. | The Plaintiff's typewritten alleged 'acceptance' of the handwritten offer to settle [see 205 and compare], that rewrites the handwritten offer, deletes the 'global' or 'universal' settlement, and leaves Defendants vulnerable to suit. | 207-208 |
| 66. | Defendants' response to the Plaintiff's objection to the final order | 209-214 |
| 67. | August 2002: FINAL ORDER AND JUDGMENT: ALL claims, 'hereby completely, now and forever, releases, dismisses, discharges, terminates, and extinguishes, with prejudice, ALL of the Plaintiffs' [government and employees] current and potential, foreseeable or unforeseeable, civil or criminal, known and unknown, claims, issues, allegations of any type whatsoever, in the Plaintiffs' personal or official capacities, as against all the Defendants, associated in any manner with this docketed case. The Plaintiffs will bear their own costs. So signed this 31st day of July, 2002, Judge Dee Benson" Nothing in this Order dismisses the Defendants' claims that Judge Benson stated they could challenge. | 215-216 |
| 68. | Order to Settle was given from the bench without an evidentiary Hearing on Plaintiffs' Summary Judgment motion and handwritten offer was signed by Jeffery Snow, who lacked authority to settle. [222] | 217-224 |
| 69. | June 18, 2002 hearing: Jeffery Snow DOJ attorney states that the DOJ agreed to the handwritten settlement, the Court relied upon only his say so, stated that the Simons' arguments | |

DISPUTED TERMS (margin box with arrows pointing to items 63 and 66)

were without merit, and non payment was in bad faith and the Defendants manufactured a story after the fact. [See, Jeff Snow reestablishes debt on Simons' computer record after offer to settle and without informing the Court of the 1995 abatement, the DOJ attorney reinstated through the service center, pp.110-11] 225-230