# In the United States Court of Federal Claims

No. 06-115C
Filed: November 30, 2006
**TO BE PUBLISHED**

| | |
|---|---|
| DANNY C. SIMONS and SALLY J. SIMONS, Plaintiffs, v. THE UNITED STATES, Defendant. | Claim Preclusion; Motion to Dismiss, RCFC 12(b)(1), (6); *Res Judicata*; RESTATEMENT (SECOND) OF JUDGMENTS (1982) § 24(2). |

**Susan Rose**, Sandy, Utah, Counsel for Plaintiffs.

**Michael O'Connell**, United States Department of Justice, Civil Division, Washington, D.C., Counsel for Defendant.

## MEMORANDUM OPINION AND ORDER

**BRADEN, Judge**.

## I. RELEVANT FACTS[1]

This case involves a long-term dispute between Plaintiffs and the Internal Revenue Service ("IRS" or "Government") arising from two settlement agreements concerning tax returns filed by Plaintiffs in the 1970s and 1980s.

[1] The relevant facts recited herein were derived from: the April 3, 2006 Amended Verified Complaint ("Am. Compl.") and exhibits thereto ("Am. Compl. Ex."). In addition, the dispute between Plaintiffs and the IRS has been the subject of on-going litigation in the United States Tax Court, the United States District Court for the District of Utah, and the United States Court of Appeals for the Tenth Circuit. *See United States* v. *Simons*, 864 F. Supp. 171, 172 (D.Utah 1994) ("*Simons* I"); *Simons* v. *Commissioner of Internal Revenue*, 185 F.3d 875 (10th Cir. 1999) (Table) ("*Simons* II"); *United States* v. *Simons*, 86 Fed. Appx. 377 (10th Cir. 2004) ("*Simons* III"); *see also United States* v. *Simons*, 129 F.3d 1386 (10th Cir. 1997) (reversing the district court's holding in *Simons* I). The court has cited the aforementioned cases where necessary to clarify the facts of this case.

**A. First Settlement Agreement.**

On April 16, 1979, the IRS issued a Notice of Deficiency regarding Plaintiffs' 1974 income taxes. *See* Am. Compl. Ex. at 60. On July 13, 1979, Plaintiffs filed a Petition with the United States Tax Court ("Tax Court") contesting this deficiency. *See* Am. Compl. ¶ 40. In 1980, the IRS issued a second Notice of Deficiency for tax years 1972 and 1973. *Id*. ¶ 41. In response, Plaintiffs filed a second Petition with the Tax Court contesting this additional Notice of Deficiency. *Id*. ¶ 42. During the pendency of the Tax Court proceedings, the parties engaged in settlement negotiations. S*ee* Am. Compl. Ex. at 22-25 (Plaintiffs' January 11, 1982 Settlement Proposal). Ultimately, a settlement was reached ("First Settlement Agreement"). On April 22, 1983, the Tax Court entered decisions in both cases, "pursuant to the agreement of the parties," holding that for 1972, Plaintiffs owed no additional taxes; for 1973, Plaintiffs owed $23,773 in additional taxes and a negligence penalty of $1,179; and for 1974, Plaintiffs owed $17,071 in additional taxes and a negligence penalty of $854. *See* Am. Compl. Ex. at 12-13 (April 22, 1983 Tax Court decision for tax years 1972 and 1973); Am. Compl. Ex. at 14-15 (April 22, 1983 Tax Court decision for tax year 1974).

On July 25, 1983, the IRS, acting pursuant to the Tax Court's April 22, 1983 Order, assessed Plaintiffs with a tax deficiency for tax year 1974.[2] *See Simons* I, 864 F. Supp. at 172. The Amended Complaint in this case alleges that on November 7, 1983, Plaintiffs sent a check to the IRS for $49,546.55 to satisfy 1973 and 1974 obligations, as required by the Tax Court's April 22, 1983 decisions. *See* Am. Compl. Ex. at 51 (photocopy of a check dated November 7, 1983, made out to the "Internal Revenue Service" by "Simons & Co." in the amount of $49,546.55); *see also Simons* II, 185 F.3d 875. The Amended Complaint in this case also alleges that the IRS credited the entire amount of that payment only against Plaintiffs' 1973 tax deficiency, leaving them liable for subsequent tax collection activities by the IRS for tax year 1974. *See* Am. Compl. ¶ 60.

