Susan Rose, Utah Bar. No. 7985
ATTORNEY FOR THE PLAINTIFFS
9553 South Indian Ridge Drive
Sandy, Utah 84092
Phone/fax (801) 545-0441

**UNITED STATES COURT**
**OF FEDERAL CLAIMS**

Danny C. Simons and Sally J. Simons

*Plaintiffs*,
vs.
UNITED STATES OF AMERICA,
*Defendant*.

Case No. 06-115
Judge Susan Braden

---

PLAINTIFFS' RCFC RULE 59 AND 60 MOTION FOR CLARIFICATION, AMENDMENT AND RECONSIDERATION/REVERSAL OF THE COURT'S NOV. 29, 2006 ORDER OF DISMISSAL

---

NOW COME THE PLAINTIFFS, by and through undersigned counsel, under RCFC Rule 59 and 60 to move this Court to clarify, amend, and reconsider and reverse its Nov. 29, 2006 order of dismissal, and grant these Plaintiffs' summary judgment, and all further relief requested, as based upon the attached memorandum of points and authorities.

So Signed this 7th day of December, 2006

/s/ Susan Rose, Utah Bar. No. 7985
*Counsel for the Plaintiffs*
9553 S. Indian Ridge Drive
Sandy, Utah 84092
(801) 545-0441
susan_rose@comcast.net

Susan Rose, Utah Bar. No. 7985
ATTORNEY FOR THE PLAINTIFFS
9553 South Indian Ridge Drive
Sandy, Utah 84092
Phone/fax (801) 545-0441

**UNITED STATES COURT**
**OF FEDERAL CLAIMS**

Danny C. Simons and Sally J. Simons

*Plaintiffs*,
vs.
UNITED STATES OF AMERICA,
*Defendant*.

Case No. 06-115
Judge Susan Braden

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THE PLAINTIFFS' RCFC RULE 59 AND 60 MOTION FOR CLARIFICATION, AMENDMENT AND RECONSIDERATION/REVERSAL OF THE COURT'S NOV. 29, 2006 ORDER OF DISMISSAL

## TABLE OF CONTENTS


INTRODUCTION AND BASIS FOR THE MOTION 1

WHY THIS CASE WAS BROUGHT 2

CRUX OF THE PROBLEM 3

THE DISTRICT COURT'S JURISDICTION WAS A USURPATION OF NONEXISTENT AUTHORITY MAKES THE DISTRICT COURT'S JUDGMENTS NOT MERELY ERROR, BUT *VOID AB INITIO* AND WITHIN THIS COURT'S EXCLUSIVE JURISDICTION 6

THE LAW OF THE CASE PRESERVES THIS COURT'S JURISDICTION OVER THIS MATTER 9

CONGRESS PRECLUDES ANY DISTRICT COURT AUTHORITY TO REFORM, ALTER OR CHANGE THE 1983 CONTRACT 10

THE *SUB SILENTIO* DOCTRINE PREVENTS THE *RES JUDICATA* DOCTRINE FROM APPLYING TO THE ISSUES BEFORE THIS COURT 11

THE COURT'S ORDER IDENTIFIES FRAUD AND OTHER CLAIMS AS TORTS OVER WHICH IT CLAIMS NO AUTHORITY 12

HOW DO THE PLAINTIFFS ASSERT ALL THE ELEMENTS OF A 2001 CONTRACT, AS DECLARED BY THE DISTRICT COURT, IF THE DISTRICT COURT RECORD SHOWS THEY DO NOT EXIST? 14

*A Mirroring of Terms, Meeting of the Minds, and Unequivocal Acceptance* 15

*Proper Form and Delegated Authority to Bind the Parties* 16

*Legality of the Contract* 17

*Material Consideration* 18

*Finality of the Contract* 19

PRAYER FOR RELIEF 21

CONCLUSION 25

**TABLE OF AUTHORITIES**
**CASES**


*Alaska Packers Assn. v. Domenico*, 117 F. 99 (9th Cir. 1902) 19

*Alpert v. United States, 430 F. Supp. 2d 682, 685 n.1 (N.D. Ohio 2006) 20*

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 247-48 10

*Anthony v. United States*,987 F.2d 670(10th cir.1993) 4,5,8,16

*Botany Worsted Mills v. United States*, 278 U.S. 282, 289, 49 S.Ct. 129 (1929) 1,16,18,21

*Bank of Tex. F.S.B. v. United States*, 50 Fed. Cl. 645, 654 (2001) 2

*Boling v. United States*, 220 F.3d 1365, 1373 (Fed. Cir. 2000) 24

*Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 81 L. Ed. 2d 694, 104 S. Ct. 2778 (1984)* 11,24

*Chicot County District v. Bank,* 308 U.S. 371 (1940) 7

*Cook County v. U.S. ex rel Chandler* 2003 U.S. LEXIS 1957,*26-27;538 U.S. 119; 123 S. Ct. 1239;155 L. Ed. 2d 247 12

*CTA Incorporated, v. United States*, 44 Fed. Cl. 684, 698 (1999) 13

*Curtis v. United States*, 144 Ct. Cl. 194, 199, 168 F. Supp. 213, 216 (1958), cert. denied, 361 U.S. 843 (1959), reh'g denied, 361 U.S. 941 (1960) 10

*Edwards v. United States*, 19 Cl. Ct. 663, 669 (1990) 13

*Glendale Fed. Bank v. United States*, 239 F.3d. 1374, 1380 (2001 2

*Fafel v. DiPaola*, 399 F.3d 403, 410 (1st Cir. 2005) 8

*Federal Trade Commission v. Raladam Co*., 283 U.S. 643, 649 51 S.Ct. 587 (1931) 23

*Freytag v. Commissioner*, 1991 U.S. LEXIS 3818,*49-50 ;501 U.S. 868 8,10

*Hurt v. United States*, 70 F.3d 1261(4th Cir.1995 4,5,8,16

*Insurance Corp. v. Compagnie des Bauxites*, 456 U.S. 694 (1982) 7

*Kurio v. U. S.*, 429 F. Supp. 42, 1970.STX.0000028http://www.versuslaw.com 9,24

*Lubben v. Selective Serv. Sys. Local Bd. No. 27*, 453 F.2d 645, 649 (1st Cir. 1972) 7,11

*Marks v. Commissioner*, 947 F.2d at 986 n.2 5

*Monon Corp. v. Stoughton Trailers, Inc*., 239 F.3d at 1257 10

*Pugh v. Comm'r, 213 F.3d 1324, 1326-27 (11th Cir. 2000) (citations omitted).*

*Simons v. CIR*, 10th Cir. docket no. Nos. 98-9012 & 98-9013, July 12, 1999 3,4,16

