**UNITED STATES COURT**
**OF FEDERAL CLAIMS**

Danny C. Simons and Sally J. Simons

*Plaintiffs*,

vs.

UNITED STATES OF AMERICA, Case No. 06-115

*Defendant*. The Honorable Judge Susan Braden

---

MEMORANDUM IN SUPPORT OF THE
PLAINTIFFS' MOTION TO STAY PROCEEDINGS

---

NOW COMES THE PLAINTIFFS, by and through undersigned counsel, under RCFC Rule 62 and 7 to move the Court to stay its judgment based on its November 30, 2006 order, due to an appeal of this Court's November 30, 2006 Order that dismissed the Plaintiffs' entire complaint, with permission to amend, and the appeal from the United States District Court of Utah, central division, refusal to vacate its judgment/orders of 2001, and 2002, refusal to remand these Plaintiffs' Contract claims to this Court.

This case involves (1) a Tenth Circuit Court ratified *bona fide* 1983 final closing settlement agreement memorialized in two Tax Court decisions, *Simons v. CIR*, 10th Cir. docket no. Nos. 98-9012 & 98-9013, July 12, 1999 [[1]].and 2) a later 2001 District Court-declared agreement and 2002 final judgment for the same tax year 1974, also upheld by

[1] *Simons v. C.I.R., supra*,( "This particular part of their dispute began in 1979, when the IRS issued a notice of deficiency relating to taxpayers' 1974 income taxes. The taxpayers filed a petition for redetermination with the Tax Court on July 13, 1979, disputing the notice of deficiency (Tax Ct. No. 79-10312). In 1980, the IRS issued another notice of deficiency, this time relating to taxpayers' 1972 and 1973 income taxes. Again, the taxpayers filed a petition for redetermination in Tax Court disputing the notice of deficiency (Tax Ct. No. 80-13016). During the course of the Tax Court proceedings, the taxpayers' counsel negotiated with the IRS to settle the disputed taxes. The record before us does not contain a copy of the settlement agreement ultimately reached between the taxpayers and the IRS, but it does contain some correspondence from the taxpayers' counsel concerning proposed terms of the settlement. On April 22, 1983, the Tax Court entered decisions in both cases, each of which purported to be "[p]ursuant to agreement of the parties." Tax Ct. Rec. No. 79-10312, Doc. 13 at 1; Tax Ct. Rec. No. 80-13016, Doc. 10 at 1. In No. 79-10312, the Tax Court found that the taxpayers owed additional taxes of $17,071 and a negligence penalty of $854 for tax year 1974. In No. 80-13016, the Tax Court found that the taxpayers owed no additional taxes or penalties for tax year 1972, but that they owed additional taxes of $23,573 and a negligence penalty of $1,179 for tax year 1973.

The taxpayers allege that they sent the IRS a check for what they believed to be the total obligation due under their settlement agreement with the IRS for tax years 1973 and 1974. They further allege that the IRS erroneously applied the entire payment toward their 1973 tax obligations, plus interest. The IRS has since commenced proceedings in federal district court to collect the allegedly unpaid 1974 tax obligation. ")

the Tenth Circuit Court. *U.S. v. Simons*, http://www.kscourts.org/ca10/cases/2003/12/02-4201.htm Plaintiffs claimed protection from government acts via 1983 *res judicata*, claim preclusion, and breach of contract, and a chain of breach of contract claims and takings claims and fraud and mistake pursuant to RCFC at Rule 9, and contract-associated torts. The government claims protection from the Plaintiffs under a 2002 'consent' decree judgment, *ordered* to be paid and written by Plaintiffs by the District Court, based on the District Court's declaration of a 2001 handwritten offer as being a binding contract The Tenth Circuit court also found, regarding the 2001 alleged agreement, the ' rule [against challenging a consent judgment] does not apply, however, if "lack of actual consent, fraud in obtaining consent, lack of federal jurisdiction, or mistake are shown,". *U.S. v. Simons*, Tenth Cir. 02-4201, Jan. 22, 2004 [unpublished but binding on this case]. This Court adopted the government's position with the exception of allowing the Plaintiffs to amend their dismissed complaint for breach of the 2001 alleged handwritten agreement. Without first having factual findings as to their evidence in regards to the 1983 claims, the facts and evidence do not support any 2001 agreement, and to date, all Courts have ruled *sub silentio* on Plaintiffs claims of no meeting of the minds, no consideration, and so forth.

