# AFFIDAVIT OF GOOD FAITH OF ATTORNEY SUSAN ROSE

*Case nos. 92cv1071, 06-115*

I, Affiant, Susan Rose, hereby state under penalty of perjury that the following is true to the best of my belief and knowledge:

*August 15, 2006 conference*

1. On August 15, 2006 the Court of Judge Susan G. Braden held a conference call.
2. At this time, the Plaintiffs through this counsel filed motions to strike any motions to dismiss and government filings, and a motion for sanctions, based upon the government's allegations that Mr. and Mrs. Simons had not fully paid for a 1983 agreement with the IRS memorialized in two Tax Court decisions, interlinking years 1972, 1973 and 1974, based on the fact that these allegations were misrepresentations of fact and law and the government was not responding to the Simons' allegations, going to both the merit and jurisdiction of the District Court of Utah, Central Division case no. 92cv1071 and the Court of Federal Claims case no. 06-115.
3. The Court expressed its displeasure with these motions, admitted it had not read the complaint in detail, and was particularly displeased with the sanctions motion, said she would read the complaint, and promised an evidentiary hearing with a court reporter, even denying the government's offer to attend personally, stating the conference would be telephonic. The motion for sanctions was withdrawn.
4. The Court in this conference unqualifiedly recognized the importance of the evidence as to merits and jurisdiction.
5. The Court also asked about torts, and was informed that the torts were caused by the government's breach of the 1983 contract by further collections for the year 1974, and the Court admitted it had not looked closely at the complaint, and stated she would read it more closely.
6. The Court was informed that the complaint was filed under CFCR 9 with specificity, the evidence being incorporated therein.
7. Based on the displeasure of the Court as to the motions, and out of an abundance of caution, in light of the Court's support of the government's position, not yet having thoroughly read the complaint, the Simons filed in District Court a motion to vacate its decisions in a government initiated collection action for year 1974, and remand breach of contract claims for the 1983 contract, to the Court of Federal Claims, while advising both courts of the actions occurring in them.
8. On November 30, 2006 without any hearing, the Court of Federal Claims dismissed the Simons' complaint.

9. The Simons filed a timely Rule 59 and 60 motion for reconsideration, giving the Court an opportunity to cure the oversight of no hearing among other omissions of the government and its order.

10. December 11, 2006, the District Court denied relief and denied remanding the case to the Court of Federal Claims, and an appeal was filed in the Federal Circuit.

11. The Claims Court, in its November 30, 2006 dismissal order, observed the evidence of a check for $49,546.55 and the Plaintiff's claim of full payment, but omitted any reasoning why all the other evidence of full payment, including a CPA certified calculation showing how this amount fully paid to within 7 cents what was owed for all three years, was not acceptable, and did not address the lack of a timely assessment or other evidence of a void District Court judgment.

*January 11, 2007 conference*

12. On January 11, 2007, another status conference was held without Court transcriber or recording.

13. This conference was a hearing on the merits, because the merits are inseparable from the jurisdiction issue, and the Court previously saw this situation.

14. The Court was advised of the appeal of the District Court refusal to remand, and also this appeal was referenced in one of the motions to the Court filed prior to the conference, of which the Court said she was unaware.

15. This Counsel stated the filings were done to give the Court maximum flexibility in handling the case, because this counsel was having a impossible time in filing an amended complaint due to lack of any 2001 agreement.

16. This counsel advised the Court that there was no agreement in the District Court, a presumption upon which the District Court relied, due to the government NOT accepting any offer, but making a counteroffer the Simons rejected as it did not encompass all persons and claims, and argued at length on the merits of the Simons claims *that also went to jurisdiction*, including the incorporation of the evidence into the complaint, essentially citing to evidence as to why res judicata and collateral estoppel would not apply.

17. At this conference, the Court stated it had not read the Rule 59 and 60 motion, listened and asked questions as to the merits, informed counsel the Plaintiffs carried the burden of evidence, yet stated it would not listen to the evidence until the jurisdiction issue was worked out. This counsel asked the court what standard of dismissal is used when the evidence goes to both the merits and jurisdiction, to which no one replied.