In February of 1998, Plaintiffs filed motions in the Tax Court for leave to vacate the April 22, 1983 decisions for lack of jurisdiction. *See Simons* II, 185 F.3d 875. The Tax Court summarily denied both motions. *Id*. This decision was affirmed by the United States Court of Appeals for the Tenth Circuit. *Id*.

**B. Second Settlement Agreement.**

Sometime in 1988, the IRS resumed efforts to collect taxes allegedly owed by Plaintiffs for 1974. *See* Am. Compl. ¶ 69. On December 14, 1992, the United States Attorney filed a complaint against Plaintiffs in the United States District Court for the District of Utah ("District Court") to collect the 1974 tax assessment, as well as tax deficiencies for 1982 and 1987. *See* Am. Compl. Ex. at 180-92 (Complaint, *United States* v. *Simons*, No. 92-1071 (D.Utah Dec. 14, 1992)); *Simons* I, 864 F. Supp. at 172l. The District Court encouraged the parties to engage in settlement negotiations. *See* Am. Compl. Ex. at 203-04. Eventually, the parties agreed to settle the Government's claims in exchange for $55,000 ("Second Settlement Agreement"). *See Simons* III, 86 Fed. Appx. at 378.

[2] The record does not evidence whether the IRS instituted a similar action for 1973.

Plaintiffs, however,"reneged on the payment and instead moved to dismiss the action." *Id*. On June 18, 2002, the District Court held a hearing on Plaintiffs' Motion to Dismiss and the Government's Motion for Summary Judgment. *See* Am. Compl. Ex. at 203-04. On June 20, 2002, the District Court entered an Order ruling that the parties had entered into a valid and binding settlement, "pursuant to which [Plaintiffs] promised to pay $55,000 to the United States Treasury" and that Plaintiffs' "failure to honor the settlement agreement was not in good faith." *Id*.; *see also Simons* III, 86 Fed. Appx. at 378. The District Court also held that if the Plaintiffs did not comply with the terms of the Settlement Agreement, the Government's Motion for Summary Judgment would be granted. *See* Am. Compl. Ex. at 203-04. On June 24, 2002, Plaintiffs submitted a check to the Government for $55,000. *See* Am. Compl. Ex. at 214. On August 5, 2002, the District Court entered a Final Order and Judgment dismissing the case against the Plaintiffs in accordance with the Second Settlement Agreement. *See* Am. Compl. Ex. at 215-16; *see also Simons* III, 86 Fed. Appx. at 378.

Fifty-nine days after the entry of that Final Order, Plaintiffs appealed. Subsequently, the United States Court of Appeals for the Tenth Circuit affirmed, holding that by entering into a valid Settlement Agreement, Plaintiffs had "waived their right to appeal the matters they now attempt to raise." *See United States* v. *Simons*, 86 Fed. Appx. 377, 378 (10th Cir. 2004). *Id*. On September 14, 2006, Plaintiffs filed a Motion to Vacate the District Court's dismissal, which is still pending.

## II. PROCEDURAL BACKGROUND

On February 15, 2006, Plaintiffs filed a Complaint in the United States Court of Federal Claims. On April 13, 2006, Plaintiffs filed an Amended Complaint alleging that the First Settlement Agreement was a binding contract that the Government breached in 1988 when it resumed efforts to collect deficient taxes from Plaintiffs in 1974. *See* Am. Compl. ¶¶ 22-92. The Amended Complaint also alleges that the Government's ongoing collection efforts, including the proceedings in the District Court, constituted: fraud, *id*. ¶¶ 93-120; an abuse of administrative process, *id*. ¶¶ 153-63; an abuse of judicial process, *id*. ¶¶ 164-75; slander and libel, *id*. ¶¶ 175-96; conspiracy, *id*. ¶¶ 197-210; and harassment, *id*. ¶¶ 211-13. The April 13, 2006 Amended Complaint further challenges the validity of the Second Settlement Agreement. *Id*. ¶¶ 121-49. Finally, the Amended Complaint alleges a wide range of takings claims. *Id*. ¶¶ 221-47.