*Stamm International Corp. v. Commissioner*, 90 TC. 315, 321-322 (1988). 3

| | |
|---|---|
| *Stark v. Wickard*, 321 U.S. 288, 310 (1944) | 18 |
| *Summit Contractors v. Inc. v. United States*, 22 Cl. Ct. 54, 56 (1990) | 13 |
| *Tadros v. Commissioner*, 763 F.2d 89, 91 (2d Cir. 1985) | 5 |
| *The Edward* 1816 U.S. LEXIS 328,*20;14 U.S. 261;4 L. Ed. 86;1 Wheat. 161 | 11 |
| *Treaty Pines Inv. P'ship v. Commissioner, 967 F.2d 206, 212 (5th Cir. 1992)* | 17 |
| *U.S. v. More*, 1805 U.S. LEXIS 248,*15;7 U.S. 159; 2 L. Ed. 397;3 Cranch 159 | 11 |
| *United States v. Mott*, 37 F.2d 860, 862 (10th Cir. 1930) | 17 |
| *U.S. v. Simons, filed Dec. 14, 1992, 92 cv* 1071B | 4,19 |
| *U. S. v. Simons,* 129 F.3d 1386, 1997.C10.0001337 http://www.versuslaw.com; | 5 |
| *U.S. v. Simons*, http://www.kscourts.org/ca10/cases/2003/12/02-4201.htm | 5,9,12 |
| *Utah Power and Light*, 243 U.S. 389, 409 (1917) | 17 |
| *Wood v. United States*, 961 F.2d 195, 198 (Fed. Cir. 1992) | 13 |
| **STATUTES** | |
| 26 U.S.C. §108, and §61 | 19 |
| 26 U.S.C. §6501 | 4 |
| 26 U.S.C. §§6203, 6303 | 4 |
| 26 U.S.C. §6212 | 8 |
| 26 U.S.C. §6213 | 4 |
| 26 U.S.C. §6215 | 8 |
| 26 U.S.C. 6321 | 8 |
| 26 U.S.C. §6330 | 4 |
| 26 U.S.C. §§7121, 7122 | 4,5.9,13,17,23 |
| 28 U.S.C. §1346(a)(1) | 5,11,23 |
| 28 U.S.C. § 1491(a) | 5 |
| 28 U.S.C. 2201 | 12 |
| Federal Court Administration Act of 1992, Pub. L. No. 102-572, 106 Stat. 4506 (1992) | 5 |
| **CONSTITTUTIONAL PROVISIONS** | |
| United States Constitution Article I and III,; *Tadros v. Commissioner*, 763 F.2d 89, 91 (2d Cir. 1985). | |
| **(SECOND) RESTATEMENT OF CONTRACTS** | |
| Restatement (Second) of Contracts § 347 (1981) | 2. |
| (Second) Restatement §§ 228, 73, 74, 79 | 18 |
| **COURT OF FEDERAL CLAIMS RULES** | |
| Rule 9 | 13 |
| Rules 59 and 60 | **1** |
| **EXHIBIT A GOVERNMENT PLEADING IN 10TH CIR. IN 1999** | |

**NOW COME THE PLAINTIFFS,** by and through undersigned counsel, pursuant to the Court of Federal Claims Rules (RCFC) 59 and 60, to most respectfully request the Court grant their motion to clarify, amend and reconsider and reverse its Nov. 29, 2006 Order of Dismissal, and grant these Plaintiffs summary judgment, and grant all further relief as requested, as based on the following points and authorities:

## INTRODUCTION AND BASIS FOR THE MOTION

The Plaintiffs first wish to thank the Court for its very generous and thoughtfully written order. The order identifies the Court's basis for dismissal, but raises questions as well. The Plaintiffs seek to carry out the Court's order to amend their complaint, but have concerns they hope the Court, and government in its response, will address, so as to allow them to yield to the court, and to be able to clearly identify the Court's reasoning for appeal purposes, or remand to District Court for tort claims, if necessary.

Full payment of the 1983 contract for resolution of the tax issues for 1972, 1973 and 1974 is central to this Court's and the District Court's jurisdiction. The order makes no factual findings as to if there was full payment of the 1983 contract involving tax year 1974. *Botany Worsted Mills v. United States*, 278 U.S. 282, 289, 49 S.Ct. 129 (1929) ("Where the Court of Claims does not make a finding upon the ultimate question of fact [full payment of the 1983 agreement as found in the Tenth Circuit, and the documents in the record], upon which the rights of the parties depend, but merely makes findings as to subsidiary circumstantial facts which bear upon it, such findings will not support a judgment unless the circumstantial facts as found are such that the ultimate fact follows from them as a necessary inference and may be held to result as a conclusion of law.")

The Plaintiffs most respectfully remind the Court that the Court promised the Plaintiffs a hearing on their claims, with transcripts, during a status telephone conference, on or about July 11, 2006. Hopefully, the government and Court will clarify some of the questions and issues raised herein, that would have been raised and discussed in such a hearing.

**WHY THIS CASE WAS BROUGHT**

The Court is correct in its order, in that for over 25 years, the Plaintiffs have sought to bring finality and peace to the government's pursuit of them, and pursuit *without* foundation, for a contract they fully paid in 1983, involving three tax years, 1972, 1973 and 1974, but could not prove was fully paid until 2000 when the government finally disgorged thousands of pages of their file, including previously denied vital records. The Plaintiffs worked hard to procure their records in dozens of Freedom of Information Act and Privacy Act requests, and through Federal Rule of Civil Procedure at Rule 26, and administratively, through their attorneys and CPA to recover their original returns, and extensions of the statutes of limitation for assessment, and other vital documents, to no avail until 2000. No one disputes, nor can dispute, that the Plaintiffs are anything but obedient, taxpaying and honorable citizens. Neither can or should unwillingness to submit to further unjust enrichment and payment to the government, and their desire to seek Court protections from future possible collection activities, be a warrant for Courts to categorize or label them negatively, especially without grounds for doing so. It is true that the Plaintiffs seek expectation damages for the continuous line of

contract breaches by the government of the 1983 contract as unchallenged evidence shows was fully paid. [[1]]

Presently, without this Court taking authority over their current contract claims, and minimally finding the Plaintiffs had a ***fully*** paid 1983 *contract* for year 1974, that was *res judicata* ***against*** the government in its further pursuit in District Court beginning in 1992, the Plaintiffs are still open to years of potential future collection activity on this 1974 tax year's account.

## CRUX OF THE PROBLEM

The crux of the Plaintiffs' problem lies in answering a simple question. ***Did the Plaintiffs fully pay a 1983 contractual agreement for all three years, 1972, 1973 and 1974, with a $49, 545.55 payment in 1983?*** All persons rights, all Courts' jurisdiction, rests on that single question. The government in their brief to the Tenth Circuit Court on Oct. 1, 1998, successfully argued, "The long and short of the matter before this Court is that the stipulated decision is binding on the parties without regard to whether it is correct on the merits." Accord *Stamm International Corp. v. Commissioner*, 90 TC. 315, 321-322 (1988). " and argued that that stipulated decision was *final*. EXHIBIT A Thus, there is no dispute as to if the 1983 agreement involving two tax court decisions with identical underlying work documents interlinking them legally and mathematically, is a contract, with all the elements of a FINAL closing compromise agreement contract, found by the

[1] *See Glendale Fed. Bank v. United States*, 239 F.3d. 1374, 1380 (2001). Expectation damages are generally measured by the "loss in the value to [the injured party] of the other party's performance caused by its failure or deficiency, plus... any other loss, including incidental or consequential loss, caused by the breach...." *Bank of Tex. F.S.B. v. United States*, 50 Fed. Cl. 645, 654 (2001) (citing Restatement (Second) of Contracts § 347 (1981)).

Tenth Circuit Court in *Simons v. CIR*, 10th Cir. docket no. Nos. 98-9012 & 98-9013, July 12, 1999 [[2]].