***Rule 62 Stays***

RCFC Rule 62 provides for stays in the interest of justice. The discretion of the Court is broad. For some aspects of Rule 62, the Court may prefer the Plaintiffs meet four parts of injunctive relief. *Hawpe Constr., Inc. v. United States*, 46 Fed. Cl. 571, 582 (2000).

***Likelihood of Success to Have the Plaintiffs' Claims Heard in this Court***

A debt owed (standing), timely 26 U.S.C. 6215 assessment and 26 U.S.C. 6303 timely written notice and demands are prerequisites to the District Court's authority over government collection actions. If they are missing, this Court can not give the District Court or Circuit Court rulings deference. See, *Crnkovich v. United States*, 202 F.3d 1325 (Fed. Cir. 02/01/2000) 2000.CFC.0042038 http://www.versuslaw.com[¶[104, 105]

> "This court's role, however, is simply to apply the tax laws as Congress drafted them. Congress has determined that a crucial part of its statutory scheme covering taxes is the inclusion of statutes of limitations. …It was the IRS's failure to timely record the tax assessment that resulted in its giving the erroneous tax refund…."

Id.

*Also, Christopher Village, L.P. v. United States*, 360 F.3d 1319 (Fed. Cir. 03/08/2004)

> "A void judgment is to be distinguished from an erroneous one, in that the latter is subject only to direct attack. A void judgment is one which, from its inception, was a complete nullity and without legal effect. . . ..". *Lubben v. Selective Serv. Sys. Local Bd. No. 27*, 453 F.2d 645, 649 (1st Cir.

1972)) [[2]]

Clear and convincing evidence shows A) the 1983 agreement was fully paid so there was no government injury for standing in District Court or to raise any counterclaims here, (*Lewis v. Cont'l Bank Corp*., 494 U.S. 472, 477-78 (1990)) , nor government consideration for any second final closing agreement based on a preexisting duty to

---

[2] . *Osborn v. United States Bank, 9 Wheat. 737; Smith v. Adams, 130 U.S. 167;* Story on the Constitution, 4th Ed., § 1646; *In re Pacific Ry. Comm., 32 Fed. 241.* It is fundamental that "the controversy, in a suit, is the one actually presented by the pleadings, and not what it might have been." Vulcan Detinning Co. v. American Can Co., 130 Fed. 635. Consent, as in any filings in the District Court, does not confer jurisdiction where there was no "case" or "controversy," within the meaning of the Federal Constitution. Little v. Bowers, 134 U.S. 547; California v. San Pablo R. Co., 149 U.S. 308; Muskrat v. United States, 219 U.S. 346; Torrence v. Shedd, 144 U.S. 527; Liberty Warehouse Co. v. Grannis, 273 U.S. 70. *See Freytag v. Commissioner*, 1991 U.S. LEXIS 3818,*49-50 ;501 U.S. 868;

forbear collections after payment. *Alaska Packers Assn. v. Domenico*, 117 F. 99 (9th Cir. 1902). [[3]] ; B) there was no timely assessment under 26 U.S.C. 6215 or written notice and demand under 26 U.S.C. 6303, as Congress requires before further collection can be made. [[4]] Without dispute, the 1983 contract is *final* for all aspects of the years involved. *Hurt v. United States*, 70 F.3d 1261 (4th Cir. 11/30/1995) ("The signed agreements between the parties were clearly meant to settle all issues in dispute with respect to the 1986 tax year, not merely the matter as pending before the Tax Court.").

---

[3] The Simons Contract and proof of full payment consists of *at least* seven elements:

a. the IRS' District Counsel's decision [P. App. 28] memorializing the acceptance of the Simons offer [P. App. 22-28] and terms of the agreement for all three tax years 1972, 1973, and 1974,

b. the Simons' offer to settle showing offers nearly perfectly mirroring the District Counsel's decision and showing negotiations, [P. App. 22-28];

c. the IRS drafted two tax court decisions including the IRS drafted underlying Tax Court rule 155 computational documents inseparable from the Tax Court decisions that unify all three years by income averaging and that were identical for all three years, [P. App. 12-21]

d. signatures of persons with proper authority to sign the documents and bind the parties, [Id.]

e. Collection [P. App. 140] and Payment [P. App. 51] of the only amount collected for all three years of $49, 546.55, in 1983, and

f. A CPA certified calculation showing how the entire payment for all three years satisfies tax, penalties and interest to within .07 cents [P. App. 52];

g. A 25 year veteran IRS appeals officer's statement showing that it would be 'astronomically impossible' to reconstruct a three year multiple year settlement with income averaging to within .07 cents, using IRS rev. proc. Tables and eight place factoring numbers as applicable, unless the government calculated it the same way. [P. App. 119-122]

[4] Lack of timely assessment 26 U.S.C. 6215 and written notice and demand, 26 U.S.C. 6303 was shown by a) an internal manager supervised late assessment that would have prevented further collection on the 1974 account so as to compensate for an IRS computer incapable of properly posting restricted or limited interest amounts, [P. App. 5] and b) a form 872 statutory assessment expiration date extension until a time certain. [P. App. 57-59] and the necessity of the Plaintiff Mr. Simons to write down the amount being collected on a business card from a phone conversation because there was no written notice and demand. P. App. 140.