18. This Counsel requested that the Court make the government respond with evidence as to the Plaintiffs' claims of: 1) full payment and 2) lack of timely assessment, and stated it would file a response by February 2, 2007..

19. Without referencing one scintilla of evidence, the government's counsel stated the Simons had not paid for 1974, had only paid for 1973, did not address the lack of timely assessment issue, stated that the Simons problems stemmed

from their non payment of both years in 1983, and stated they were litigious people, stated they had a responsibility to prove their case early on, never addressed the issue of the government not producing their records until 2000, and never addressed the issue of further liability under 26 U.S.C. 60 and 108 potentially facing the Simons, and admitted that aside from the appeals court filing, there were no other suits by them before any courts. Neither have their been against the government.

20. The Court agreed totally with the government, stated that it would draft an order *that day* but the government should file a response to the motion so the appeals court will see the Plaintiffs were given every opportunity to make their case. The Court stated the government could have as long as it wished to respond, did not have to respond to anything it did not wish to respond to, and the government stated it would respond by Feb. 2, 2007.

21. The IRS stated in a tone of sarcasm, that the amount of damages the Simons were requesting was about $75 million, and the Court said, "yes, I saw that", in a tone of equal displeasure. This amount is found no where in the Complaint as amended.

22. The Court stated it appreciated that this counsel has to preserve the rights of their clients, and stated it would not bar future motions from being filed, but the statement in tone was very cautionary.

23. Understanding an appeal was eminent and trying to reconstruct the record, on about January 17, 2007 the clerk informed counsel that he took notes for orders during these conferences and on January 19, 2007, Judge Braden denied a request by this affiant for those notes.

*Absence of a Record*

24. To date, no Court has ruled on the Simons' claims of full payment, breach of contract, or lack of timely assessment, lack of written notice and demand, and all their other claims, that would deprive the U.S. District Court of its ability to grant relief to the government, and of its jurisdiction due to lack of standing.

25. To date, no Court has examined the Simons' evidence in support of their claims, denied until 2000, and have procedurally either ignored the evidence or specifically not admitted the evidence, or as here, selectively identified which evidence it will admit, without explaining why all the other evidence has been de facto stricken, while incorporated into the complaint.

26. To date, the government has not been required to submit one iota of reliable evidence upon which it can base its claims that the Simons were deficient in payment in 1983.

27. To date, the government has not denied that the Simons were denied their records necessary for their defense in the 1992 government initiated case administratively, judicially, and in over about two dozen Freedom of Information Act/Privacy Act requests.

28. To date the government has failed to produce an accurate computer readout or timely filed certificate of assessment upon which to base their 1992 and ongoing claims of the Simons' non payment.

29. All of the claims asserted by the Simons were brought in good faith, after over ten years of EXHAUSTIVE research in to all the computer codes on the Simons' IMF TRANSCRIPT SPECIFIC, TAXMODA, and other computer readouts, review of all the pertinent policies, regulations and procedures, and familiarity with the non production of evidence until 2000, after which no Court will allow the evidence to be reviewed.

30. There is no record of any Court's reliance on evidence or law for their judgments, since CFCR 12(b)(1), like FRCP 12(b)(1) requires looking outside pleadings even on the Court's own, for dismissal, and when the issues go to both merit and judgment, summary judgment is the standard for dismissal, and the government has the responsibility to prove res judicata and collateral estoppel apply. With the government being alleviated of its evidentiary burden, it is impossible to identify why the Court's ruling is such that the Simons' evidence as to this Claims Court jurisdiction is not valid.

*Lack of Any 2001 Agreement and Invalidity of the District Court Judgments*

31. There is no evidence, in any Court, of any actual 2001 agreement, or a statement of law that allows the government and Courts to nullify, disregard, or modify a prior 1983 final closing agreement.

32. Judge Braden stated in the January 11 conference, that she would not make this counsel file an amended complaint if counsel conscientiously believed no 2001 agreement existed.