On May 13, 2006, the Government filed a Motion to Dismiss, pursuant to Rules 12(b)(1) and 12(b)(6) of the Rules of the United States Court of Federal Claims ("RCFC"). On June 13, 2006, Plaintiffs filed a Response, captioned as a Motion to Strike the Government's Motion to Dismiss. On June 29, 2006, the Government filed a Corrected Motion to Dismiss, pursuant to RCFC 12(b)(1) and (b)(6). On June 30, 2006, the Government filed a Response to Plaintiffs' Motion to Strike. On July 14, 2006, Plaintiffs filed, by leave, a Response to the Government's Reply to Plaintiffs' Motion to Strike.

## III. DISCUSSION

### A. Jurisdiction.

The Tucker Act is the principal statute establishing the jurisdiction of the United States Court of Federal Claims. *See* 28 U.S.C. §1491. Under the Tucker Act, the court has "jurisdiction to render judgment upon any claims against the United States founded either upon the Constitution, or any Act of Congress, or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated damages in cases not sounding in tort." 28 U.S.C. §1491(a)(1). The Tucker Act, however, is "only a jurisdictional statute; it does not create any substantive right enforceable against the United States for money damages." *United States* v. *Testan*, 424 U.S. 392, 398 (1976). Therefore, in order to pursue a substantive right, a plaintiff must identify and plead a separate contractual relationship, constitutional provision, federal statute, and/or agency regulation that provides a substantive right to money damages for the court to have jurisdiction. *See Todd* v. *United States*, 386 F.3d 1091, 1094 (Fed. Cir. 2004) ("[J]urisdiction under the Tucker Act requires the litigant to identify a substantive right for money damages against the United States separate from the Tucker Act."); *see also Roth* v. *United States*, 378 F.3d 1371, 1384 (Fed. Cir. 2004) ("Because the Tucker Act itself does not provide a substantive cause of action, however, a plaintiff must find elsewhere a money-mandating source upon which to base a suit."); *Kahn* v. *United States,* 201 F.3d 1375, 1378 (Fed. Cir. 2000) ("[T]he plaintiff 'must assert a claim under a separate money-mandating constitutional provision, statute, or regulation, the violation of which supports a claim for damages against the United States.'" (quoting *James* v. *Caldera*, 159 F.3d 573, 580 (Fed. Cir. 1998)).

Therefore, a Plaintiff must state a source of substantive law upon which a claim may be asserted that "can fairly be interpreted as mandating compensation by the Federal Government for the damages sustained." *United States* v. *Mitchell*, 463 U.S. 206, 216 (1983); *see also Testan*, 424 U.S. at 400.

### B. Standard For Decision.

#### 1. Standard for Decision On Motion To Dismiss Pursuant to RCFC 12(b)(1).

A challenge to the "court's general power to adjudicate in specific areas of substantive law . . . is properly raised by a [Rule] 12(b)(1) motion." *Palmer* v. *United States*, 168 F.3d 1310, 1313 (Fed. Cir. 1999); *see also Fisher* v. *United States*, 402 F.3d 1167, 1173 (Fed. Cir. 2005) ("If the court's conclusion is that the source as alleged and pleaded is not money-mandating, the court shall so declare, and shall dismiss the cause for lack of jurisdiction, a Rule 12(b)(1) dismissal – the absence of a money-mandating source being fatal to the court's jurisdiction under the Tucker Act."); RCFC 12(b)(1).

In deciding a motion to dismiss, the court is "obligated to assume all factual allegations to be true and to draw all reasonable inferences in plaintiff's favor." *Henke* v. *United States*, 60 F.3d

795, 797 (Fed. Cir. 1995). Nevertheless, Plaintiffs bears the burden of establishing jurisdiction by a preponderance of the evidence. *See Reynolds* v. *Army & Air Force Exch. Serv.*, 846 F.2d 746, 748 (Fed. Cir. 1988) ("[O]nce the [trial] court's subject matter jurisdiction [is] put in question, it [is] incumbent upon [plaintiff] to come forward with evidence establishing the court's jurisdiction.").