***Judicial estoppel*** should have prevented the government from further pursuit of Plaintiffs in District Court, particularly since the government at all times had access to the information evidencing full payment, that the Plaintiffs and Tenth Circuit Court did not have in 1999, withheld from them until 2000. Congress has provided five Courts to address Tax Contract disputes. The five Congressionally created courts are (1) Tax Court[**[3]**]; (2) District Court[**[4]**]; (3) Court of Federal Claims[**[5]**]; (4) Circuit Courts of appeal

---

[2] *Simons v. C.I.R., supra*,( "This particular part of their dispute began in 1979, when the IRS issued a notice of deficiency relating to taxpayers' 1974 income taxes. The taxpayers filed a petition for redetermination with the Tax Court on July 13, 1979, disputing the notice of deficiency (Tax Ct. No. 79-10312). In 1980, the IRS issued another notice of deficiency, this time relating to taxpayers' 1972 and 1973 income taxes. Again, the taxpayers filed a petition for redetermination in Tax Court disputing the notice of deficiency (Tax Ct. No. 80-13016). During the course of the Tax Court proceedings, the taxpayers' counsel negotiated with the IRS to settle the disputed taxes. The record before us does not contain a copy of the settlement agreement ultimately reached between the taxpayers and the IRS, but it does contain some correspondence from the taxpayers' counsel concerning proposed terms of the settlement. On April 22, 1983, the Tax Court entered decisions in both cases, each of which purported to be "[p]ursuant to agreement of the parties." Tax Ct. Rec. No. 79-10312, Doc. 13 at 1; Tax Ct. Rec. No. 80-13016, Doc. 10 at 1. In No. 79-10312, the Tax Court found that the taxpayers owed additional taxes of $17,071 and a negligence penalty of $854 for tax year 1974. In No. 80-13016, the Tax Court found that the taxpayers owed no additional taxes or penalties for tax year 1972, but that they owed additional taxes of $23,573 and a negligence penalty of $1,179 for tax year 1973.

The taxpayers allege that they sent the IRS a check for what they believed to be the total obligation due under their settlement agreement with the IRS for tax years 1973 and 1974. They further allege that the IRS erroneously applied the entire payment toward their 1973 tax obligations, plus interest. The IRS has since commenced proceedings in federal district court to collect the allegedly unpaid 1974 tax obligation. ")

[3] **The Tax Court** is the exclusive court for petitioning any challenges of a timely issued Notice of Deficiency (26 U.S.C. §6213). It provides for the government to enter into final

for District Court decisions[[6]]; and (5) the Federal Circuit Court of appeals.[[7]] Due to the government not binding itself to the 1983 agreement, nor anyone recognizing the *res judicata* effect of the Tax Court decision and Tenth Circuit decision in *Simons v. C.I.R.*, 10th Cir. docket no. Nos. 98-9012 & 98-9013, July 12, 1999, the Simons were subjected to years of needless litigation in four of those courts, suffering now from this Court's denial of relief.

The governments' 1992 judicial quiet title action, was a *de facto* collateral attack and challenge to the terms of the stipulated 1983 tax court decision. Such is prevented by the government's own arguments before this Court. The terms of the agreement on which

---

compromise closing (26 U.S.C. §§7121, 7122) stipulated Tax Court contractual agreements. *See Simons v. C.I.R.*, 10th Cir. docket no. Nos. 98-9012 & 98-9013, July 12, 1999. *See*, *Hurt v. United States*, 70 F.3d 1261(4th Cir.1995);*Anthony v. United States*,987 F.2d 670(10th cir.1993).

[4] **The District Court** has jurisdiction for quieting title actions, *if* the stipulated Tax Court agreement is not fully paid ( government standing), but only upon a timely assessment (26 U.S.C. §6501), and notice and demand (26 U.S.C. §§6203, 6303) AND a prior notice of levy (26 U.S.C. §6330) by the government. It is expressly denied any declaratory judgment powers in regard to tax matters, and has no jurisdictional authority over contractual claims that arise as defenses and counterclaims in response to quiet title actions. *U.S. v. Simons, filed Dec. 14, 1992, 92 cv* 1071B

[5] **This Court of Federal Claims** has jurisdiction over this matter pursuant to United States Constitution Article I and III, 28 U.S.C. § 1491(a), the Federal Court Administration Act of 1992, Pub. L. No. 102-572, 106 Stat. 4506 (1992), 28 U.S.C. 1346 (a)(2), and the Tucker Act, 28 U. S. C. 1491(a) for express and implied-in-fact contracts, involving amounts over $10,000, as here. I.R.C. § 7422(a); 28 U.S.C. §1346(a)(1), 1491(a): *Marks v. Commissioner*, 947 F.2d at 986 n.2; *Tadros v. Commissioner*, 763 F.2d 89, 91 (2d Cir. 1985).

[6] **The Tenth Circuit Court** has jurisdiction over appeals from the Tax Court (*Simons v. C.I.R., supra*) and appeals from the District Court rulings. *U. S. v. Simons,* 129 F.3d 1386, 1997.C10.0001337 http://www.versuslaw.com; *U.S. v. Simons*, http://www.kscourts.org/ca10/cases/2003/12/02-4201.htm.

[7] **The Federal Circuit Court of Appeals** is the only appellate Court for contractual claims from this Court or refusal of a District Court to remand a case to the Court of Federal Claims for contract issues.

the 1983 stipulated Tax Court decisions, a contract [[8]], are based are found in the mutually-agreed-to IRS-drafted work documents that are a mandatory part of the stipulated Tax Court decisions. But to interpret the mathematical and legal language of those forms, it is absolutely essential to have the original returns… an item denied these Plaintiffs and the Tax Court until after the 1999 court decision, in the 2000 document disgorgement. (P. App. p. 6-10). This is why the Tenth Circuit Court in 1999 could not identify all the terms of the 1983 agreement. The District Counsel's decision (P. App. pg. 28), [revealed in 2000] sets out the terms of the 1983 agreement, and explains why full I.R.C. 6601(a) 'statutory' interest would not apply to the decisions, but partial or restricted I.R.C. 6601(e) 'statutory' interest would apply. The District Counsel explains the responsibility for not resolving the dispute earlier than 1983 lay with the IRS, not these taxpayers. Any ambiguities regarding statutory interest are to be resolved by the Courts favorably for the citizen. *Fn. 8 supra*. Especially here, as in *Anthony*, the government nary mentions interest aside from the boilerplate language of the decision, which these Plaintiffs show is clearly 'restricted' and fully paid by their evidence.

**THE DISTRICT COURT'S JURISDICTION WAS A USURPATION OF NONEXISTENT AUTHORITY MAKES THE DISTRICT COURT'S JUDGMENTS NOT MERELY ERROR, BUT *VOID AB INITIO* AND WITHIN THIS COURT'S EXCLUSIVE JURISDICTION**

No one disputes that all parties rights and all Court's authorities rest on the factual determination of the full payment of the 1983 Tenth Circuit determined and government argued, contractual agreement for years 1972, 1973 and 1974.

---

[8] *Hurt v. United States*, 70 F.3d 1261(4th Cir.1995);*Anthony v. United States*,987 F.2d 670(10th cir.1993).

The government, without addressing the facts that deprive the District Court of all initial authority, protests that collateral attack can not be made upon a final judgment unless the District Court's authority was a usurpation of jurisdiction. All seem to ignore the *res judicata* effect of the 1983 Tax Court and 1999 Tenth Circuit decisions, now that Plaintiffs can explain them. This Court, upon the government's urging, finds it will not 'second guess' another Court, applying *res judicata* to the District Court's decision 2002, as the government argues.

Yet all will agree, that if the District Court's decisions or judgments are void, not simply in error, then this Court has a statutory duty to exercise its exclusive authority over contract and claims arising over $10,000 as described in this Court's jurisdictional statement. The foundational strength of this Court's decision rests on a factual finding of the question of full payment of the 1983 agreement, and also on statutory bars to the District Court's exercise of authority. *Chicot County District v. Bank,* 308 U.S. 371 (1940) and *Insurance Corp. v. Compagnie des Bauxites*, 456 U.S. 694 (1982) only apply to prevent a collateral attack on another Courts' judgment issues wherein the Court had initial jurisdiction originally. The government recognizes this distinction as it so argued in its brief in another case.