Finally, the record shows there was no handwritten agreement as it was (1) not signed by anyone with authority, (2) had no meeting of the minds [[5]]; the Plaintiffs were acting under the duress not being able to meet their burden of proof, by supplementing the record with evidence withheld in 8 years of litigation from 1992 until 2000, [[6]] and a District Court refusing to consider the 1983 agreement. [[7]]. There could be no consent actually if the District Court prevents a person with evidence as to the Court's authority from using it or seriously having it considered after it was withheld so long.

---

[5] **Offer**: The 2001 handwritten offer, later declared contract, reads as follows:

"1. Snow to recommend to his superiors a "worldwide" settlement (all claims in any way related to the matters in this case (thurmond, Lusty, Lawson, etc.) For a cash payment of $55,000 on behalf of [?] offeror Dan C. Simons, by cashier's check, to the Deparment of Treay 30 days after notification of offer's acceptance.
2. If the Department does not accept, Plaintiffs' motion for summary judgment will be [ set?] for argument.
3. If Simons' payment is not made, Plaintiffs' Motion will be [set? ] for argument.
4. Upon payment all IRS claims against the Simons (Dan & Sally & all the defendants named in this case 2:92cv10718 will be forever discharged, released, extinguished- and any and all lines assessments etc. shall be released if they have not already been released.
[Signed Dan C. Simons Jeffrey Snow Susan R. Schildmeyer] "
(P. Am. Complt. App. pg. 130)

**Lack of Acceptance and Counteroffer:** The government's response reworded the handwritten offer, deleted the term 'worldwide'and then stated
"If the proponent agrees to the conditions set forth above, then the Simons need to cause a cashier's or certified check, made payable to the United States Treasury to be received at this office within 30 days after your receipt of this letter." P. App. pg. 207-208. . The government's response letter was clearly a counteroffer that extinguished its acceptance of the original offer. (Second) Restatements of Contract at §§59 and 60. The government told the District Court it was preserving potential claims not currently in the case before the Court. P App. 206a.

[6] "….and under the circumstances that that was an inappropriate effort to increase the factual record or supplement the factual record which was, in any event, untimely." Transcript of March 21, 2001 plt. App. pg. 219.
[7] "..they want to work backwards all the way back to 1973 and '74 and 1983 and the Court is having none of it." Transcript of June 18, 2002 District Court plt. App. pg. 230

***Public Policy Supports the Plaintiffs Position of Keeping the 1983 Agreement in Tact***

Public Policy demands this Court, and only this Court hear Contract claims. 28 U.S.C. 1396, 1426. Once there is a final closing agreement, memorialized in Tax Court decisions, that there be no further annulment, disregard, modification of those agreements. *Anthony v. United States*,987 F.2d 670(10th cir.1993); *Kurio v. U. S.*, 429 F. Supp. 42, 1970.STX.0000028http://www.versuslaw.com, *Hurt v. United States*, 70 F.3d 1261(4th Cir.1995; 26 U.S.C. §7121 and 28 U.S.C. §2201. The Freedom of Information Act and Privacy Act demand records in existence be disclosed.[[8]] CPA Dennis Larsen

---

[8] FOIA and Privacy Act responses show on the appendix pages

a. September 26, 1991"
"I have reviewed your account
and verified that the letters were sent to you as required by law." 165

d. Simons are given some forms relating to tax liens and a
Delegation order "forms relating to Levies…. " but not
To the individual employees. 166

e. "24 Feb 1992" Dept. of Treas. Appeal response. Both the
Ogden Service Center and Salt Lake District Office responded
That there were no records responsive to the Simons request
Therefore **<u>'there was no denial of records"</u>** 167

f. "2 April 1992" the statutory period for appeal has passed. 168

g. "June 23, 1992" Privacy Act appeal response, person must
"Specifiy the name and location of the particular system of records" 169
(i)Special Procedures function is not on any IRS public org. charts.