33. After the offer, the denial of the offer, and further efforts of the Simons to understand their file and activities on their account via FOIA and Privacy Act requests, the Court presuming they reneged on a 'deal' in 2001, the District Court viciously verbally attacked them, and the Tenth Circuit upheld this attack with the proviso that there would be no valid final judgment if "lack of actual consent, fraud in obtaining consent, lack of federal jurisdiction, or mistake are shown," citing to *Mock v. T.G. & Y. Stores Co.*, 971 F.2d 522, 526 (10th Cir. 1992).

34. This counsel asserts that there was no agreement by the Simons to be further vulnerable to further collections ( that no Article III court could extinguish) under 26 U.S.C. 108 and 60, no agreement that was not inclusive of all parties and all claims, past, present, and future, no agreement to pay or legitimize what was never owed, no agreement to legitimize a government alleged debt, that was never owed, and paid as 'ordered' by the District Court, understanding they were preserving their claims.

35. The district court stated in 2002, "…you can honor this agreement and pay maybe half of what they are going to assess if I enter this order ten days from now, and then you can go ahead and appeal that to the Tenth Circuit and you'll still have all of the legal processes to fool around with and maybe you can do

it until the day you die, but it is no way to use the Court system. " while presuming that the government had mirrored the offer.

36. The Simons and this counsel understood the statement to be read as them paying the $55,000, and begrudgingly giving them permission to pursue their claims further, if necessary.

37. It is this counsel's good faith understanding that the 1983 Tax Court memorialized agreement was a final closing agreement for all issues connected with the agreement, encompassed in IRS drafted documents.

38. The Simons are not litigious, and the attacks against them by a District Court, upheld by the Tenth Circuit Court, are not based on any reliable evidence of any kind, are defamatory and false.

39. It is this Counsel's unrebutted understanding that any 2001 'agreement', if valid, would violate 26 U.S.C. 7121, allow the government to profit by withholding evidence until 2000, for about 12 years, and would be secured by fraud or mistake. Any judgment based thereon would be equally invalid.

*Timeliness*

40. The motion for disqualification of Judge Braden and to remand the case to another judge for a new trial, is being submitted at the earliest time, after it was determined the Plaintiffs' were being denied their ability to meet their burden, the government was being relieved of its burden to demonstrate why res judicata or collateral estoppel should apply, and that the Simons are now being denied a court record as to the Court's determination and acceptance of the government's position after a one hour conference *ex parte*, off the record.

41. Due to the importance of these motions, and the necessity of thoroughly examining all aspects of the facts and law prior to making them, as for any motion, but particularly these, the motion is being filed ten days after the January 11, 2007 hearing, and only after a thorough examination of the law pertaining thereto.

42. One day of this ten day time period was a delay due to counsel's husband having surgery and the necessity of this counsel to be at the hospital and care for him, throughout that day.

42. This counsel solemnly states that she filed the complaint and filings in District Court and in the Court of Federal Claims, only after about 10 years of studying the law and evidence and procedures in this case, and the 2000 disclosure of non produced evidence, and the evidence incorporated therein is valid and not manufactured or fraudulent in any respect.

43. This counsel asserts she would not risk her profession or career, or reputation by filing bogus or unsubstantiated claims, including damage claims, or try to pull 'a fast one' on the United States, in regards to the government's denial of the ability of Mr. Simons to develop Traverse Ridge, a real estate development worth about $140 million dollars, among others, that the government was well aware of in 1983 when the Simons fully paid for their contract, and when fraudulent levies and liens were placed on their properties.

Further this Affiant sayeth naught,

So signed this ___________ day of January, 2007

_________________________________
Susan Rose

County of Salt Lake
State of Utah

On this day, I, ______________________ (notary public) witnessed Susan Rose, hold up her right hand and swear under penalty of perjury, that the statement contained herein is true to the best of her belief and knowledge, and she did appear before me with a picture government id, and signed this statement in my presence.

So signed this ________ day of January, 2007
_____________________________
Notary public

My commission expires on the ___________ day of _____. 20____.