**2. Standard for Decision On Motion To Dismiss Pursuant to RCFC 12(b)(6).**

Dismissal also is required when the plaintiff can prove no set of facts that would warrant the requested relief, when drawing all well-pleaded factual inferences in favor of the complainant. *See* RCFC 12(b)(6); *see also Levine* v. *United States*, 453 F.3d 1348, 1350-51 (Fed. Cir. 2006). For purposes of evaluating the Government's motion, the court "assume[s] all well-ple[ ]d factual allegations in the complaint to be true and draw[s] all reasonable inferences in [plaintiffs'] favor." *Leider,* 301 F.3d at 1295.

**C. The Court's Resolution Of The Government's Motion To Dismiss.**

Pursuant to the doctrine of *res judicata*, "[a] final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Federated Dep't Stores, Inc.* v. *Moitie*, 452 U.S. 394, 398 (1981). The purpose of *res judicata* is to ensure "that there should be an end of litigation; that those who have contested an issue shall be bound by the result of the contest, and that matters once tried shall be considered forever settled between the parties." *Id.* at 401 (quoting *Baldwin* v. *Traveling Men's Ass'n*, 283 U.S. 522, 525 (1931)). *Res judicata* applies when "(1) the parties are identical or in privity; (2) the first suit proceeded to a final judgment on the merits; and (3) the second claim is based on the same set of transactional facts as the first." *Parklane Hosiery Co., Inc.* v. *Shore*, 439 U.S. 322, 326 n.5 (1979); *Ammex, Inc.* v. *United States*., 334 F.3d 1052, 1055 (Fed. Cir. 2003); *Jet, Inc.* v. *Sewage Aeration Sys.*, 223 F.3d 1360, 1362 (Fed. Cir. 2000).

**1. The Parties In This Case Are Identical To The Parties That Litigated The Prior District Court Case.**

Plaintiffs have been involved in extensive litigation over the claims involved in this suit for more than twenty-five years in the United States Tax Court, the District Court, and the United States Court of Appeals for the Tenth Circuit. Plaintiffs in the instant case also were parties in the prior District Court action. *Compare* Am. Compl. ("Danny C. Simons and Sally J. Simons, *Plaintiffs,* vs. United States . . . *Defendant*.") *with* Complaint, *United States* v. *Simons*, No. 92-C-107A (D.Utah Dec. 14, 1992) at 1 ("United States of America, Plaintiff v. Dan C. Simons, Sally C. Simons . . .").

**2. The Prior Decision Was A Final Judgment On The Merits.**

For purposes of *res judicata*, courts have defined a "final judgment on the merits" to include stipulated dismissals, entered pursuant to a settlement agreement. *See Lawlor v. National Screen Service Corp.*, 349 U.S. 322, 327 (1955) (holding that a lawsuit, dismissed with prejudice pursuant

to a settlement agreement "bars a later suit on the same cause of action"); *see also Harnett* v. *Billman*, 800 F.2d 1308, 1312 (4th Cir. 1986) (holding that a case dismissed, with prejudice, pursuant to a settlement agreement is a "judgment on the merits" for *res judicata* purposes); *Brooks* v. *Barbour Energy Corp.*, 804 F.2d 1144, 146 (10th Cir. 1986) (holding that a dismissal with prejudice, upon an order of the court based on a settlement agreement, should be considered a judgment on the merits because it was entered pursuant to a settlement that resolved the substance of the disputed claims.); *Astron Indus. Assoc., Inc.* v. *Chrysler Motors Corp.*, 405 F.2d 958, 960 (5th Cir. 1968) ("It is clear that a stipulation of dismissal with prejudice, or, for that matter, a dismissal with prejudice at any stage of a judicial proceeding, normally constitutes a final judgment on the merits which bars a later suit on the same cause of action."). Accordingly, the District Court's August 5, 2002, Final Order and Judgment was a final judgment on the merits for *res judicata* purposes.