> "A jurisdictional attack on a judgment is routinely rejected if the record is sufficient to show that the court originally had subject matter jurisdiction over the case. Jackson v. Irving Trust Co., 311 U.S. 494 (1941); Honneus v. Donovan, 691 F.2d 1 (1st Cir. 1982). **A judgment is void only when the record affirmatively establishes that the court did not acquire jurisdiction.** See, e.g., Vallely v. Northern Fire & Marine Ins. Co., 254 U.S. 348 (1920); Watts v.Pinckney, 752 F.2d 406 (9th Cir. 1985)."

Department of Justice brief in *Webb v. C.I.R.*, U.S. Supreme Court pg. 11.
http://www.usdoj.gov/osg/briefs/1995/w951538w.txt

> "A void judgment is to be distinguished from an erroneous one, in that the latter is subject only to direct attack. A void judgment is one which, from its inception, was a complete nullity and without legal effect. . . ..".

*Lubben v. Selective Serv. Sys. Local Bd. No. 27*, 453 F.2d 645, 649 (1st Cir. 1972))

Unlike *Webb*, here, the Plaintiffs produce evidence to show that prerequisites to the District Court jurisdiction are wholly missing, and though they produced the evidence to the District Court, after it was withheld for about 12 years, the District Court disallowed them the ability to supplement the evidentiary record [[9]], and refused to look back to the 1973 and '74 and 1983 activities. [[10]]. They had no fair and impartial opportunity to litigate this issue, as the District Court and Tenth Circuit passed on them *sub silentio*, ignoring them. Neither could it pass on them, conceivably as they are breach of contract issues exclusively within this Court's authority. Likewise, the 10th cir. clearly identifies contractual issues requiring factual finding as to fraud, lack of District court jurisdiction, duress, and the like in its unpublished 2004 decision, that is the law of the case here.

Unlike *Webb*, here, the Plaintiffs evidence shows after the Simons received the Feb. 15, 2000 IRS disgorgement of their documents, and had time to review them with tax experts, the government failed to meet Federal District Court prerequisites; (1) a lack of a 26 U.S.C. §6215 written Notice of Assessment; (2) lack of 26 U.S.C. 6212, 6213 Notices of Deficiency for supplemental assessments after 1983; (3) lack of a 26 U.S.C. §6215 timely assessment, lack of prior notices; (4) violation of the government's fiduciary duty and FRCP rule 26, and Freedom of Information Act (FOIA) and Privacy

---

[9] "….and under the circumstances that that was an inappropriate effort to increase the factual record or supplement the factual record which was, in any event, untimely." Transcript of March 21, 2001 plt. App. pg. 219.

[10] "..they want to work backwards all the way back to 1973 and '74 and 1983 and the Court is having none of it." Transcript of June 18, 2002 District Court plt. App. pg. 230

Act duty to disclose to the Simons the whereabouts of and all their records administratively and judicially[[11]]; (5) liens and levies for which the government sought to quiet title in 1992 were invalid for lack of 26 U.S.C. §6321 *prior* written notice and demand; and (6) the 1992 filing of the Court complaint, with the untrue statements that the government had provided *timely written* notices and demand, and a materially flawed inaccurate 1992 signed certificate or list of assessments, lacking the ZERO assessments on the computer closing the 1974 account on 10-25-83 (P. App. pg. 104), with a statutory late 1983 alleged assessment. All these missing prerequisites denied the District Court's authority against the Simons, intitially. P. App. pg. 182-183. "A court without subject-matter jurisdiction may not acquire it by consent of the parties." *Fafel v. DiPaola*, 399 F.3d 403, 410 (1st Cir. 2005); *Freytag v. Commissioner*, 1991 U.S. LEXIS 3818,*49-50 ;501 U.S. 868 (J. Scalia concurrence). By the government's own successful argument in *Webb*, they are judicially estopped from any variance with their *Webb* position. And, the facts and evidence here are unchallenged.

**THE LAW OF THE CASE PRESERVES THIS COURT'S JURISDICTION OVER THIS MATTER**

The law of the case also preserves this Court's exclusive authority regarding any 2002 District Court decision based on a 2001 handwritten offer. The Tenth Circuit found the ' rule [against challenging a consent judgment] does not apply, however, if "lack of actual consent, fraud in obtaining consent, lack of federal jurisdiction, or mistake are shown,". *U.S. v. Simons*, Tenth Cir. 02-4201, Jan. 22, 2004 [unpublished but binding on this case]. All these exceptions to the rule fall under contract elements, solely this

[11] *Anthony v. United States*, 987 F.2d 670 (10th Cir. 1992), *Hurt v. U. S.* 70 F.3d 1261 (4th Cir. 1995), *Kurio v. U. S.*, 429 F. Supp. 42, 1970.STX.0000028http://www.versuslaw.com

Court's exclusive authority. What more duress, lack of actual consent, or fraud can be found in the government withholding all the vital documents necessary for the Plaintiffs to meet their burden, then the Plaintiffs' being denied the ability to supplement the evidentiary record once they are found, and the Court not willing to examine the details and full payment of the 1983 agreement, that overrides its authority, and then angrily attacking the Plaintiffs for not agreeing to pay more earlier, and for refusing to agree that they owed anything further on the 1983 contract.

**CONGRESS PRECLUDES ANY DISTRICT COURT AUTHORITY TO REFORM, ALTER OR CHANGE THE 1983 CONTRACT**

The first bar to applying *res judicata* to the District Court's 2002 judgment lies in 26 U.S.C. §7121.

TITLE 26 - INTERNAL REVENUE CODE
Subtitle F - Procedure and Administration
CHAPTER 74 - CLOSING AGREEMENTS AND COMPROMISES
Sec. 7121. Closing agreements
(a) Authorization
The Secretary is authorized to enter into an agreement in writing with any person relating to the liability of such person (or of the person or estate for whom he acts) in respect of any internal revenue tax for any taxable period.
(b) Finality
If such agreement is approved by the Secretary (within such time as may be stated in such agreement, or later agreed to) ***such agreement shall be final and conclusive***, and, except upon a showing of fraud or malfeasance, or misrepresentation of a material fact -
(1) ***the case shall not be reopened as to the matters agreed upon or the agreement modified by any officer, employee, or agent of the United States, and***
(2) in any suit, action, or proceeding, such agreement, or any determination, assessment, collection, payment, abatement, refund, or credit made in accordance therewith, shall ***<u>not</u>*** be ***annulled, modified, set aside, or disregarded.***
(Aug. 16, 1954, ch. 736, 68A Stat. 849; Pub. L. 94-455, title XIX, Sec. 1906(b)(13)(A), Oct. 4, 1976, 90 Stat. 1834.)
(emphasis added)

The desire of Congress to protect the government *and* to protect the citizen from future suit could not be more clear. Again, the key is was there a full payment in 1983. If so, then the District Court quiet title action was an impermissible collateral challenge to the Tax Court decision, by the government's own argument, that parties could not waive, without supplanting Congressional authority.. [[12]]

Since the unchallenged proof by the Plaintiffs is undisputed as to full payment, then what is the jurisdictional standing and grounds for any further District Court proceeding. None. *Anderson v. Liberty Lobby, Inc*., 477 U.S. at 247-48; see also *Monon Corp. v. Stoughton Trailers, Inc*., 239 F.3d at 1257; *Curtis v. United States*, 144 Ct. Cl. 194, 199, 168 F. Supp. 213, 216 (1958), cert. denied, 361 U.S. 843 (1959), reh'g denied, 361 U.S. 941 (1960); *Lubben v. Selective Serv. Sys. Local Bd. No. 27*, 453 F.2d 645, 649 (1st Cir. 1972))( "A void judgment is to be distinguished from an erroneous one, in that the latter is subject only to direct attack. A void judgment is one which, from its inception, was a complete nullity and without legal effect. . . ..*"). Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 81 L. Ed. 2d 694, 104 S. Ct. 2778 (1984).* ("If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress."). By the law of the case, this Court can adjudge the Plaintiffs' contract claims.