h. "30 Jul 1992" Appeal response for FOIA request, "We should
point out that I.R.C.§ 6404(b) specifically excludes any taxpayer
initiated request for abatement of income taxes. …We have
checked our IDRS terminal, and there are no abatements pending
for you account for the years you were questioning." 171

j. "Aug 11 1992" "…a search was conducted, but no records
responsive to your request were located." 172

k. "Aug 14, 1992" FOIA appeal response telling Simons to
contact the Ogden Service Center and no agency records have
been withheld. 173

l. "28 Oct 1992" Mrs. Simons' FOIA appeal. "The statutory
period for a response has expired….there are ample administrative and judicial
procedures and safeguards to review the Service's activities and
afford you with due process." [ not without key documents withheld] 174-75

asserts he was denied records administratively and even the identification of code sections the IRS was using . App. pg. 117-119 at 118). Prior Attorney Patricia White, dean of the Sandra Day O'Connor School of Law states she was never able to determine the basis for collection. ( Ap. pgs. 123, 125). She specifically asked for the original returns and extensions of the statutes of limitation for assessments and was denied these (P. App. at 125), and letter of settlement offer showing her understanding records had been destroyed. P. App. at 64-66a), There is no doubt the IRS officer Don Thurman had the records and knew and understood why he was not releasing them, even discussing the Plaintiffs' tax matters with another person. [9] 28 U.S.C. 455 demands a Court recuse

---

m. "May 11, 1996" the Department of Treasury appeal responds to Mrs. Simons' letter of "October 23, 1991" providing her with redacted Document 176

O. "Oct 22 1996" Appeal response, "Records concerning the processing, assessment, examination, collection and investigation of tax accounts are maintained in the Service Center or District Office in which such actions took place. " [no one states that Records are in Special Procedure function" ] 177-178

p. "Nov. 7, 1996" IRS service center unsigned FOIA response stating they found no records and they should inquire at the Rocky Mountain District Office. 179

(107) **The government also informed Mr. Simons that there were <u>no consents for extensions of time signed by him, or they were destroyed</u>. (P. Am. Complt. Ap. 137-138) compare (P. Am. Complt. Am. 58) not disclosed until 2000 ( P. Am. Complt. Am. 127)**.

[9] The IRS Revenue Officer Thurman on 7-11-88 a) obtained the original file, b) copied the original file, c) noted "District Counsel agreed to settle by clearance of major penalties & minor tax changes" and d) noted " 1972 & 1973 are closed satisfied. Appears to be No open issues on 1974", (P. Am. Complt. Ap. 68) e)also notes "told him [Simon's cpa] without any evidence that bal due is in error I must proced with ECA [enforced collection action] He sd TP will fight it in court. I sd on what basis & if that is what he wants to do." On 9/8/88 (Aplt. Am. Complt. Ap. 71a). Mr. Thurman understood the importance of the Simons and their tax professionals having their records.

Mr. Thurman documents that the Simons and their CPA were looking for their records to give to Mr. Thurman on 8-17-88 P. Am. Complt. Ap. 70, and 8-18-88

itself, sua sponte, if there are circumstances that tend to cloud the perception of objectivity of a Court. Judge Benson was being considered for an appointment with the Department of Justice on February 6, 2001, just about 40 or so days prior to the March 21, 2001 ruling for these Plaintiffs not to be able to supplement the Court record and make an offer to settle. [[10]]

*Alaska* found that if the U.S. can enter an agreement, withhold records, and then profit again from the withholding, it would become common practice. Contract common law, *res judicata* and claim preclusion of the 1983 agreement and Article III and the 5th Amendment of the U.S. Constitution are offended when a District Court or other Courts circumvent the finality of the Tax Court stipulated decisions, and stipulated Tax Court Rule 155 IRS computations. Additionally, for there to be a final 2001 or 2002 closing agreement with the IRS it had to be on a form 906. *Chrnovich, supra.* The handwritten offer was anything but a form 906. A reviewing Court for the 1983

---

(id.), 9/1/88 (P. Am. Complt. Ap. 71a), 11/21/88 (P. Am. Comp. Ap. 72), 11/12/89 (P. Am. Comp. Ap. 73)

Mr. Thurman notes a conversation with 'Dal' who said, " could do on the IMF easily" "don't need to prove insolv." (P. Am. Complt. Ap. pg. 75)

Mr. Thurman, having the original file in his possession, not giving it to the Simons or their CPA or lawyer who were looking for the records, noted that "Case does not appear to be pursued actively by IRSC ever" (8/2/88)(P. Am. Complt. Ap. pg. 69) and "Appears TP is wealthy & paying little or no tax." (7/26/88) (P. Am. Complt. Ap. pg. 68)