**3. Nearly All The Claims In The Amended Complaint Are Based On The Same Transactional Facts Previously Litigated In The District Court.**

In addition, nearly all of Plaintiffs' claims in this case arise from transactional facts previously litigated in the District Court. In determining whether the same cause of action is involved in two different lawsuits, the United States Court of Appeals for the Federal Circuit has adopted the transactional test of the RESTATEMENT (SECOND) OF JUDGMENTS (1982) ("RESTATEMENT"). *See Young Eng'rs* v. *United States Int'l Trade Comm'n*, 721 F.2d 1305, 1314 (Fed. Cir. 1983) ("[c]laim preclusion . . . operates to bar subsequent assertion of the same transactional facts in the form of a different cause of action or theory of relief."); *see also Mars Inc.* v. *Nippon Conlux Kabushiki-Kaisha*, 58 F.3d 616, 619 (Fed. Cir. 1995) ("It is well established that a party may not split a cause of action into separate grounds of recovery and raise the separate grounds in successive lawsuits; instead, a party must raise in a single lawsuit all the grounds of recovery arising from a single transaction or series of transactions that can be brought together." (citing RESTATEMENT § 24(2)); *Foster* v. *Hallco Mfg. Co.*, 947 F.2d 469, 478-79 (Fed. Cir. 1991) ("'[C]laim' within the meaning of *res judicata* principles[] [. . .] does not mean merely 'argument' or "assertion.' 'Claim' is used in the sense of the facts giving rise to the suit." (citing RESTATEMENT § 24)). The United States Court of Appeals for the Second Circuit has further clarified that "A first judgment will generally have preclusive effect only where the transaction or connected series of transactions at issue in both suits is the same, that is where the same evidence is needed to support both claims, and where the facts essential to the second are present in the first." *Interoceanica Corp.* v. *Sound Pilots, Inc.*, 107 F.3d 86, 91 (2d Cir. 1997) (quoting *SEC* v. *First Jersey Sec.*, 101 F.3d 1450, 1463-64 (2d Cir. 1996)).

In the District Court action, the Government filed suit to enforce federal tax liens on certain parcels of real property owned by Plaintiffs to satisfy tax assessments for 1974, 1982, and 1987. In response, the Plaintiffs argued that the Government breached the First Settlement Agreement and committed various torts in collecting these taxes. *See* Resp. to the IRS' Mot. Sum J., *United States* v. *Simons*, No. 92-C-1071B (D.Utah Jan. 29, 2001) at 10 (arguing that the IRS breached the April 22, 1983 settlement agreement); Mot. for Dir. Verdict, *United States* v. *Simons*, No. 92-C-1071B (D.Utah Feb. 16, 2001) at 3 (arguing that the IRS "coerced the taxpayers" into signing the settlement

agreements and "committed fraud" by filing the District Court action). Plaintiffs also argued that the IRS engaged in "[d]enial of due process, [f]raud, [d]uress, [i]llegal liens, [m]isuse of judicial process[, and] malicious prosecution. *Id*. at 4.

### 4. Plaintiffs' Claims Are Barred By The Doctrine Of *Res Judicata*.

#### a. Plaintiffs' Claims Regarding Breach Of The First Settlement Agreement Are Barred.

In this case, Plaintiffs argue that the Government breached the First Settlement Agreement. *See* Am. Compl. ¶¶ 65-69 (alleging that the Government breached by violating the "duty of promissory estoppel"), ¶¶ 70-73 (alleging that the Government's attempts to collect taxes for 1974 violated the covenant of good faith and fair dealing); ¶ 74 (alleging that the Government's failure to keep proper records violated the covenant of good faith and fair dealing); ¶¶ 75- 92 (alleging that the Government's interference with Plaintiffs' ability to procure certain tax records violated the covenant of good faith and fair dealing); ¶¶ 93-120 (alleging that Government committed fraud in the performance of the First Settlement Agreement). All of these claims arise from the Government's actions to collect the past due taxes that were the subject of the District Court case. Plaintiffs had ample opportunity to raise these breach of contract claims in that litigation. The facts essential to the litigation of these claims are the exact same as those required to assert the counterclaims for breach of the same contract filed by Plaintiffs in the District Court case. Accordingly, they must be considered as arising from the same cause of action that was litigated in the District Court, and are therefore, barred by *res judicata*.