**THE *SUB SILENTIO* DOCTRINE PREVENTS THE *RES JUDICATA* DOCTRINE FROM APPLYING TO THE ISSUES BEFORE THIS COURT**

The rulings of the District and later Appeal Courts were *sub silentio* on the foregoing jurisdictional facts and law, as this Court recognizes the Plaintiffs attempted to

---

[12] *Freytag v. Commissioner*, 1991 U.S. LEXIS 3818,*49-50 ;501 U.S. 868 (J. Scalia concurrence)

raise. When Courts pass *sub silentio* on a vital issue, *res judicata* doctrines have not applied to those issues since at least 1805. *U.S. v. More*, 1805 U.S. LEXIS 248,*15;7 U.S. 159; 2 L. Ed. 397;3 Cranch 159: *The Edward* 1816 U.S. LEXIS 328,*20;14 U.S. 261;4 L. Ed. 86;1 Wheat. 161 ("The answer to all this is, that the condemnation alluded to passed sub silentio, without bringing the point distinctly to our view, and is, therefore, no precedent"). This Court's deferral to the District Court's ruling, *de facto* provides jurisdiction in the District Court and Tenth Circuit Court over contract claims over $10,000, despite Congressional expressions to the converse, in the Tucker Acts 28 U.S.C. §1346(a)(1), 28 U.S.C. § 1491(a) and the like.

Looking to Supreme Court doctrines of statutory construction, if Congress wished the District Court to have jurisdiction over contract claims exceeding $10,000, negating this Court's ability to address them based on res judicata doctrines, as applied here, Congress would have so said. *Cook County v. U.S. ex rel Chandler* 2003 U.S. LEXIS 1957,*26-27;538 U.S. 119; 123 S. Ct. 1239;155 L. Ed. 2d 247 ("It is simply not plausible that Congress intended to repeal municipal liability *sub silentio* by the very Act it passed to strengthen [*27] the Government's hand in fighting false claims."). What is unfortunate, and possibly not contemplated by Congress, is that once full payment of the 1983 agreement could be proven, the District Court should have recognized it had no authority over the government claims and referred the Plaintiffs claims to this Court. The District Court was statutorily barred from using its declaratory judgment powers to declare any District Court- ordered handwritten *offer* to settle, a contract. 28 U.S.C. 2201, Tucker Act and other sources of this Court's exclusive authority. P. App. at 130.

Also, the clear and unambiguous wording of the dismissal of *the government's claims* of August 5, 2002 (P. App. pg. 215-216), did not eliminate one counterclaim of the Plaintiffs'. ***Only*** government claims were extinguished by the District Court, to which the government objected (P. App. pg. 206-206a), and never adhered to (by further billing the Simons for over $4000), after the time for appealing a Tenth Circuit unpublished decision *(U.S. v. Simons*, http://www.kscourts.org/ca10/cases/2003/12/02-4201.htm ) to the Supreme Court had run. P. App. pg. 139a-b.

**THE COURT'S ORDER IDENTIFIES FRAUD AND OTHER CLAIMS AS TORTS OVER WHICH IT CLAIMS NO AUTHORITY**

The Plaintiffs respectfully proffer two reasons why the Court should take authority over the Plaintiffs claims of fraud and other claims associated directly with violation of a fully paid contract. *First*, fraud is found in both torts and contracts. The 2004 *U.S. v. Simons* Tenth Circuit ruling identifies fraud as a contract issue. See (Second) Restatement of Contracts §§ 159-64, 168,169. Here, again, full payment facts are the essential foundation for the Court's authority. If there was full payment for 1983, as ignored by the District Court, then the government's actions in not forbearing collection, by misrepresentations to the Taxpayers and to the District Court, are contractual fraud in carrying out the implied and express terms of the 1983 agreement. Fraud in obtaining the District Court's 2002 judgment negates it as a contract by the Tenth Circuits' own wording, as a contract issue *supra.* The judgments fall like dominos- once the unchallenged facts as to full payment of the 1983 contract are found. Res judicata applies the first and fully paid judgment that could never be altered -by statute. I.R.C.§ 7121.

The government and Court does not say why fraud or mistake in carrying out the terms of the 1983 agreement is solely a 'run of the mill' tort. *Second*, even if the Plaintiffs claims fall within torts, because they rooted in specifically in an identified fraud, mistake, or reckless chain of breaches of a 1983 contract, they fall under this Court's RCFC Rule 9, as contemplated by this Court's jurisdiction over them, and are within this Court's full jurisdiction. [[13]] To hold otherwise would say this Court has authority over contracts, but not over the fraudulent breach of those contracts causing tortuous damages, that here, include, misuse of administrative and judicial processes wherein the government had a duty to disclose full payment, lack of assessment etc.. Again, the split between this Court's and the District Court's authority, would place any injured party in a position of being hailed into two Courts, *one* for prosecution for falsely claimed non payment, with withheld documents, and *one* for entertaining the Plaintiffs' major defense to the District Court's authority, breach of a fully paid contract with damages exceeding $10,000. Once full payment of the contract is provable, this Court only has jurisdiction, and no other Court ever had authority over any other false, fraudulent or mistaken claims. The District Court itself had a duty to defer the case to this Court.

---

[13] *See, Summit Contractors v. Inc. v. United States*, 22 Cl. Ct. 54, 56 (1990) ("[T]he court has repeatedly asserted jurisdiction over claims based on tortuous breach of a government contract.") This Court's authority over tort claims is limited to where the plaintiffs' tort claim is "'entirely dependent on, and in fact evolves from the contract.'" *CTA Incorporated, v. United States*, 44 Fed. Cl. 684, 698 (1999) (quoting *Dureiko v. United States*, 42 Fed. Cl. 568, 582 (1998)). See also *Edwards v. United States*, 19 Cl. Ct. 663, 669 (1990). Where the plaintiff has stated breach of contract claims, lack of contract, and unjust enrichment, "'the fact that the alleged breach is also tortuous does ***not*** foreclose Tucker Act jurisdiction." *Wood v. United States*, 961 F.2d 195, 198 (Fed. Cir. 1992) (citation omitted).

In accord with this Court's Order's jurisdictional statement, these Plaintiffs bring to this Court a violation of the 1983 contract, under statutes, implied and express contract principles, as this Court recognizes as necessary in its jurisdictional statement.

**HOW DO THE PLAINTIFFS ASSERT ALL THE ELEMENTS OF A 2001 CONTRACT, AS DECLARED BY THE DISTRICT COURT, IF THE DISTRICT COURT RECORD SHOWS THEY DO NOT EXIST?**

This Court has set a date of no later than Dec. 15, for these Plaintiffs to file an amended complaint, asserting all the elements of a contract for the 2001 handwritten offer to settle (P. App. p. 130), that was declared a 'contract' by the District Court, that has no authority to declare contract issues involving more than $10,000. The Plaintiffs need the assistance of the government and this Court to show them how to do so, if they can not see those elements. Until the foregoing issues can be addressed by the government and this Court, Plaintiffs pray this Dec. 15 date be delayed until 15 days after the government and Court respond to this motion. A comparison of the 2001 document, with the 1983 contract will show how the elements of a 2001 contract are missing. Further, one must ask, and with the greatest of respect, how this Court would have jurisdiction over the 2001 District Court declared contract, in light of the Court's and government's *res judicata* position on the 1983 contract. Conversely, why would the District Court have jurisdiction over either of them?