[10] http://www.appointee.brookings.org/resourcecenter/tracker2.htm (The Brookings Project). Further, since 2004, the U.S. Attorney for Utah has been Brett Tolman, over this case, clerked for Judge Benson, from 1998-2000, and was privy to any discussions of the case in chambers with Judge Benson. Deseret News, January 18, 2004, People on the Move column. No one advised the Plaintiffs of this relationship.

agreement, is not to substitute its judgment for that of the agency. *Citizens To Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 416-20 (1971). [[11]]

***Irreparable Harm Will Occur Unless this Court Stays Its Proceedings***

The upholding of the 2001 handwritten document over that of a fully paid Tax Court agreement that was final and closing (*Hurt, Anthony, and Kurio, supra*) legitimizes a 'debt' that was never owed, leaving these Plaintiffs vulnerable to potential future collections under 26 U.S.C. §§60 and 108, with potential fraud penalties These future potential claims were precisely the reason the government refused to accept the word 'worldwide' for all claims in any way connected with the 1974 account. *Crnkovich.* Additionally, representatives of the Government, all personnel connected with the litigation in District Court and in this Court, including counsel, had an obligation "to be frank and fair and disclose all the facts." And also, accurately represent the true status of the law. *Campbell v. Eastland, supra,* at 485; *accord, United States v. San Antonio Portland Cement Co.,* 33 F. R. D. 513 (W. D. Tex. 1963). Upholding any judgments obtained without the government acting absolutely honestly, is irreparable harm.

***Harm to the Plaintiffs greatly outweighs any harm to the Government***

Non Monetarily, the Plaintiffs have been deprived of their Constitutional rights to meet their 26 U.S.C. 7422 duty, by Courts refusing to recognize all of their evidence that is unchallenged and *unchallengeable.* The Supreme Court "where Congress intends to preclude judicial review of constitutional claims its intent to do so must be clear."

---

11 Five or ten years from now, after interest has been compounding daily for years, the government may possibly charge the Plaintiffs with fraud for not declaring as a 'forgiven debt' under 26 U.S.C. §§60 and 108. How can any Court in the future deny the government statutorily-protected potential claims as against a District Court extinguishing them based on an 'agreement' that has not one component of a contract. Court orders can not violate statutes and these Plaintiffs are at risk.

*Demore* v. *Kim*, 538 U.S. 510, 517 (2003) (quoting *Webster* v. *Doe*, 486 U.S. 592, 603 (1988)); *see also Johnson* v. *Robison*, 415 U.S. 361, 367 (1974).

Monetarily, the Plaintiffs have expended, non inclusive of this counsel's fees, about $300,000 for the 1983 contract through the 2001 ruling of the District Court in their defense. Such is not a frivolous feud. It is business man, whose credit ratings show he is meticulous in paying his creditors (P. App. pg. 85-95), looking ahead to potential claims on an absolutely illegitimate debt the government can claims was 'forgiven'. . Millions of dollars in foreseeable damages resulted from the years of foundationless collection actions after 1983, while the government not only withheld, but mislead the Plaintiffs as to the existence of, their records. Socially, economically, the destruction of their abilities to use their professional licenses, in which they had a Utah recognized property interest for years, is irreparable, and will continue unless this Court keeps its jurisdiction and stays proceedings until a higher court can sort out the conflict of statutes and courts. There *is no harm* to a government already collected in full 2 times.

***Conclusion***

Based on the foregoing, Plaintiffs pray this Court will stay proceedings until the Court of Appeals for the Federal Circuit can determine the foregoing aspects of the 1983 agreements, unless this Court is going to reverse its findings and conclusions in the November 30, 2006 decision.

So Signed this 9th day of January, 2007
/s/ Susan Rose
9553 South Indian Ridge Drive
Sandy, Utah 84092 801-545-0441

It is understood this is an electronic file case, and the motion will be served electronically. /s/ Susan Rose

**UNITED STATES COURT**
**OF FEDERAL CLAIMS**

Danny C. Simons and Sally J. Simons

*Plaintiffs*,

vs.

UNITED STATES OF AMERICA,
*Defendant*.

Case No. 06-115
The Honorable Judge Susan Braden

ORDER GRANTING THE PLAINTIFFS' RCFC 62 AND 7 MOTION TO STAY PROCEEDINGS

NOW COMES THE COURT, having received and reviewed the Plaintiffs' motion hereby grants the same, adopting the Plaintiffs' position as found in their memorandum of fact and law in support of their motion, and for good cause shown.

So signed this January ______, 2007

_____________________________
The Honorable Judge Susan Braden