Regarding the "fraud in the performance" of the contract allegation, *see* Am. Compl. ¶¶ 93-120, plaintiffs appear not to appreciate that the United States Court of Federal Claims' jurisdiction does not extend to cases sounding in tort. *See* 28 U.S.C. § 1491(a) ("[t]he United States Court of Federal Claims shall have jurisdiction to render judgement upon any claim . . . for liquidated or unliquidated damages *in cases not sounding in tort*."(emphasis added)); *see also Brown* v. *United States*, 105 F.3d 621, 623 (Fed. Cir. 1997) (holding that the United States Court of Federal Claims lacks jurisdiction over claims sounding in tort, including fraud). Jurisdiction to hear such claims is exclusively conferred on United States District Courts under the Federal Tort Claims Act. *See* 28 U.S.C. § 1346(b). The predecessor to the United States Court of Appeals for the Federal Circuit has held that this court may hear claims of alleged fraud and misrepresentation only to the extent that they are "closely bound up in the . . . contractual relationship." *L'Enfant Plaza Prop., Inc.* v. *United States*, 645 F.2d 886, 892 (1981) (citing *Fountain v. United States*, 427 F.2d 759, 761 (1970), *cert. denied*, 404 U.S. 839 (1971). The distinction is there must be a "'tortious' breach of contract rather than a tort independent of the contract." *L'Enfant Plaza*, 645 F.2d at 892 (citing *Burtt* v. *United States*, 176 Ct. Cl. 310, 313-14 (1966). In this case, Plaintiffs failed to link the alleged fraudulent conduct to a duty owed them under the First Settlement Agreement. Since this claim sounds in tort, not contract, this court does not have jurisdiction over Plaintiff's fraud claim.

**b. Plaintiffs' Tort Claims Are Barred.**

Similarly, Plaintiffs also assert several other tort claims against the Government. *See* Am. Compl. ¶¶ 153-63 (alleging abuse of administrative process); ¶¶ 164-75 (alleging abuse of judicial process); ¶¶ 175-96 (alleging slander and libel); ¶¶ 197-210 (alleging conspiracy); ¶¶ 211-13 (alleging harassment). Plaintiffs also asserted several tort claims against the Government in the District Court case. *See* Mot. for Dir. Verdict, *United States* v. *Simons*, No. 92-C-1071B (D.Utah Feb. 16, 2001) at 4 (arguing that the IRS engaged in "[d]enial of due process, [f]raud, [d]uress, [i]llegal liens, [m]isuse of judicial process[, and] malicious prosecution"). Again, the tort claims in this case arise from the Government's actions seeking to collect the past due taxes litigated in the District Court. The claims in this case arise from the same set of transactional facts as was litigated before the District Court. Accordingly, they must be considered as arising from the same cause of action that was litigated in the District Court and are barred by *res judicata*.

Furthermore, to the extent that the claims contained in ¶¶ 153-213 of the Amended Complaint, in part or in whole, sound in tort, the court does not have jurisdiction over such claims. *See* 28 U.S.C. § 1491(a) ("[t]he United States Court of Federal Claims shall have jurisdiction to render judgement upon any claim . . . for liquidated or unliquidated damages *in cases not sounding in tort*."(emphasis added)); *see also Brown* v. *United States*, 105 F.3d 621, 623 (Fed. Cir. 1997) (holding that the United States Court of Federal Claims lacks jurisdiction over claims sounding in tort, including fraud). Jurisdiction to hear such claims is exclusively conferred on United States District Courts under the Federal Tort Claims Act. *See* 28 U.S.C. § 1346(b). The court, therefore, does not have jurisdiction over Plaintiffs' tort claims.

**c. Plaintiffs' Challenge To The Validity Of The Second Settlement Agreement Is Barred.**

Plaintiffs also challenge the validity of the Second Settlement Agreement that led to the dismissal of the District Court case. *See* Am. Compl. ¶¶ 115-37. Plaintiffs, however, have already appealed the validity of this agreement and the United States Court of Appeals for the Tenth Circuit dismissed that appeal. *See Simons* II, 86 Fed. Appx. at 379 (affirming dismissal, pursuant to a binding settlement agreement). None of the facts alleged by Plaintiffs as grounds for challenging the validity of the Second Settlement Agreement occurred after the District Court entered a Final Order. As a result, these claims also arise from the same transactional facts that were litigated before the District Court and the United States Court of Appeals for the Tenth Circuit. Accordingly, these claims are also barred by *res judicata*.

**d. Plaintiffs' Taking Claims Are Barred.**

Finally, Plaintiffs raise a variety of takings claims against the Government. *See* Am. Compl. ¶¶ 207-40. Again, all of the facts alleged by Plaintiffs in support of these claims stem from the Government's tax collection activities that were the subject of the District Court litigation. Since the facts essential to these takings claims were present during the District Court litigation, all of these claims should have been properly raised during that case and are, therefore, barred by *res judicata*.