The Plaintiffs will now address (1) mirroring of terms, meeting of the minds and unequivocal ucceptance; (2) proper forms and delegated authority to bind the parties; (3) legality of contracts; (4) material consideration; (5) finality of contract, for both the 1983 Tax Court Tenth Circuit Court (Simons v. CIR, fn. 2) contract, and the 2001 District Court-declared 'contract'.

***A Mirroring of Terms, Meeting of the Minds, and Unequivocal Acceptance***

The 1983 agreement for all three years is mirrored in the letters of ***offer*** (P. App. p. 22-28), the District Counsel's Decision, and mutually ***accepted*** underlying IRS work documents and IRS drafted decisions (P. App. p. 12-22) by the initial IRS officers and Taxpayers counsel, working on the stipulated decisions. (P. App. p. 28) …. up until five years after payment….

The 2001 handwritten ***offer*** was intended by the Plaintiffs, to be a universal '***worldwide***' settlement, **all** claims and **all** parties, 'forever discharged, released, extinguished'. (P. Ap. p. 130). The Department of Justice did not accept uequivocally accept the offer. *Kurio, supra*. It instead eliminated the key term of '*worldwide*' and only applied it to 'this' case. By eliminating the term 'worldwide', the original offer was rejected. ***Kurio, supra***. According to the government then, **all** future claims were not extinguished, in the Department of Justice's view. (P. App. pg. 131-132, 206-206b). The Plaintiffs opted for a summary judgment hearing in accord with the offer, and the District Court misunderstood that the Department of Justice had accepted the Plaintiffs offer unequivocally, and ordered them to pay $55,000, refusing to look at the 1983 agreement.

There was never a meeting of the minds as to the full payment of the 1983 contract, and in this case, the government has successfully avoided answering the full payment claims and evidence.

***Proper Form and Delegated Authority to Bind the Parties***

No contract with the government is binding without a signature of a person with delegated authority to bind the government, and without it being on a proper form. *Botany Worsted Mills v. United States*, 278 U.S. 282, 289, 49 S.Ct. 129 (1929).

For the 1983 agreement, the government does not argue the Plaintiffs' undisputed assertions that the final settlement agreement was entered into by counsel with proper authority to bind the taxpayer and the government, nor is there a dispute that the IRS-drafted boiler plate stipulated agreement and underlying work documents were proper forms for ***final*** resolution of the tax dispute for all three years, save for not conforming to policy to specifically designate what 'statutory' interest, I.R.C. 6601(a) or 6601(e), is to apply. (P. App. 112-114). Nor is there a dispute that stipulated Tax Court decisions are contracts. *Simons v. CIR, fn. 2, supra*, *Anthony, Hurt, supra*.

The 2001 handwritten form was not a proper 'closing' agreement form and Jeffery Snow had no delegated authority to bind the government or taxpayers with his signature. (P. App. p. 130) As contracts, tax settlements are governed by general principles of contract law. *Treaty Pines Inv. P'ship v. Commissioner, 967 F.2d 206, 212 (5th Cir. 1992)* ("In contrast, settlement of items not before the Tax Court requires the execution of a Form 906 Closing Agreement signed by an appropriate senior IRS employee. 26 U.S.C. §§ 7121-22;… ") See, *Utah Power and Ligh*t, 243 U.S. 389, 409 (1917) ("Of this it is enough to say that the United States is neither bound nor estopped by acts of its officers or agents in entering into an arrangement or agreement to do or cause to be done what the law does not sanction or permit."). The Department of Justice did not offer the form 906 for the taxpayers to sign to close all 1974 issues with the IRS who had already unilaterally relinquished all 1974 debt prior to 2001. (P. App. p. 108-111).

***Legality of the Contract***

The 1983 stipulated decision contract is provided for by Congress and Tax Court rules of which no one disputes. Since the Tax Court decision was a final stipulated

decision, a closing agreement on all matters dealing with 1972, 1973 and 1974 as memorialized in two Tax Court decisions (P. App. pg. 28-30), any future 'compromise' or 'settlement' is expressly prohibited by 26 U.S.C. §7121, and *res judicata*. The 2001 handwritten offer, even if signed by persons with delegated authority, even if agreed to mutually, changed the terms of the 1983 agreement and is illegal, contrary to public policy, binding on no one. *United States v. Mott*, 37 F.2d 860, 862 (10th Cir. 1930). It is the duty of the Courts to ensure proper regulations and laws are followed. *Stark v. Wickard*, 321 U.S. 288, 310 (1944) "When Congress passes an Act empowering administrative agencies to carry on governmental activities, the power of those agencies is circumscribed by the authority granted * * * The responsibility of determining the limits of statutory grants of authority in such instances is a judicial function entrusted to the courts,"). There was no authority to enter into a second 'contract' for year 1974. *Botany, supra* at 288 ("it is stated that-'Before and since the date of the alleged settlement in this case Congress has evidently proceeded on the theory that no adjustment of a tax controversy between representatives of the Bureau of Internal Revenue and a taxpayer is binding unless made with the formalities and with the approval of the officials prescribed by statute. The authority of officers of the United States to compromise claims on behalf of or against the United States is strictly limited. … The statutes which authorize conclusive agreements and settlements to be made in particular ways and with the approval of designated officers raise the inference that adjustments or settlements made in other ways are not binding.' And further, that 'No ground for the United States to claim estoppel is disclosed in the findings.'). 26 U.S.C. 7121 makes any further contract void.

### *Material Consideration*

All contracts have an adequate mutual consideration obligation. (Second) Restatement §§ 228, 73, 74, 79. In 1983, the parties agreed to mutual consideration as memorialized by the District Counsel's decision and letters of offer, and acceptance by the IRS drafted decisions and work documents. P. App. pg. 28. Once full payment was made, in 1983, there was, in 2001, a preexisting duty of the government to forbear collection. That preexisting duty was inadequate consideration for any 2001 alleged agreement, even if the citizens obeyed the Court and paid $55,000. [ [14]]

### *Finality of the Contract*

The Tenth Circuit in *Simons v. CIR, supra*, did not find the 1983 Tax Court decisions to be some type of installment agreement, or that the parties intended to pay a little here and a little there, or pay for only five years of forbearance. Certainly, if the Plaintiffs believed their payment would only provide them with five years worth of peace from further collection for any of the three years involved in the single agreement (P. App. pg. 28), they would not have agreed to such a contract. Finality of the dispute for

---

[14] *Alaska Packers Assn. v. Domenico*, 117 F. 99 (9th Cir. 1902)("No astute reasoning can change the plain fact that the party who refuses to perform, and thereby coerces a promise from the other party to the contract to pay him an increased compensation for doing that which he is legally bound to do, takes an unjustifiable advantage of the necessities of the other party. Surely it would be a travesty on justice to hold that the party so making the promise for extra pay was estopped from asserting that the promise was without consideration. A party cannot lay the foundation of an estoppel by his own wrong, where the promise is simply a repetition of a subsisting legal promise. There can be no consideration for the promise of the other party, and there is no warrant for inferring that the parties have voluntarily rescinded or modified their contract. The promise cannot be legally enforced, although the other party has completed his contract in reliance upon it." … To permit plaintiff to recover under such circumstances would be to offer a premium upon bad faith, and invite men to violate their most sacred contracts that they may profit by their own wrong. ")

three years was absolutely clearly the goal of all parties in 1983, as adjudged by the letters of offer and the IRS' District Counsel's Decision and five years of silence after the 1983 payment for all three years. EXHIBIT A shows the U.S. claimed finality in 1999. Does such finality apply only when the Plaintiffs are unable to show they fully paid?