**5. The United States Court Of Federal Claims Does Not Have Jurisdiction To Review The Final Judgments Of Other Federal Courts.**

Assuming *arguendo* that the doctrine of *res judicata* is not applicable to the claims enumerated above, nevertheless, the United States Court of Federal Claims does not have jurisdiction to review final judgments of the United States District Court for the District of Utah or final judgments of the United States Court of Appeals for the Tenth Circuit. *See* 28 U.S.C. § 1254 ("Cases in the courts of appeals may be reviewed by the Supreme Court . . . [b]y writ of certiorari[.]"); 28 U.S.C. § 1291 ("The court of appeals . . . shall have jurisdiction of appeals from all final decisions of the district courts of the United States[.]"); *see also Vereda, Ltda.* v. *United States,* 271 F.3d 1367, 1375 (Fed. Cir. 2001) ("This means that the Court of Federal Claims cannot entertain a taking claim that requires the court to 'scrutinize the actions of' another tribunal." (quoting *Allustiarte* v. *United States*, 256 F.3d 1349, 1352 (Fed. Cir. 2001))); *Joshua* v. *United States,* 17 F.3d 378, 380 (Fed. Cir. 1994) ("[T]he Court of Federal Claims does not have jurisdiction to review the decisions of district courts.").

**6. Plaintiffs' Allegation that The Government Breached The Second Settlement Agreement Is Not Barred.**

The Amended Complaint, however, pleads one claim that appears to involve facts that occurred after the commencement of the District Court litigation. Plaintiffs argue that, if the court finds the Second Settlement Agreement to be valid, the Government breached this Settlement Agreement when it "billed the Plaintiffs for about an additional $4100" for taxes due from 1974. *See* Am. Compl. ¶¶ 128, 137, 139, 141. Plaintiffs do not appear to ask for any specific monetary damages for this alleged breach, instead, the Amended Complaint seeks "full expectation damages under any one claim, or all together, separately or jointly, in a total amount of no less than $45 million dollars[.]" Am. Compl. ¶ 254.

In order to recover damages for breach of contract, a plaintiff "must allege and establish: (1) a valid contract between the parties, (2) an obligation or duty arising out of that contract, (3) a breach of that duty, and (4) damages caused by the breach." *San Carlos Irrigation and Drainage Dist. v. United States*, 877 F.2d 957, 959 (Fed. Cir. 1989). In this case, although Plaintiffs have alleged the existence of a valid contract between the parties, *i.e.* the Second Settlement Agreement, it does not appear from the Amended Complaint that all elements of a breach of contract claim have been properly pled. In addition, the Government failed to address this specific claim in its Motion to Dismiss. Accordingly, to properly assess the validity of this claim, the court grants Plaintiffs leave to file a Second Amended Complaint that <u>succinctly</u> alleges each element in support of the alleged breach of the Second Settlement Agreement, including the amount of damages suffered as a result of this alleged breach. *See* RCFC 15(a) (authorizing the court to allow parties to amend pleadings "when justice so requires"); RCFC 8 ("A pleading . . . shall contain (1) a <u>short and plain</u> statement of the claim showing that the pleader is entitled to relief[.]") (emphasis added).

## IV. CONCLUSION

For the foregoing reasons, the Government's May 13, 2006 Motion to Dismiss is granted in part and denied in part. The Clerk of the Court will dismiss, with prejudice, all of Plaintiffs' April 13, 2006 Amended Complaint, with the exception of ¶¶ 128, 137, 139, 141, to the extent that those paragraphs state a claim for breach of the Second Settlement Agreement.

Plaintiffs are granted leave to file a Second Amended Complaint properly alleging all elements for breach of the Second Settlement Agreement, to be filed on or before Friday, December 15, 2006. Defendant will file any Motion to Dismiss Plaintiffs' Second Amended Complaint on or before Friday, January 12, 2007. Plaintiff will respond to Defendant's Motion on or before Friday, January 19, 2007. Defendant will file a reply on or before Friday, January 26, 2007.

**IT IS SO ORDERED.**

s/ Susan G. Braden
**SUSAN G. BRADEN**
**Judge**