With the 2001 alleged District Court-declared 'contract', ***there is no finality***. The government is in a position now to potentially claim they forgave an enormous debt that should now be declared as income under 26 U.S.C. §108, and §61. Cancellation of debt income, often referred to as "COD income," is a term that is interchangeable with income arising from a "discharge of indebtedness." *See Alpert v. United States, 430 F. Supp. 2d 682, 685 n.1 (N.D. Ohio 2006)*. For tax purposes, a discharge of indebtedness is defined as "gross income." See 26 U.S.C. § 61(a)(12). Simply put, when a taxpayer owes a debt that is later discharged or released, the taxpayer is viewed as having "realized an accession to income." *Alpert, 430 F. Supp. 2d at 685, n.1*. "Forgiveness of debt is income because it frees up assets that the taxpayer previously had to dedicate toward repaying its obligations." *Pugh v. Comm'r, 213 F.3d 1324, 1326-27 (11th Cir. 2000) (citations omitted).* The government does not dispute this potential result, without this Court finding full payment of the 1983 contractual agreement.

Certainly, if the government were to seek, for example, tax fraud claims for the Plaintiffs not declaring a forgiven debt in 2002, a new issue for the 1974 account, the Plaintiffs can argue the District Court extinguished the government claims, but upon what authority, on what legally binding contract, on what properly designated form? The District Court judgments do ***nothing*** to permanently end the government's pursuit of the Plaintiffs, and only exacerbate and worsen the Plaintiffs' vulnerability to potential future

collections. Given the Plaintiffs and government's history, saying 'trust us' we won't collect further, is simply inadequate.

Full payment of the 1983 contract provides the alternative claim for takings within this Court's authority. As for takings claims, property is not defined solely as land. Utah recognizes a person's property interest in their professional licenses. Here, the government from 1988 through 1995, used the reputation of the Simons to demonstrate what happens to persons who do not allegedly pay their taxes. The problem is they did. The claimed a debt owed for year 1974, resulting in levies and liens, ruined the Plaintiffs' credit, and directly prevented them from fully using Mr. Simons property interest in land, but also his real estate license to freely develop, trade, buy and sell his own properties, including his developing his interest in 5000 acres, part of which is currently valued at well over about $130 million dollars. Mr. Simons and the partnership he was involved in, built a road and took other affirmative steps to develop the property, and to purchase additional partnership interests, barred by the levies and liens-- the Simons ONLY bad credit. The government was on notice as to its depriving Mr. Simons of his use of his abilities and these property interests by its illegal levies and liens, in violation of the 1983 fully paid contract. P. App. p. 70 entry 8/17/88.

## PRAYER FOR RELIEF

Based on the foregoing, Plaintiffs request that the Court's judgment be clarified and amended and reversed, in regards to the key issue upon which all person's rights depend- all the Court's jurisdiction depend, and finality to this dispute depends, i.e. full payment of the 1983 Tenth Circuit Court- declared contract, the breach of which the District Court could have no jurisdiction to resolve, and which is solely within this

Court's statutory jurisdiction. *Botany Worsted Mills v. United States*, 278 U.S. 282, 289, 49 S.Ct. 129 (1929) ("Where the Court of Claims does not make a finding upon the ultimate question of fact [full payment of the 1983 agreement], upon which the rights of the parties depend, …such findings will not support a judgment…..").  The issue is one of a material fact, and the government does not dispute it with any evidence, or facts supported by any evidence whatsoever. The Plaintiffs pray for the Court to reverse its dismissal, and grant them summary judgment.

It is simply not enough for the government to say these citizens did not pay, as a bald and unsupported assertion, to try to create a material fact question, and have this august and respected Court rely on it to negate all the Plaintiffs unchallenged evidence.. Particularly here, when the citizen's evidence can account to within 7 cents of showing how what was collected for all three years in 1983 satisfied all three years, along with expert reports, and evidence of manager supervised steps taken to bar further collections….. no matter how the IRS computer had to credit it, because the computer is incapable of crediting the payments with restricted interest any other way, as shown by veteran IRS appeal officer testimony in the Court's record. P. app. p. 119-122..

The Plaintiffs are uniquely sensitive to the idea that the government and Court's do not like to have Plaintiffs challenge them or their decisions. Yet, to obtain *finality* and peace in regards to the 1974 tax year, and to prevent further possible collection activities, the Plaintiffs are left with no choice. If 'justice', the correct application of law, patriotism, rests on citizens doing as they are told without question, even as here when the government had a duty to disclose all information to them, then why have Courts of law? Patriotism lies in upholding Constitutional and statutory protections of the citizens

from the most powerful government agency in the world as we are all sworn to do. World Wars are fought because some do not wish to admit error. Such pride and recalcitrance should not play a role when citizens are needlessly pursued for 25 years, as here.

The Plaintiffs here humbly seek silence and finality and, yes, expectation damages and takings damages for the deprivations and injuries they suffered for a quarter of a century of threats of seizure, public humiliation, negative labeling by the government and Courts, without just cause, and the stress of potential loss of all they had worked to obtain for their family. They are ***not*** malcontents, criminals, tax protestors, nor deal welchers. They are taxpaying, obedient citizens of the United States and victims of the government they and others pay to protect them.

There is no doubt that simplicity of tax law cases in Courts is promoted by

- ignoring the government's withholding of their evidence of full payment of the first contract, denying its existence, and even saying extensions necessary for computing assessment statute dates did not exist,
- ignoring the evidence of the government not meeting the prerequisites of District Court jurisdiction
- ignoring the citizen's proof of full payment of the first contract, once it is obtained
- ignoring the lack of finality and government agreement to any second 'contract'
- ignoring Congressional bars on such subsequent 'contracts'.

and simply order them to pay an arbitrary and capricious additional amount, legitimizing the falsely claimed debt, **All-** forcing the citizens into a situation with years ahead of potential collection or tax fraud litigation, if they don't declare as income any alleged

forgiven ‘debt’ by the second alleged ‘contract’, barring them all finality on the first contract already determined as to contract elements by the Tenth Circuit court, but ignored by the District Court and all other Courts. Such may promote simplicity, but negates Congressional enactments to protect these taxpaying obedient citizens from the government’s unjust enrichment at their expense.

Full payment of the 1983 contract and the governments violation of that contract was asserted from the inception of the District Court action. For this Court of exclusive contract jurisdiction to deny these Plaintiffs’ relief, allows actions of District Court, never having authority over any further collections on the fully paid 1983 contract, or authority over the Plaintiffs’ contract claims, to usurp THIS Court’s particularly valid authority, under the Tucker Act, 28 U.S.C. 1346, 1491 found in this Court’s order’s jurisdictional statement. The government can not persuade this Court to relinquish what Congress expressly grants to it. *Federal Trade Commission v. Raladam Co*., 283 U.S. 643, 649 51 S.Ct. 587 (1931)( "Official powers cannot be extended beyond the terms and necessary implications of the grant. If broader powers be desirable, they must be conferred by Congress. They cannot be merely assumed by administrative officers; ***nor can they be created by the courts in the proper exercise of their judicial functions***."). Every contractual duty of the government under the 1983 contract for 1974 was violated, and this is the only Court with authority to hear those claims arising from those breaches. However, withheld documents delayed the citizen’s ability to prove their claims, and when obtained, the Courts have ignored them. ***See, Kurio, supra***. Any statutes of limitation are extended when documents are withheld or they are brought in the wrong court, and the ongoing acts by the government, the last of which is identified as occurring

in 2004, under the continuing claims doctrine. *Boling v. United States*, 220 F.3d 1365, 1373 (Fed. Cir. 2000). See *Kurio*, for equitable tolling for contracts.

Simply, the government has already argued the finality of the Tax Court decisions, EXHIBIT A, recognizes they could not challenge the Tax Court decisions without the Tax Court first vacating those decisions (id) making any District Court subsequent contract for 1974 void, and recognizing that if full payment is proven, then the District Court clearly had no authority over a government party without standing. *Chevron, supra.* Any usurpation of power by the District Court would be based on its not being advised early on of the withheld evidence of full satisfaction and accord by the government, and also the withheld proof of the government not meeting the prerequisites for the District Court to exercise its authority. Once the proof was produced, however, there is no 'erroneous' exercise of power when the Court intentionally ignores it, be that the District or Circuit Court. All are bound by the restraints of 26 U.S.C. 7121, 28 U.S.C. 2201, and anything else is clearly outside the Court's authority, to even correct, in light of 28 U.S.C.§§ 1346 and 1491. The government can't have it both ways. If the 1983 agreement was final [exhibit A], then no subsequent District Court agreement can alter, or displace or amend it, and all further collections for the 1983 fully paid judgment are a clear usurpation of authority falling within the 'void' judgment rule, all contract issues identified in *U.S. v. Simons*, 2004, *supra*, falling within the Tucker Act exclusive jurisdiction.

**CONCLUSION**

Factually finding if the 1983 judgment is fully paid, is necessary for this Court's accurate determination of its own jurisdiction and a valid judgment. *Botany.* As to any

other tort claims that this Court determines are not expressly connected with the government's breach of their duty to forbear collections on the fully paid 1983 contract, or retaliation for raising their claims, the Plaintiffs request the government and Court to explain how they are not related to the breach of duties for the fully paid 1983 contract, or retaliation for raising their counterclaims and refusing to pay again more than was owed in 1983, and issue an order remanding those unassociated claims to District Court for resolution.

For all the forgoing reasons, these Plaintiffs humbly seek all relief as is fair in equity and just under the law, and seek the clarification, amendment and reversal of the Court's order of dismissal and granting of the Plaintiffs' summary judgment motion as to liability, leaving damages, including the return of their 2002 payment of $55,000 and all their damages from the District Court action, for further briefing and a full damages hearing.

So signed this 7th day of December, 2006
/s/ Susan Rose, Utah Bar no. 7985
*Counsel for the Plaintiffs*
9553 South Indian Ridge Drive
Sandy, Utah 84092
Phone/fax (801) 545-0441
This case is electronically filed, and therefore, is understood to be served by the Court to opposing counsel electronically.

**EXHIBIT A**
**THE PLEADING OF THE GOVERNMENT IN THE 10TH CIR. IN 1999 SHOWING THE GOVERNMENT RECOGNIZES THE 'VOID JUDGMENT' RULE THAT ALLOWS FOR COLLATERAL ATTACK ON A VOID JUDGMENT, BY A COURT THAT IS USURPING ITS AUTHORITY AND THAT CAN NOT BE CORRECTED ON REVIEW OR APPEAL, RECOGNIZING THE FINALITY OF THE TAX COURT DECISIONS OF 1983**

**IF THERE IS FULL PAYMENT OF THE 1983 TAX COURT 'FINAL' CONTRACT DECISION, THEN THE DISTRICT COURT HAD NO AUTHORITY TO BEGIN WITH, AND NO AUTHORITY NOW TO MAKE ANY FINDINGS, MUCH LESS AS TO BREACH OF CONTRACT CLAIMS FOR DAMAGES IN EXCESS OF $10,000**

IN THE UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT

---

Nos. 98-9012 & 98-9013

DANNY C. SIMONS and SALLY J. SIMONS,

Petitioners-Appellants

v.

COMMISSIONER OF INTERNAL REVENUE,

Respondent-Appellee

---

ON APPEALS FROM THE ORDERS OF THE
UNITED STATES TAX COURT

---

BRIEF FOR THE APPELLEE

---

STATEMENT OF SUBJECT MATTER AND APPELLATE JURISDICTION

On February 11, 1998, Danny C. Simons and Sally J. Simons (taxpayers) filed two motions in the United States Tax Court entitled "motion for leave to file a motion out of time to vacate a stipulated Tax Court decision for lack of subject matter jurisdiction." One of these motions was filed in Tax Court No. 10312-79 (*Danny C. and Sally J. Simons v. Commissioner*, No. 10312-79, Doc. 12),[1] and the other was filed in Tax Court No.

---

[1] "Doc." references are to documents in the original records of Tax Court Nos. 10312-79 and 13016-80, as numbered on the docket sheets of the Tax Court.

(1993), citing *Brannon's of Shawnee, supra; Campbell v. Commissioner*, 55 T.C.M. (CCH) 367, 369 (1988).

**B. Since the Tax Court had jurisdiction over taxpayers' cases, they fail properly to invoke the "void judgment" rule**

It is clear (despite taxpayers' claim to the contrary (Br. 26)) that taxpayers' motions to vacate the decisions in these cases were not timely filed, *i.e.*, within 30 days after entry of the decisions. The decisions in their cases were entered on April 20, 1983 (No. 10312-79, Doc. 13; No. 13016-80, Doc. 10), and taxpayers did not submit their motions to vacate the decisions to the court until February 11, 1998, almost 15 years later. *See Webb v. Commissioner*, 68 T.C.M. (CCH) 1106, 1112 (1994)("no question the petitioner's motion [to vacate filed 5 months after entry of the decision] was untimely"), *aff'd*, 68 F.3d 482 (9th Cir. 1995), *cert. denied*, 517 U.S. 1244 (1996). The decisions were therefore final, and, as discussed above, a motion to vacate could be filed only with leave of the Tax Court and could be granted only if taxpayers could show that the Tax Court lacked jurisdiction to enter the decisions or that the decisions were entered as a result of fraud upon the court. Otherwise, the Tax Court lacked jurisdiction to set aside its final decisions. As we shall demonstrate, taxpayers' contention

doctrine. A court's erroneous exercise of subject matter jurisdiction is not subject to collateral attack. "The court has authority to pass upon its own jurisdiction and its decree sustaining jurisdiction against attack, while open to direct review, is res judicata in a collateral action." *Chicot County Dist. v. Bank.*, 308 U.S. 371, 320 (1940). Even if a court does not expressly rule on matters relating to the exercise of jurisdiction, if the parties could have challenged the court's power to hear a case, then res judicata principles serve to bar them from later challenging it collaterally. *Id.* at 378; *Insurance Corp. v. Compagnie Des Bauxites*, 456 U.S. 694, 702 n.9 (1982). Applying this principle to the Rule 60(b)(4) context, the courts have held that the exercise of jurisdiction must be more egregious than the type of error that could be corrected on direct review; it must involve a clear usurpation of power by a district court. *See, e.g.*, *Kansas City Southern Ry. Co. v. Great Lakes Carbon*, 624 F.2d 822, 825 (8th Cir. 1980); *Lubben v. Selective Service System Local Board No. 27*, 453 F.2d 645, 649-650 (1st Cir. 1972); *see also Picco v. Global Marine Drilling Co.*, 900 F.2d 846, 850 (5th Cir. 1990); *United States v. Zima*, 766 F.2d 1153, 1158 (7th Cir. 1985).